## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DEBORAH KINDER, individually and on
behalf of all others similarly situated,

*Plaintiff*,

v.

MEREDITH CORP., an Iowa corporation,

*Defendant.*

Case No. 1:14-cv-11284

Hon. Thomas L. Ludington

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Meredith Corporation ("Defendant"), by and through its counsel, moves to dismiss the class action complaint of plaintiff Deborah Kinder ("Plaintiff") pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

1.   Plaintiff has failed to state a claim under the Video Rental Privacy Act.

2.   Plaintiff has also failed to state a claim for common law breach of contract or, in the alternative, unjust enrichment.

3.     Additionally, Plaintiff has failed to establish standing under either Michigan's Video Rental Privacy Act or Article III of the United States Constitution.

4.     On June 12, 2014, there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

**WHEREFORE,** Defendant respectfully requests the Court grant its motion to dismiss the Complaint in its entirety with prejudice, together with costs, attorneys' fees, and such other relief as the Court deems appropriate.

Dated: June 13, 2014

/s/ Robert M. Jackson
Robert M. Jackson (P40723)            Marc Zwillinger
Arthur T. O'Reilly (P70406)           Jake Sommer
HONIGMAN MILLER SCHWARTZ               Jeffrey Landis
AND COHN, LLP                         ZWILLGEN PLLC
660 Woodward Avenue                   1900 M St. NW, Ste. 250
2290 First National Building          Washington, DC 20036
Detroit, MI  48226                    (202) 706-5205
(313) 465-7430                        marc@zwillgen.com
rjackson@honigman.com                 jake@zwillgen.com
aoreilly@honigman.com                 jeff@zwillgen.com

15066289.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DEBORAH KINDER, individually and on
behalf of all others similarly situated,

*Plaintiff*,

         v.

MEREDITH CORP., an Iowa corporation,

*Defendant*.

Case No. 1:14-cv-11284

Hon. Thomas L. Ludington

---

## MEREDITH CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
HONIGMAN MILLER SCHWARTZ
AND COHN, LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7430
rjackson@honigman.com
aoreilly@honigman.com

Marc Zwillinger
Jacob Sommer
Jeffrey Landis
ZWILLGEN PLLC
1900 M St. NW, Ste. 250
Washington, DC 20036
(202) 706-5205
marc@zwillgen.com
jake@zwillgen.com
jeff@zwillgen.com

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.............................................................. iv

CONTROLLING OR MOST IMPORTANT AUTHORITY................................... vi

TABLE OF AUTHORITIES .................................................................................. vii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND..................................................................................................... 4

    A.    Meredith's Business .................................................................. 4

    B.    The Michigan VRPA ................................................................ 4

    C.    Kinder and Her Allegations ..................................................... 6

ARGUMENT .......................................................................................................... 8

I.    KINDER FAILS TO STATE A CLAIM UNDER THE VRPA .................. 8

    A.    The VRPA Does Not Apply to the Conduct Alleged ......................... 9

    B.    The VRPA's Legislative and Post Enactment History Confirms that it is Inapplicable to the Case at Hand ........................................ 10

    C.    Plaintiff Fails to Adequately Allege That She Purchased Her Magazines from Meredith "At Retail" as Required by the VRPA........................................................................................... 12

II.    KINDER FAILS TO STATE A BREACH OF CONTRACT CLAIM ...... 14

    A.    Kinder Does Not Identify the Terms of Her Alleged Contract with Meredith or a Breach of those Terms........................................ 14

    B.    Kinder Does Not Adequately Allege Breach of Contract Injury ...... 15

III.   KINDER FAILS TO STATE A CLAIM FOR UNJUST
ENRICHMENT ......................................................................... 16

IV.   KINDER LACKS STANDING ................................................... 18

    A.   The VRPA Requires Plaintiff to Allege Actual Damages ............... 19

    B.   Kinder's Alleged Injuries Are Insufficient to Confer Standing
Under Article III. .............................................................. 21

CONCLUSION .................................................................... 25

## STATEMENT OF ISSUES PRESENTED

Should plaintiff's claim under Michigan's Video Rental Privacy Act be dismissed under Rule 12(b)(6) for failure to state a claim because the statute does not apply to the disclosure of subscription lists for magazine subscriptions delivered publicly via U.S. Mail?

     Defendant answers:  Yes

Should plaintiff's claim under Michigan's Video Rental Privacy Act be dismissed under Rule 12(b)(6) for failure to state a claim because plaintiff has not adequately alleged how she subscribed to Meredith's magazines?

     Defendant answers:  Yes

Should plaintiff's state common law claim for breach of contract be dismissed under Rule 12(b)(6) for failure to state a claim because plaintiff does not allege any contract that was breached or injury from any breach?

     Defendant answers:  Yes

Should plaintiff's state common law claim for unjust enrichment be dismissed under Rule 12(b)(6) for failure to state a claim because plaintiff has not alleged that Meredith received a benefit from the plaintiff *and* that the plaintiff suffered harm as a result?

     Defendant answers:  Yes

Should plaintiff's claim under Michigan's Video Rental Privacy Act be dismissed under Rule 12(b)(1) for lack of Article III and statutory standing because plaintiff has not adequately alleged any injury or damage?

Defendant answers:  Yes

## CONTROLLING OR MOST IMPORTANT AUTHORITY

*Bristol Mfg., Inc. v. Jennings Gen. Maint., Inc.*, 2008 WL 1004879
  (Mich. Ct. App. Apr. 10, 2008);

*Cain v. Redbox Automated Retail, LLC*, No. 2:12-CV-15014, 2013 WL 5977931
  (E.D. Mich. Nov. 12, 2013)

*Cohen v. Facebook, Inc.*, No. C 10-5282 RS, 2011 WL 3100565 (N.D. Cal. June
  28, 2011)

*Doe v. Chao*, 540 U.S. 614 (2004)

*In re Doubleclick, Inc., Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y.2001)

*In re JetBlue Airways Corp., Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y.2005)

*Low v. LinkedIn Corp*, No. 11–CV–01468, 2011 WL 5509848 (N.D. Cal. Nov. 11,
  2011)

*Saldana v. Kelsey-Hayes Co.*, 443 N.W.2d 382 (Mich. Ct. App. 1989)

*Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio Ct. App. 1975)

*Sterk v. Best Buy Stores,* L.P., No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. 2012)

*Summers v. Earth Island Inst.,* 55 U.S. 488 (2009)

*Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009)

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Allor v. DeClark, Inc.*,
   No 300953, 2012 WL 555779 (Mich. App. Feb. 21, 2012)................................. 17

*American Elec. Power Co., Inc. v. Connecticut*,
   131 S.Ct. 2527, 2540 (2011).......................................................................... 13

*Amini v. Oberlin Coll.*,
   259 F.3d 493 (6th Cir. 2001) ........................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................... 8, 9, 14, 16, 18

*Battaglieri v. Mackinac Ctr. for Pub. Policy*,
   680 N.W.2d 915 (Mich. Ct. App. 2004).............................................. 23

*Beaudry v. Telecheck Serv., Inc.*,
   579 F.3d 702 (6th Cir. 2009) .................................................................. 20, 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................... 8, 9

*Berger v. Home Depot U.S.A., Inc.*,
   476 F.Supp. 1174  (C.D. Cal. 2007) ................................................. 15

*Bristol Mfg., Inc. v. Jennings Gen. Maint., Inc.*,
   2008 WL 1004879 (Mich. Ct. App. Apr. 10, 2008)........................................... 18

*Cain v. Redbox Automated Retail, LLC*,
   No. 2:12-CV-15014, 2013 WL 5977931 (E.D. Mich. Nov. 12, 2013) ......... 18, 20

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)..................................................................... 22

*Cohen v. Facebook, Inc.*,
   No. C 10-5282 RS, 2011 WL 3100565 (N.D. Cal. June 28, 2011).................... 24

*Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*,
   789 F. Supp. 2d 1029 (N.D. Iowa 2011) .............................................. 25

*Crandon v. United States*,
   494 U.S. 152 (1990) ........................................................................... 9

*Deacon v. Pandora Media, Inc.*,
   No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012) .............. 25

*Doe v. Chao*,
   540 U.S. 614 (2004) ........................................................................... 24

*Dowell v. Wells Fargo Bank, NA*,
   517 F.3d 1024 (8th Cir. 2008) ........................................................ 19-20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................ 18-19

*Galaria v. Nationwide Mut. Ins. Co.*,
   No. 2:13–CV–118, 2014 WL 689703 (S.D. Ohio. 2014) .......................... 22-23

*Gladstone Realtors v. Vill. of Bellwood*,
   441 U.S. 91 (1979) ............................................................................ 24

*Global Policy Partners, LLC v. Yessin*,
   686 F. Supp. 2d 642 (E.D. Va. 2010) ................................................... 25

*Haisha v. Countrywide Bank*, FSB,
   No. 11-11276, 2011 WL 2271319 (E.D. Mich. June 8, 2011) ...................... 15

*Halaburda v. Bauer Pub. Co., LP*,
   No. 12-CV-12831, 2013 WL 4012827
   (E.D. Mich. Aug. 6, 2013) .................................................. 6, 12, 13, 18, 20, 25

*In re Barnes & Noble Pin Pad Litig.*,
   No. 12-cv–8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ...................... 23

*In re Brown*,
   342 F.3d 620 (6th Cir. 2003) .............................................................. 15

*In re Carter*,
   553 F.3d 979 (6th Cir. 2009) ............................................................................ 25

*In re Doubleclick, Inc., Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y.2001) ............................................................. 17

*In re JetBlue Airways Corp., Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y.2005) ............................................................. 17

*Jarbo v. BAC Home Loan Servicing*,
   No. 10-12632, 2010 WL 5173825 (E.D. Mich. Dec. 15, 2010) ......................... 16

*Kammer Asphalt Paving Co, Inc. v. East China Twp. Sch.*,
   504 N.W.2d 635 (1993) ................................................................................... 17

*Lawson v. Techtronic Indus. N. Am., Inc.*,
   No. 5:08-CV-00093-TBR, 2010 WL 1743176 (W.D. Ky. Apr. 28, 2010) ......... 14

*Low v. LinkedIn Corp*,
   No. 11–CV–01468, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ............. 22-23

*Ltd., Inc. v. C.I.R.*,
   286 F.3d 324 (6th Cir. 2002) ........................................................................... 13

*Marshall v. Music Hall Ctr. for Performing Arts, Inc.*,
   No. 95-CV-70910, 1995 WL 871212 (E.D. Mich. Nov. 2, 1995) ..................... 19

*McCreary v. Shields*,
   52 N.W.2d 853 (Mich. 1952) ........................................................................... 18

*Morell v. Star Taxi*,
   343 Fed. Appx. 54, 57 (6th Cir. 2009) ............................................................. 19

*People v. Denio*,
   564 N.W.2d 13 (Mich. 1997) ........................................................................... 22

*People v. McCullough*,
   561 N.W.2d 114 (Mich. Ct. App. 1997) ........................................................... 22

*People v.* Reyes,
178 Cal. App. 4th 1183 (Cal. Ct. App.)................................................................ 10

*Raines v. Byrd,*
521 U.S. 811 (1997).............................................................................................. 24

*Saldana v. Kelsey-Hayes Co.,*
443 N.W.2d 382 (Mich. Ct. App. 1989).......................................................... 23-24

*SFS Check, LLC v. First Bank of Del.,*
No. CIV. 12-14607, 2013 WL 6859179 (E.D. Mich. Dec. 30, 2013)................. 14

*Shibley v. Time, Inc.,*
341 N.E.2d 337 (Ohio Ct. App. 1975).......................................................... 1, 4, 12

*Sterk v. Best Buy Stores,* L.P.,
No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. 2012).......................................... 24

*Summers v. Earth Island Inst.,*
55 U.S. 488 (2009)......................................................................................... 3, 24

*Thill v. Ocwen Loan Servicing, LLC,*
No. 2:13-CV-14151, 2014 WL 1274080 (E.D. Mich. Mar. 31, 2014) .............. 15

*Tobin v. Civil Service Comm.,*
331 N.W.2d 184 (Mich. 1982) ........................................................................ 23

*United States v. Hinton,*
222 F.3d 664, 675 (9th Cir. 2000) .................................................................. 10

*United States v. Osunegbu,*
822 F.2d 472 (5th Cir. 1987) ........................................................................ 2, 10

*United States v. Springer,*
58 M.J. 164 (C.A.A.F. 2003)......................................................................... 10

*Van Alstyne v. Elec. Scriptorium, Ltd.,*
560 F.3d 199 (4th Cir. 2009) ....................................................................... 24-25

*Vergos v. Gregg's Enterprises, Inc.*,
   159 F.3d 989 (6th Cir. 1998) ............................................................................. 12

*Webb v. Bob Smith Chevrolet, Inc.*, No. Civ.A. 3:04 CV 66 H,
   2005 WL 2065237 (W.D. Ky. 2005) .................................................................. 11

*Wiebe v. NDEX W., LLC*, No. SACV10-325 AG RNBX,
   2010 WL 2035992 (C.D. Cal. May 17, 2010) .................................................... 15

*Willingham v. Global Payments, Inc*., No. 1:12-CV-01157-RWS,
   2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ......................................................... 16

**Statutes**

Cal. Civil Code § 3344 ........................................................................................ 24

M.C.L. § 445.1712 ...................................................................... 5, 9, 13, 19

M.C.L. § 445.1713. ............................................................................................... 5

M.C.L. § 445.1714 ................................................................................................ 5

M.C.L. § 445.1715 ........................................................................................ 5, 19

Michigan Video Rental Privacy Act ("VRPA"),
   M.C.L. §§ 445.1711-1715 .......................................................... *passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 .................................. 1, 4, 5, 9, 24

**Other Authorities**

*Black's Law Dictionary* 1341, 8th Ed. 2004 ........................................................ 13

Charles Duhigg, *Bilking the Elderly, With A Corporate Assist*,
   N.Y. Times (May 20, 2007) ................................................................................. 6

House Legislative Analysis Section, May 4, 1989; Senate Fiscal Agency Bill
   Analysis, October 4, 1989. ................................................................................. 11

S. Rep. No. 100-599, at 5 (1988),
*reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5 ............................................... 4, 9

Transcript of FTC Conference: The Information Marketplace: Merging and
Exchanging Consumer Data (Mar. 13, 2001)........................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................. 9

## PRELIMINARY STATEMENT

This action is the latest in a series brought against magazine publishers by the same lawyers, each alleging violations of Michigan's Video Rental Privacy Act ("VRPA") based on magazine publishers' well-known and long-standing practice of sharing subscriber lists. This practice pre-dates the VRPA and has continued throughout its history. Although this information has been available to every Michigan Attorney General, prosecutor, and the public for 26 years, no publisher has ever been charged with a misdemeanor or sued civilly by the Attorney General. The explanation for non-action is simple. First, the VRPA was never intended to apply to magazine publishers like Meredith that allegedly rent or sell subscriber lists to businesses. Second, a magazine subscriber has no claim where she suffers no injury.

The VRPA limits the ability of entities "engaged in the business of selling at retail, renting, or lending books or other written materials" from disclosing certain information about customers' "purchase, lease, rental, or borrowing of those materials" to third parties. It, and its federal counterpart, the Video Privacy Protection Act ("VPPA"), were enacted after a Washington D.C. newspaper obtained and published, as part of a profile of Judge Robert Bork, the titles of films his family rented from a video store. The VRPA is a criminal statute intended to make disclosure of such information a misdemeanor.

The VRPA does not apply to the disclosure of subscription lists for magazines delivered via mail. This is because the VRPA only applies to information that is otherwise private. Subscriptions to magazines delivered to customers by the mail are not private. The magazines are placed in the mail with an address label on the magazine cover with the subscriber's name in plain sight. They are then taken to a post office where they are viewed by countless postal employees before being delivered to the subscriber's home. The subscriber's name, publicly displayed on the outside of the magazine as it travels through the mail, is simply not private information. *See United States v. Osunegbu*, 822 F.2d 472, 480 (5th Cir. 1987) (finding no reasonable expectation of privacy in the address information on the outside of a letter). The VRPA was not intended to prevent the disclosure of such public information. The statute's legislative history confirms this common sense conclusion by speaking of the "rentals of books, videos, and sound recordings" not magazine subscriptions.

The complaint also fails because it omits essential information about the plaintiff Deborah Kinder ("Kinder") required to state a claim under the VRPA. Specifically, by not identifying *how* she became a subscriber, Kinder fails to allege that the information Meredith allegedly disclosed was a record of a purchase at retail of Meredith's publications.

Kinder also identifies no contract with Meredith or the provisions Meredith

breached.   Instead of identifying an injury, Kinder merely claims that she was injured because her personal information was devalued when Meredith allegedly disclosed it. This is insufficient to state a breach of contract claim. Moreover, Kinder's unjust enrichment claim fails because she does not allege how Meredith received a benefit from any disclosure at her expense.

Nor do Kinder's allegations of purported injury establish standing for her VRPA claim under Article III.  Kinder alleges speculative, imaginary, injuries that do not provide this court with jurisdiction.  She attempts to plead a violation of a "common law right to privacy," when no recognized privacy right prohibits the disclosure of magazine subscription information.  She alleges overpayment, but courts have repeatedly held that the information she gave Meredith has no value. And she alleges fear and anxiety about what *could* happen, but the Supreme Court has repeatedly rejected such speculative injuries.  Left with no real injury, Kinder tries an end run around Article III, alleging that violating the VRPA is sufficient to confer standing.  But the "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute," *Summers v. Earth Island Inst.,* 55 U.S. 488, 497 (2009).  And even if it could, the VRPA itself requires plaintiffs to allege that they have suffered damages.  Kinder therefore lacks standing.

# BACKGROUND

### A.    Meredith's Business

Founded in 1902, Meredith Corporation ("Meredith") is a media company that publishes magazines circulated nationwide. Compl. ¶ 1. These include Better Homes and Gardens, Family Circle, Ladies' Home Journal, and Midwest Living. *Id.* Individuals can subscribe to Meredith magazines in many ways, including via Internet, telephone and traditional mail. *Id.* ¶ 37. Meredith also provides marketing solutions to third-parties, including offering advertising space in its magazines. *Id.* ¶ 1. It also rents and sells subscriber lists to certain third parties with whom it has entered into agreements, a practice magazine publishers have engaged in for decades. *Id.* ¶ 2.[1]

### B.    The Michigan VRPA

In 1988, shortly after a Washington D.C. newspaper obtained and published in a profile of Judge Robert Bork the titles of films his family had rented from a local video store, Congress passed the VPPA. S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5 ("Senate Report"); Compl. ¶ 12. The VPPA prohibits a person "engaged in the business . . . of rental, sale or

---

[1] *See e.g.*, *Shibley v. Time, Inc.*, 45 Ohio App. 2d 69, 73, 341 N.E.2d 337, 339 (Ohio Ct. App. 1975). *Shibley* was a 1975 case that was dismissed because the disclosure of magazine subscriber names did not violate the right of privacy. Additionally, class certification was improper because privacy claims are "peculiarly personal" and "differ[] from person to person." *Id.* at 340.

delivery of prerecorded video cassettes or similar audio visual materials from "disclosing to any person personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b). A few weeks later, Michigan passed the VRPA which states that a person:

> engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record of information concerning the purchase, lease rental, or borrowing of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. Besides recognizing exceptions "otherwise provided by law," the VRPA allows disclosures "for the exclusive purpose of marketing goods and services directly to the customer," if the customer is provided with written notice of the ability to "remove his or her name at any time by written notice." M.C.L. § 445.1713.[2] The VRPA also allows disclosures made: with the written permission of the customer; pursuant to a court order, search warrant, or grand jury subpoena; and to the extent reasonably necessary to collect payment for the materials. M.C.L. § 445.1715. Violation of the VRPA is a misdemeanor. M.C.L. § 445.1714. The VRPA also allows "a civil action for damages" to a customer identified in a record disclosed in violation of the act. M.C.L. § 445.1715.

---

[2] These exceptions will likely figure prominently in this case if Kinder's claims survive dismissal. For example, the mastheads of Meredith's magazines and the websites for those magazines fully disclosed to readers that Meredith makes subscriber lists available to certain third parties, and gives readers such as Kinder instructions on how to opt out of such sharing.

C.    **Kinder and Her Allegations**

Kinder claims she subscribed to Meredith-published magazines Better Homes and Gardens, Ladies' Home Journal, Family Circle, and Midwest Living. Compl. ¶ 45. Kinder does not say how or when she subscribed to these magazines or whether she used the same method to subscribe to each. *See generally* Compl. ¶¶ 44-52. Kinder was the named plaintiff in a similar action brought against one of Meredith's competitors, Bauer Publishing, before being removed as plaintiff.[3] Kinder's sole allegation about Meredith is that it disclosed her "Personal Reading Information" (*i.e.*, information that identifies Kinder as a … subscriber) to third parties," including "data miners, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes." *Id.* ¶ 49.

The remainder of the Complaint excerpts quotes from articles or reports unrelated to Meredith to suggest that the conduct alleged is potentially harmful to consumers. For example, citing a New York Times article discussing the defrauding of a 92-year old retiree, the Complaint alleges that disclosures "like Meredith's" are "particularly dangerous to the elderly and retirees." *Id.* ¶ 41.[4] The cited article, however, does not reference Meredith or attribute the retirees who were defrauded to list rentals by magazine publishers. Rather, according to the

---

[3] *See Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013), ECF No. 1 (Complaint).
[4] Charles Duhigg, *Bilking the Elderly, With A Corporate Assist*, N.Y. Times, May 20, 2007, at A1.

article, the man's name ended up on scam artists' lists after he filled out sweepstakes forms, many of which were fakes.   The closest the article gets to discussing Meredith's alleged conduct is the statement that "[t]he list brokering industry has existed for decades, primarily serving legitimate customers like magazine and catalog companies."[5]  *Id.*

Kinder does not allege that she was targeted by any fraudulent schemes or telemarketers (let alone that she was targeted because of any disclosure of her subscription information).   Instead, Kinder claims that she received unidentified solicitations and advertisements that "waste [her] time, money, and resources, and cause her emotional distress, including irritation, annoyance, and anxiety and fear that her personal information will fall in the hands of thieves or scammers." Compl. ¶ 50.[6]   She also claims she did not receive the "full value" of her subscriptions because she ascribes monetary value to the privacy of her reading information and Meredith's alleged disclosure of that information "caused her to

---

[5] The Complaint cites FTC Commissioner Swindle's statement that "individuals are concerned about being defined by the existing data on themselves," Compl. ¶ 20, but omits his statement that information like that alleged in the complaint "drives our economy" because it "make sales, marketing and customer service more efficient, and more effective."  *See* Transcript of FTC Conference: The Information Marketplace: Merging and Exchanging Consumer Data at 11 (Mar. 13, 2001), *available at* http://www.ftc.gov/sites/default/files/documents/ public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf.

[6] If this were true, however, it is unlikely that Ms. Kinder would have put her subscription information into a document like the Complaint that is filed on the public docket for such "thieves" and "scammers" to see.

receive less value than she paid for," *Id.* ¶ 50. She does not, however, allege any facts supporting this purported expectation of privacy. Against this backdrop, Kinder seeks to bring claims on behalf of "[a]ll Michigan residents who had their Personal Reading Information disclosed to third parties by Meredith [] without consent." *Id.* ¶ 53. Among other remedies, Kinder seeks an injunction and an award of damages, including "disgorgement, or $5,000.00, whichever is greater, to each [c]lass member." *Id.* (prayer for relief).

## ARGUMENT

## I.     KINDER FAILS TO STATE A CLAIM UNDER THE VRPA

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555. Nor will facts merely consistent with defendant's liability. *Iqbal*, 556 U.S. at 679. Where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has alleged, but has not shown, that the pleader is entitled to relief. *Id.* In evaluating a Rule 12(b)(6) motion, "the court primarily considers the allegations

in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

**A.    The VRPA Does Not Apply to the Conduct Alleged**

The VRPA prohibits a person "engaged in the business of selling at retail, renting, or lending books or other written materials" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials . . . that indicates the identity of the customer." M.C.L. § 445.1712.  This does not (and cannot) apply to magazine subscriptions provided by mail.  To determine the meaning of a statute, courts "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990).  There can be little dispute about the design, object and policy of the VRPA (or its federal counterpart the VPPA): to limit the disclosure and publication of the ***private*** habits of individuals.  *See* Senate Report at 5. Kinder's problem, however, is that magazines subscribed to by mail (unlike the videos Judge Bork rented at a retail video store) are not private. The publisher places them in the mail with the magazine cover and an address label containing the subscriber's name and address in plain sight.  They are then taken to a post office where they are viewed by tens, if not hundreds, of postal employees.  They are then delivered to the

subscriber's home, often for anyone to see. This is not the "intimate process that should be protected from the intrusion of a roving eye" as the VPPA (or the VRPA) envisions. *See* Compl. ¶ 15.

Not surprisingly, courts analyzing whether information on the outside of an envelope is private in the Fourth Amendment context have held that because the information is visible to countless people in the course of a letter reaching its destination "an addressee or addressor generally has no expectation of privacy as to the outside of mail." *Osunegbu*, 822 F.2d at 480 n. 23. *See also United States v. Hinton,* 222 F.3d 664, 675 (9th Cir. 2000) ("There is no expectation of privacy in the addresses on a package, regardless of its class"); *United States v. Springer*, 58 M.J. 164, 168 (C.A.A.F. 2003) ("No reasonable expectation of privacy exists in the information visible on the outside of an envelope."). The same is true for common law privacy claims where "[w]hat constitutes a private matter is dependent upon whether the Plaintiff has a reasonable expectation of privacy in the subject information." *Webb v. Bob Smith Chevrolet, Inc.*, No. Civ.A. 3:04 CV 66 H, 2005 WL 2065237, *6 (W.D. Ky. 2005).

### B.   The VRPA's Legislative and Post Enactment History Confirms that it is Inapplicable to the Case at Hand

The VRPA does not expressly reference magazines. Its legislative history also does not suggest that it should apply to magazine subscriptions delivered by mail, or publishers' sale or rental of subscriber lists. Instead, the Michigan

legislature construed the act to apply to "rentals of books, videos, and sound recordings," not magazine subscriptions delivered by mail. *See* House Legislative Analysis Section, May 4, 1989; Senate Fiscal Agency Bill Analysis, October 4, 1989. The VRPA's caption reads, "Purchase, rental, borrowing of books or sound or video recordings; preservation of personal privacy." It is unlikely the statute would implement a major change to a decades-long practice that was previously challenged and upheld without a word of indication it was doing so. *See Shibley,* 341 N.E.2d at 337. The absence of statutory language or legislative history on this point confirms that the VRPA's limitations do not apply to publishers who offer magazine subscriptions to consumers that are delivered by mail for anyone to see.

Looking at the VRPA's extensive post-enactment history leads to the same conclusion. Although the VRPA is a criminal statute, there is no record anywhere that a law enforcement agency has brought a criminal case against a publisher like Meredith for selling subscriber lists. This is despite common knowledge that "[t]he list brokering industry has existed for decades, primarily serving legitimate customers like magazine and catalog companies." May 20, 2007 New York Times article, at A1. S*ee also Shibley*, 341 N.E.2d at 339.

Even if a statute is facially clear (the VRPA is not), a court "must look beyond the language of the statute" where "a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the

intent of Congress." *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). Applying the VRPA's limitation on entities "engaged in the business of selling at retail . . . books or other written materials" here would lead to an absurd result. It would criminalize an information sharing practice the FTC notes "drives our economy." *See* Tran. of FTC Conf.: The Information Marketplace: Merging and Exchanging Consumer Data at 11 (Mar. 13, 2001). It would also imbue upon magazine subscriptions a level of privacy readers never expected, received, or recognized. This cannot be what the Michigan legislature intended.[7]

### C. Plaintiff Fails to Adequately Allege That She Purchased Her Magazines from Meredith "At Retail" as Required by the VRPA

The VRPA applies only to materials sold "at retail." *See* M.C.L. § 445.1712. The term retail is not defined, and thus should receive "its ordinary and natural meaning." *Ltd., Inc. v. C.I.R.*, 286 F.3d 324, 332 (6th Cir. 2002). Black's law dictionary defines "retail" as "the sale of goods and commodities to ultimate consumers as opposed to the sale for further distribution or processing." *Black's*

---

[7] Meredith recognizes that the court in *Halaburda* rejected defendants' argument that plaintiff failed to state a claim under the VRPA under similar facts. As an initial matter, Meredith respectfully states that *Halaburda* is not binding on this court. *See e.g. American Elec. Power Co., Inc. v. Connecticut*, 131 S.Ct. 2527, 2540 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court."). More fundamentally, the *Halaburda* court never considered the fact that magazine subscriptions are public when considering whether the VRPA applies.

*Law Dictionary* 1341, 8th Ed. 2004. Likewise, the McMillan Dictionary defines "retail" as "relating to the sale of goods directly to the public for their own use."[8]

Here, Kinder alleges only that she "subscribes to Better Homes and Gardens, Ladies' Home Journal, Family Circle, and Midwest Living." Compl. ¶ 45. She does not indicate *how* she subscribed. As Kinder acknowledges, however, subscribers can sign up in many ways to receive Meredith's magazines. *Id.* ¶ 37. This includes subscriptions through countless third-parties, like amazon.com, valuemags.com and magazines.com, and through clearinghouses. Individuals can also subscribe via fundraisers by schools and other organizations or third-party promotions that offer subscriptions with purchase.

If Kinder purchased her subscription from a third party, she would not necessarily have purchased magazines from Meredith "at retail," even construing the VRPA broadly. Kinder's failure to allege that Meredith sold the magazine subscriptions to her "at retail" therefore warrants dismissal. *See Iqbal,* 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."); *Lawson v. Techtronic Indus. N. Am., Inc.,* 5:08-CV-00093-TBR, 2010 WL 1743176, *4 (W.D. Ky. Apr.

---

[8] *See Definition of Retail,* Macmillan American Dictionary Online, http://www.macmillandictionary.com/us/ dictionary/american/retail (last visited June 13, 2014).

28, 2010)("[A] claim to relief cannot be plausible if an essential element of the claim is not alleged in any discernable way in the pleadings.").

## II.   KINDER FAILS TO STATE A BREACH OF CONTRACT CLAIM

To state a claim for breach of contract, a plaintiff must allege: 1) the existence of a valid contract, 2) its terms, 3) breach of the contract, and 4) an injury caused by the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). Here, Kinder fails to adequately allege such elements.

### A.   Kinder Does Not Identify the Terms of Her Alleged Contract with Meredith or a Breach of those Terms

Kinder does not identify the contract provisions (or the contract itself) Meredith allegedly breached, including any provision requiring Meredith to keep Kinder's subscriptions confidential.  She instead alleges that "[b]ecause the laws existing at the time and place of making a contract are incorporated into it, the contracts between Meredith and Kinder and the other class members include obligations for the parties to abide by all applicable laws, including the VRPA." Compl. ¶ 87.  If this were enough to state a claim for breach of contract, every plaintiff alleging a statutory violation could also state a claim for breach of contract, regardless of whether a contract existed or what it stated.

Courts routinely dismiss breach of contract claims where, such as here, the plaintiff does not identify the contract or terms.[9]   *See Thill v. Ocwen Loan Servicing, LLC*, 2:13-CV-14151, 2014 WL 1274080, *4 (E.D. Mich. Mar. 31, 2014) (Plaintiff's allegations "do not identify the specific terms of the contract allegedly breached"); *Haisha v. Countrywide Bank, FSB*, 11-11276, 2011 WL 2271319, *4 (E.D. Mich. June 8, 2011) ("nowhere do Plaintiffs plead which provisions of the [contract] are violated."). Put another way, because Kinder's "breach of contract count consists of nothing more than unadorned, the defendant-unlawfully-harmed-me accusations, it should be dismissed." *Jarbo v. BAC Home Loan Servicing*, 10-12632, 2010 WL 5173825, *10 (E.D. Mich. Dec. 15, 2010) (quoting *Iqbal*, 556 U.S. at 678).

## B.   Kinder Does Not Adequately Allege Breach of Contract Injury

Because Kinder has not identified the contractual terms or how Meredith breached those terms, she cannot adequately allege how she was injured by any breach.  Perhaps for this reason, Kinder's only claim of injury from Meredith's

---

[9] Kinder likewise does not allege breach, only that Meredith "fail[ed] to perform its contractual obligations imposed by the VRPA" which "[c]onstitutes a material breach by Meredith of its contracts with Kinder and other Class members." Compl. ¶ 87.  But Kinder is "required to do something more to allege a breach of contract claim than merely point to allegations of a statutory violation." *Wiebe v. NDEX W., LLC*, SACV10-325 AG RNBX, 2010 WL 2035992 (C.D. Cal. May 17, 2010). *See also, Berger v. Home Depot U.S.A., Inc.*, 476 F.Supp. 1174, 1177 (C.D. Cal. 2007) (allowing a statutory violation to provide the basis for a breach of contract would "significantly change the core principles of contract law").

alleged breach is "in the form of the value Kinder and other Class members attributed to the ensured confidentiality of their Personal Reading Information" because they were "denied services that they paid for and were entitled to receive." Compl. ¶ 88.   Putting aside the fact that Kinder identifies no agreement between her and Meredith for such confidentiality "services," because courts have found that such information has *no* inherent economic value to consumers, Meredith's alleged disclosure could not have reduced the value Kinder received.

Such theory of breach-of-contract injury is at odds with the courts holding that allegedly private information has no economic value.   *See Willingham v. Global Payments, Inc.*, 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs' PII does not have an inherent monetary value."); *In re Doubleclick, Inc., Privacy Litig.*, 154 F.Supp.2d 497, 525 (S.D.N.Y. 2001) (holding that unauthorized collection of personal information by a third-party is not "economic loss"); *In re JetBlue Airways Corp., Privacy Litig.*, 379 F.Supp.2d 299, 327 (E.D.N.Y. 2005) (explaining that airline's disclosure of passenger data to third party in violation of airline's privacy policy had no compensable value).

## III.   KINDER FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Kinder fails to state a claim for unjust enrichment because she has not suffered any loss.   Nor is she entitled to any proceeds Meredith received. Unjust enrichment is the retention of "money or benefits which in justice and equity

belong to another." *McCreary v. Shields,* 52 N.W. 2d 853, 855 (1952) (internal quotation and citation omitted). To establish unjust enrichment, the defendant must be "unjustly enriched *at the expense of another.*" *Kammer Asphalt Paving Co, Inc. v. East China Twp. Sch.,* 504 N.W.2d 635, 640 (1993), quoting Restatement Restitution, § 1 at 12 (emphasis added). While a plaintiff's recovery is calculated by the defendant's benefit, the plaintiff must suffer *loss* such that the defendant's gain is at her expense. *See Allor v. DeClark, Inc.*, No 300953, 2012 WL 555779 at *2 (Mich. App. Feb. 21, 2012).

As an initial matter, Kinder fails to state an unjust enrichment claim because she lost nothing of value. Courts have repeatedly held that personal data has no inherent monetary value and plaintiffs do not suffer loss when such data is disclosed to a third party. *See supra* Section II(B). Even if this were not the case, Kinder's unjust enrichment claim still fails because [i]t is not enough that . . . the defendant received a benefit. To establish a claim of unjust enrichment, the plaintiff must show that the defendant was unjustly or inequitably enriched at the plaintiff's expense." *Bristol Mfg., Inc. v. Jennings Gen. Maint., Inc*., 272006, 2008 WL 1004879 (Mich. Ct. App. Apr. 10, 2008). Here, the only benefit Kinder alleges Meredith received at her expense is the alleged "portion of the purchase price of each Meredith magazine [that] was intended to ensure the confidentiality" of Kinder's personal reading information. Compl. ¶ 98. But no portion of

whatever unidentified price Kinder paid was for that purpose.  Moreover, this is the kind of conclusory allegation, devoid of any factual support, that is no longer proper.  *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")  Put another way, without some factual support, Kinder cannot just allege that a portion of a magazine's price was intended to ensure confidentiality.[10]

## IV.   KINDER LACKS STANDING

In a class action, a named plaintiff must demonstrate (1) cognizable injury, (2) fairly traceable to the defendant's alleged conduct (3) redressable by judicial decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180- 81 (2000).  Here, Kinder purports to allege four theories of injury: (1) irritation, aggravation, anxiety and fear that her information will be obtained and misused by thieves and scammers (¶ 78); (2) deprivation of the "full value" of her "paid-for" subscriptions" (¶ 75, 77); (3) violation of a "common law right to privacy" (¶ 73); and (4) violation of her statutory rights under M.C.L. § 445.1712 (¶ 74).  None confers standing for Kinder's VRPA claim.

---

[10] In addition, as noted below, even if Kinder could state a claim for unjust enrichment, she still has no standing to bring such claim because she has alleged no loss related to Meredith's gain.  Neither *Cain* nor *Halaburda* made specific findings regarding whether plaintiffs injuries were fairly traceable to a benefit the defendant received, and thus are distinguishable.

### A.   The VRPA Requires Plaintiff to Allege Actual Damages

The VRPA requires plaintiff to allege damages to have standing. *Morell v. Star Taxi*, 343 Fed. Appx. 54, 57 (6th Cir. 2009). The VRPA provides a civil cause of action "*for damages* to the customer identified in a record … disclosed in violation of this act." M.C.L. § 445.1715. It allows recovery of "actual damages, including damages for emotional distress, or $5,000, whichever is greater." *Id.* This language assumes that the customer has suffered some damage. The $5,000 statutory amount is a proxy for damages that are not susceptible to easy calculation. *See*, *e.g*, *Marshall v. Music Hall Ctr. for Performing Arts, Inc.*, 95-CV-70910, 1995 WL 871212 (E.D. Mich. Nov. 2, 1995) ("[P]urpose of statutory damages is to allow relief for copyright infringement where the calculation of actual damages plus profits is too difficult or would be unfair."); *see also Dowell v. Wells Fargo Bank, NA*, 517 F.3d 1024, 1026 (8th Cir. 2008) ("A reasonable reading of [FCRA] could still require proof of damages but simply substitute statutory rather than actual damages for the purpose of calculating the damage award.").

Decisions reaching the opposite result are not binding, conflict with Supreme Court precedent, and wrongly decided. In *Halaburda v. Bauer Publishing Co. LP*, No. 12-cv-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) and *Cain v. Redbox Automated Retail, LLC*, No. 2:12-CV-15014, 2013 WL 5977931 (E.D.

Mich. Nov. 12, 2013) courts found standing, but failed to consider the VRPA's penal nature or recognize key differences between the VRPA and the Fair Credit Reporting Act ("FCRA") provisions at issue in *Beaudry v. Telecheck Serv., Inc.*, 579 F.3d 702 (6th Cir. 2009).[11]   In *Beaudry*, the Sixth Circuit found that FCRA did not require the plaintiff to allege actual injury.   But FCRA specifically provided that "any person who *willfully* fails to comply [with the statute] is liable to that consumer in an amount equal to the sum of. . . any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000." Thus, FCRA did not require plaintiff to allege damage.

By contrast, the VRPA says that a defendant shall be liable "in a civil action *for damages* to the customer."   It then says that the customer may recover "actual damages, including damages for emotional distress, or $5,000, whichever is greater."   Unlike FCRA, the VRPA contemplates that liability exists only "*for damages*" rather than the FCRA's different construction which defines liability in terms of either actual damages or statutory damages.[12]   FCRA also expressly requires a finding of *willfulness* not present in the VRPA, so the lack of actual

---

[11] Indeed, the *Halaburda* court was reluctant to reach its conclusion that defendants could be liable for $5,000 per statutory violation where no damages were suffered, but saw no way to distinguish *Beaudry*. *Halaburda*, 2013 WL 4012827 at *4-5.

[12] This point is buttressed by the fact that damages under the FCRA against a defendant who *willfully* violates a statute dealing with credit reporting are capped at $1,000 per violation, whereas the VRPA has no willfulness requirement and yet provides for damages of no less than $5,000 per violation for alleged disclosure of titles of books or movies.

damages did not result in a strict liability scheme. As *Beaudry* explained, "[t]he existence of a *willfulness* requirement proves there is nothing 'strict' about the state of behavior required to violate the law. And there is an injury requirement because the statute requires the claimant to show that the defendants used unreasonable procedures in preparing a credit report about her." *Id.* at 708. Here, the absence of both factors distinguishes the VRPA from FCRA.

If Kinder's interpretation is accepted, the VRPA would impose purely punitive sanctions on defendants regardless of their state of mind or the plaintiff's loss, making it a penal statute with a strict liability regime. Absent express language from the legislature, the rule of lenity, which counsels toward interpreting punishments narrowly, directs courts to reject such a draconian punishment. *People v. McCullough,* 561 N.W.2d 114, 115 (1997) (Criminal statutes must be strictly construed); *People v. Denio*, 564 N.W.2d 13, 17 (1997) (rule of lenity provides that "a court should mitigate punishment if a criminal statute is unclear.") This Court should reject Kinder's invitation to criminalize conduct that causes no injury without express direction to do so.

### B.   Kinder's Alleged Injuries Don't Confer Article III Standing

Even if the VRPA does not require plaintiff to allege damages, none of Kinder's purported injuries are sufficient to confer Article III standing. ***First***, because a plaintiff "cannot manufacture standing merely by inflicting harm on

[herself] based on fears of hypothetical future harm," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013), Kinder's "fears" that her information "will" someday be misused "by thieves and scammers" are insufficient.

**Second**, as stated above, Kinder's overpayment allegation is an attempt to recast the oft-rejected argument that the value of a plaintiff's personal information is diminished by disclosure. *See supra* Section IIB; *Low v. LinkedIn Corp*, No. 11–CV–01468, 2011 WL 5509848, at *4–5 (N.D.Cal. Nov. 11, 2011) (finding allegation "that [plaintiff] was not justly compensated for [defendant's] transfer of his personal data" was "too abstract and hypothetical to support Article III standing."); *In re Barnes & Noble Pin Pad Litig.*, No. 12–cv–8617, 2013 WL 4759588, at *5 (N.D.Ill. Sept. 3, 2013) ("Actual injury of this sort is not established unless a plaintiff can sell his own information and a defendant sold the information.") (internal citations omitted); *Galaria v. Nationwide Mutual Ins. Co.*, No. 2:13–CV–118, 2014 WL 689703, *9 (S.D. Ohio. 2014) ("finding that the loss of privacy alone constitutes an injury sufficient to confer standing . . . would mean that any time a plaintiff's PII has been exposed as a result of a data breach, he would have standing to sue-regardless of whether . . . the plaintiff ever suffers adverse consequences from exposure."). Kinder cannot circumvent these holdings by characterizing her harm as an "overpayment" for an implied confidentiality promise built into her purchase price (Compl. ¶ 75), or by alleging that a

subscription that keeps personal reading information private is more valuable than one that does not.  Compl. ¶ 75.

**Third**, disclosing subscription information does not violate the common law right of privacy.  *Battaglieri v. Mackinac Ctr. For Pub. Policy*, 680 N.W.2d 915, 919 (2004) (quoting *Tobin v. Civil Service Comm.*, 331 N.W.2d 184 (1982)). Kinder does not allege that Meredith has appropriated Kinder's likeness, made public disclosures that place her in a false light, or disclosed "embarrassing private facts,"  especially since Kinder has now voluntarily placed those same facts into the  public  record.   Nor  has  Meredith  intruded  upon  Kinder's  seclusion  by disclosing *its business records*, because it did not obtain them "by a means or method  what  would  be  found  objectionable  by  a  reasonable  person."  *Saldana v. Kelsey-Hayes Co.*, 443 N.W.2d 382, 384 (1989).

**Fourth**, an alleged violation of the VRPA alone cannot confer standing.  "In no  event … may Congress abrogate the Art. III minima: A plaintiff must always have  suffered  a  distinct  and  palpable  injury  to  himself … that  is  likely  to  be redressed  if  the  requested  relief  is  granted."  *Gladstone Realtors  v.  Vill.  of Bellwood*,  441  U.S.  91,  100  (1979)  (internal  quotation  marks  omitted).  This "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."  *Summers v. Earth Island Inst.,* 55 U.S. 488, 497 (2009).

Courts have followed this precedent and held that mere violation of a privacy statute without injury is insufficient. In *Sterk v. Best Buy Stores, L.P.*, No. 11-C-1894, 2012 WL 5197901 (N.D.Ill. 2012), a VPPA case, the court held that a plaintiff must allege injury to have standing. Likewise, in *Cohen v. Facebook, Inc.*, C 10-5282 RS, 2011 WL 3100565 (N.D. Cal. June 28, 2011), the court dismissed claims for failure to allege actual injury under Cal. Civil Code § 3344, which provides statutory damages of "an amount equal to the greater of [$750] or the actual damages suffered" for using a person's name in advertising. Courts have reached the same conclusion under other privacy statutes. *See, e.g., Doe v. Chao*, 540 U.S. 614, 619 (2004) (requiring damages under Privacy Act of 1974); *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 205 (4th Cir. 2009) (same under the Stored Communications Act); *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029 (N.D. Iowa 2011) (same); *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 654 (E.D. Va. 2010) (same).

In *Deacon v. Pandora Media, Inc.*, No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012), the Court held that plaintiff had standing under Article III by alleging a mere violation of the statute without more, but that decision relied exclusively on Ninth Circuit precedent not binding here, and it conflicts with *Chao*, *Cohen, Sterk,* and *Van Alstyne*. *Deacon* also did not address the penal nature of the VRPA.

The Sixth Circuit has not squarely addressed Article III standing for a statute like the VRPA. In *In re Carter*, 553 F.3d 979 (6th Cir. 2009), the Sixth Circuit held plaintiffs had standing under the Real Estate Settlement Procedures Act without alleging overpayment for settlement service because they had received a referral "sullied" by kickbacks. *Id.* at 989. In *Carter*, however, plaintiffs alleged the kickbacks would have a direct economic impact on real estate transactions, a form of harm sufficient under Article III. *See also Halaburda* at *4. Here, there is no such direct economic impact alleged.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Kinder's complaint in its entirety with prejudice.

Dated:          June 13, 2014

/s/ Robert M. Jackson
Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
Honigman Miller Schwartz and Cohn,
LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
(313) 465-7430
rjackson@honigman.com
aoreilly@honigman.com

ATTORNEYS FOR DEFENDANT
MEREDITH CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014 I electronically filed the foregoing Motion to Dismiss the Complaint with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Robert M. Jackson
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Phone: (313) 465-7430
Email: rjackson@honigman.com
(P40723)