**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEBORAH KINDER, individually, and on
behalf of all others similarly situated,

                Plaintiff,

    v.

MEREDITH CORP., an Iowa corporation,

                Defendant.

Case No. 1:14-cv-11284

[Hon. Thomas L. Ludington]

**PLAINTIFF KINDER'S *CORRECTED* RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

Respectfully submitted by:

Henry M. Scharg – P28804
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
302 W. Main Street
Northville, Michigan 48167
Tel: 248.596.1111
Fax: 248.596.1578

Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
J. Dominick Larry
nlarry@edelson.com
Mark S. Eisen
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Kinder and the putative class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................................... 2

    *Michigan's Video Rental Privacy Act* ......................................................................... 2

    *Meredith Sells Its Michigan Customers' Private Magazine Subscription Information* .................................................................................................................... 3

    *Kinder Never Consented to Meredith's Disclosure of Her Personal Reading Information* .................................................................................................................... 4

ARGUMENT ................................................................................................................................ 4

    I.      MEREDITH'S ATTACKS ON KINDER'S STANDING FALL FLAT ......... 4

           A.    The VRPA Does Not Require Kinder To Plead Actual Damages .......... 5

           B.    Meredith's Article III Standing Arguments Seriously Misunderstand The Instant Case (And Controversy) ............................ 8

           C.    Kinder Sufficiently Pleads Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing ............................................................................................. 11

    II.    KINDER PLEADS A VRPA CLAIM—THE ACT COVERS MAGAZINES SUBSCRIPTIONS AND KINDER PLEADS THAT SHE PURCHASED HER MAGAZINES "AT RETAIL" FROM MEREDITH ... 13

           A.    Meredith Can't Overcome The Fact That The VRPA's Plain Language Expressly Applies To All "Written Materials," Including Magazines ................................................................................. 13

           B.    Meredith's Cherry-Picking Of The Legislative History Ignores That Michigan's Legislature Provided Privacy Protections For All Written Materials, Including Magazine Subscriptions ........................ 16

           C.    Meredith Sells Magazines "At Retail," And Kinder Alleges That She Purchased Magazines At Retail Directly From Meredith ........... 18

    III.   KINDER SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT, WHICH SHE SPECIFICALLY ALLEGES INCORPORATED THE VRPA ................................................................ 19

    IV.   MEREDITH'S ATTACK ON KINDER'S UNJUST ENRICHMENT CLAIM IGNORES THE COMPLAINT'S PLAIN LANGUAGE ............... 20

**CONCLUSION** ...................................................................................................................20

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................4

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ...........................................8

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ............................................8

*Doe v. Chao*, 540 U.S. 614 (2004) ....................................................................9, 10

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2005).......................................................14

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ..................................................9

*Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138 (1874) ...............................17

*Warth v. Seldin*, 422 U.S. 490 (1975)..................................................................8

## United States Circuit Court of Appeals Cases

*Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009) .......................6

*Dowell v. Wells Fargo Bank, NA*, 517 F.3d 1024 (8th Cir. 2008) .......................7

*In re Carter*, 553 F.3d 979 (6th Cir. 2009).....................................................8, 11

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006) ........7, 9

*Newton v. Merill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998).................17

*Nixon v. Kent County*, 76 F.3d 1381 (6th Cir. 1996)..........................................15

*Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003) .........................................16

*Morrell v. Star Taxi,* 343 Fed. Appx. 54 (6th Cir. 2009) ...................................7

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012)...........8

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ..............................11, 20

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .............7

*Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*,
    173 F.3d 988 (6th Cir. 1999)...................................................................17

*Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009) ......................................9, 10

*White v. U.S.*, 601 F.3d 545 (6th Cir. 2010) ..................................................................................4

## United States District Court Cases

*Cain v. Redbox Automated Retail, LLC,* 981 F. Supp. 2d 674 (E.D. Mich. 2013)................*passim*

*Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.,*
    789 F. Supp. 2d (N.D. Iowa 2011) ................................................................................ 10

*Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166 (N.D. Cal. 2012) ................................5, 9

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010)......................................................12

*Galaria v. Nationwide Mutual Ins. Co.,*
    --- F. Supp. 2d ---, 2014 WL 689703 (S.D. Ohio Feb. 10, 2014)......................................12

*Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642 (E.D. Va. 2010) ...........................10

*Halaburda v. Bauer Publishing Co., LP,*
    No. 12-cv-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ............................*passim*

*In re Barnes & Nobel Pin Pad Litig.,*
    No. 12-cv-1817, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ..........................................12

*In re Hulu Privacy Litig.,*
    No. 11-cv-03764, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ....................................10

*In re LinkedIn User Privacy Litig.,*
    No. 12-cv-3088, 2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ......................................12

*Lipa v. Asset Acceptance, LLC,* 572 F. Supp. 2d 841 (E.D. Mich. 2008) ....................................15

*Low v. LinkedIn Corp.,*
    No. 11-cv-1468, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ................................12, 13

*Marshall v. Music Hall Ctr. for Performing Arts, Inc.,*
    No. 95-cv-70910, 1995 WL 871212 (E.D. Mich. Nov. 2, 1995) ........................................7

*Redman Agency, Inc. v. Allstate Ins. Co.,*
    No. 1:89-cv-114, 1991 WL 526300 (W.D. Mich. Oct. 30, 1991)....................................19

*Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) ............................................11

**State Court Cases**

*Donajkowski v. Alpena Power Co.,* 596 N.W.2d 574 (Mich. 1999) ..............................................17

*In re Acquisition of Land for Va. Park Neighborhood Dev. Program,*
    *Michigan A-4-2*, 283 N.W. 2d 771 (Mich. Ct. App. 1979) .......................................11, 12

*Maple Condo. Ass'n v. Countrywide Home Loans, Inc.,*
    768 N.W.2d 88 (Mich. Ct. App. 2009) ........................................................................20

*Tobin v. Civil Serv. Comm'n*, 331 N.W.2d 184 (Mich. 1982) ....................................................10

*Ziegler v. Witherspoon,* 49 N.W.2d 318 (Mich. 1951)..................................................................19

**United States Statutes**

Fair Credit Reporting Act, 15 U.S.C. § 1681n ..............................................................................6

Video Privacy Protection Act, 18 U.S.C. § 2710 ..........................................................................2

**State Statutes**

Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ..............................................................*passim*

**Legislative History Materials**

*Privacy: Sales, Rentals of Videos, etc*., House Legislative Analysis Section,
    H.B. No. 5331 (Jan. 20, 1989)..........................................................................1, 2, 3, 17

Video and Library Privacy Protection Act, S. 2361, 100th Cong. (1988) .....................................2

**Secondary Sources**

Black's Law Dictionary (9th ed. 2009) .......................................................................................18

Expert Witness Report of Dr. Serge Egelman, Ph.D.,
    *In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD,
    Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012)..........................................................12

*Retail*, Merriam-Webster Online Dictionary,
    http://www.merriam-webster.com/dictionary/retail (last accessed July 14, 2014) ..........18

## STATEMENT OF ISSUES PRESENTED

Should the Court deny Defendant's Motion to Dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) because Michigan's Video Rental Privacy Act confers privacy rights, the invasion of which are sufficient to confer standing both statutory and constitutional standing?

Plaintiff Answers: Yes.


Should the Court deny Defendant's Motion to Dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) because Plaintiff alleges that Defendant's unlawful conduct caused her economic harm, thereby providing an additional basis for statutory and constitutional standing?

Plaintiff Answers: Yes.


Should the Court deny Defendant's motion to dismiss Plaintiff's claim under the Video Rental Privacy Act because the statute, by its plain text, applies to the disclosure of magazine subscription lists?

Plaintiff Answers: Yes.


Should the Court deny Defendant's motion to dismiss Plaintiff's state common law claims under Rule 12(b)(6) because the claims are adequately pled?

Plaintiff Answers: Yes.

## CONTROLLING AND MOST IMPORTANT AUTHORITY

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

*White v. U.S.*, 601 F.3d 545 (6th Cir. 2010).

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991)

*Warth v. Seldin*, 422 U.S. 490 (1975)

*Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010)

*In re Carter*, 553 F.3d 979 (6th Cir. 2009)

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006)

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012)

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012)

*Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009)

*Deacon v. Pandora Media, Inc.*, No. 11-cv-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012)

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010)

*Kinder v. United Bancorp Inc.*, No. 11-cv-10440, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012)

*Halaburda v. Bauer Publishing Co., LP*, No. 12-cv-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)

*Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013).

*In re Acquisition of Land for Virginia Park Neighborhood Development Program, Michigan A-4-2*, 283 N.W. 2d 771 (Mich. Ct. App. 1979)

*Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010).

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004)

*Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138 (1874)

*Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003)

*Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988 (6th Cir. 1999).

*In re Hulu Privacy Litig.*, No. 11-cv-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012).

*Ziegler v. Witherspoon,* 49 N.W.2d 318 (Mich. 1951)

*Redman Agency, Inc. v. Allstate Ins. Co.,* 1:89-cv-114, 1991 WL 526300 (W.D. Mich. Oct. 30, 1991).

## PRELIMINARY STATEMENT

This putative class action challenges Defendant Meredith Corp.'s ("Meredith") routine practice of selling its customers' detailed magazine purchase records—including their full names, home addresses, and subscription titles ("Personal Reading Information")—to data mining companies and, really, anybody else willing to pay for them, in violation of Michigan's Video Rental Privacy Act, M.C.L. §§ 445.1711-15 ("VRPA"). The VRPA recognizes that "a person's choice in reading, music, and video entertainment is a private matter," and, as such, prohibits companies from disclosing their customers' reading, listening, and video records without consent. *See Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331 (Jan. 20, 1989) (attached hereto as Exhibit A). Acting in total disregard of the VRPA, Meredith routinely (and secretly) sells its customers' statutorily protected information to various third parties without their permission or consent to do so.

Plaintiff Deborah Kinder ("Kinder")—a subscriber to *Ladies' Home Journal* and some of Defendant's other magazines—has already had her detailed Personal Reading Information sold by Meredith without her consent. Rather than bring its conduct into compliance with the VRPA, Meredith attacks Kinder's claims by raising the same recycled arguments that have already been squarely rejected by Judges in this District presiding over similar VRPA cases. *See Halaburda v. Bauer Publishing Co.,* No. 12-cv-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) (Steeh, J.); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013) (Rosen, J.). Specifically, Meredith asserts that: (1) Kinder lacks Article III and statutory standing because she didn't suffer actual damages, which are supposedly required, (2) the VRPA (amazingly) doesn't apply to magazines, (3) the breach of contract claim fails for a lack of detail and the absence of any damages, and (4) the unjust enrichment claim fails because there's nothing wrong with

1

profiting from unlawful conduct.

Each of Meredith's arguments lacks merit.  First, Kinder sufficiently pleads both statutory and Article III standing—Meredith wrongfully disclosed her Personal Reading Information to unrelated third party companies, violated the Act, invaded her privacy, and caused her to overpay for magazines that she never would have purchased in the first place had she known that her subscription records would be disclosed.  Second, the VRPA covers "books or other written materials," and thus, plainly applies to magazines.  Next, Meredith breached its contract with Kinder by failing to comply with all applicable state laws, and finally, the Complaint specifically details how Meredith was unjustly enriched by its unlawful sale and disclosure of Kinder's magazine purchase records.

For all these reasons, Meredith's Motion to Dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

### Michigan's Video Rental Privacy Act

Congress passed the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), in 1988, giving substantial privacy protections to consumers' video purchase and rental histories. The original draft of the federal VPPA was quite broad, protecting video and audio recordings as well as library rentals.  *See* Video and Library Privacy Protection Act, S. 2361, 100th Cong. (1988).  In its final form, however, its protections were scaled down to video rental and purchase records.  *See* 18 U.S.C. § 2710.

As contemplated under the VPPA, Michigan's legislature decided to go a step further and passed the VRPA to more broadly "preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." (Ex. A.)  The VRPA "recognize[s] [that] a person's choice in reading, music, and video entertainment is a private

matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else, for that matter." *Id.* In the name of safeguarding privacy, the Act provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . *shall not disclose* to any person, other than the customer, *a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.*

M.C.L. § 445.1712 (emphasis added). Any customer whose information is disclosed in violation of the VRPA "may bring a civil action against the person and may recover both of the following: (a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater; [plus] (b) Costs and reasonable attorney fees." M.C.L. § 445.1715. Though the original draft of the VRPA did not provide for a private right of action, this civil action provision was added to "offer more in the way of recourse for injured parties." (*See* Ex. A.)

### Meredith Sells Its Michigan Customers' Private Magazine Subscription Information

Meredith is a company that publishes some of the most widely circulated magazines in the United States. (*See* Plaintiff's Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Despite the substantial revenue its magazine subscriptions generate, Meredith has an entire business division (known as Meredith Database Marketing Services) dedicated to selling its customers' Personal Reading Information. (*Id.* ¶¶ 2, 3, 33–39, 49, 50, 65-67.) To increase the "street value" of such data, Meredith trades its customers' Personal Reading Information by disclosing it to unrelated third party data mining companies in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id.* ¶¶ 33, 49.) In this way, Meredith is able to "enhance" its customers' Personal Reading Information with additional data about each subscriber, including their income levels, religion, religious habits, ages, political affiliations, travel habits, etc. (*Id.* ¶¶ 28–30, 33–35, 65.) Meredith then sells such information (in both basic and "enhanced" form) to unrelated third parties. (*Id.* ¶¶ 35–36, 49, 65.)

3

***Kinder Never Consented to Meredith's Disclosure of Her Personal Reading Information***

No matter how they subscribe, Meredith's customers never consent to disclosure of their magazine subscription records. (Compl. ¶¶ 4, 37-39, 43, 47, 68.) This is because—during the subscription process—Meredith's customers are never presented with or required to consent to any terms or policies informing them of Meredith's disclosure practices. (*Id.* at ¶¶ 37, 43, 44, 66, 67.) Likewise, even after subscribing, Meredith fails to notify its customers that it will disclose any information third parties, let alone their Personal Reading Information. (*Id.* at ¶¶ 4, 37, 39, 43, 44, 46, 66, 67.) Nonetheless, Meredith has disclosed—and continues to disclose—without consent or prior notice, Kinder's Personal Reading Information (i.e., information that identifies Kinder as a *Better Homes and Gardens*, *Ladies' Home Journal*, *Family Circle*, and *Midwest Living* subscriber) to third parties, including other data miners, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes.

## ARGUMENT

On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff, *White v. U.S.*, 601 F.3d 545, 551 (6th Cir. 2010), and a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## I.    MEREDITH'S ATTACKS ON KINDER'S STANDING FALL FLAT.

Meredith argues that the entire case fails for lack of statutory and Article III standing. Meredith asserts that showing injury under the VRPA requires Kinder to plead actual damages, which she supposedly fails to do. (Defendant's Memorandum of Law in Support of Motion to Dismiss, Dkt. 11 ["Def. Br."] at 19-21.) The problem for Meredith is that—as two other Courts in this District have already found—actual damages aren't required under the VRPA. *See, e.g.,*

*Halaburda,* 2013 WL 4012827 at *6 ("the VRPA explicitly provides for statutory damages of $5,000 *as an alternative to actual damages.* The court questions how liability under the statute could possibly be construed to require a showing of actual damages when the state legislature has explicitly allowed for statutory damages") (emphasis added). Indeed, the VRPA allows for statutory damages to any "customer identified in a record or other information that is disclosed in violation of [the] act," M.C.L. § 445.1715, and Kinder pleads an invasion of privacy sufficient to establish injury in fact. Moreover, Kinder alleges actual harm in the form of overpaying for her magazine subscriptions.

**A.      The VRPA Does Not Require Kinder To Plead Actual Damages.**

Meredith's argument ignores that the VRPA doesn't have an actual damages requirement. ( Def. Br. at 19–21.) Rather, the Act provides:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following . . . (a) Actual damages, including damages for emotional distress, *or $5,000.00, whichever is greater* [plus] (b) Costs and reasonable attorney fees.

M.C.L. § 445.1715 (emphasis added). Not surprisingly, every court to have considered the issues has found that the plain language of the VRPA "explicitly provides for statutory damages of $5,000 *as an alternative* to actual damages." *Halaburda,* 2013 WL 4012827, at *6 (emphasis added); *see also id.* at *4 ("a close reading of the VRPA reveals that it contains absolutely no language to require that a claimant suffer any actual injury apart from a violation of the statute, and plaintiffs have not alleged any specific injury apart from the statutory violation."); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 683 (E.D. Mich. 2013) (same); *Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1172 (N.D. Cal. 2012) (finding that the VRPA's "civil remedy provision allows for recovery based on a showing of actual damages *or* statutory

damages") (emphasis in original); Timothy Baughman, David G. Chardavoyne, Kenneth M. Mogill, Hon. Cynthia D. Stephens, Hon. William B. Murphy, John VandenHombergh, Michigan Non-Standard Jury Instr. Civil § 32:10 (attached as Ex. B) ("A plaintiff who successfully pursues a civil action under the [VRPA] is entitled to actual damages, including damages for emotional distress, or $5,000, whichever amount is greater. ***Thus, a plaintiff can recover even if actual damages were not established***.") (emphasis added).

Indeed, when faced with similar language under the Fair Credit Reporting Act, 15 U.S.C. § 1681n, the Sixth Circuit explained in *Beaudry v. TeleCheck Services, Inc.* that "[b]ecause 'actual damages' represent an *alternative* form of relief, and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim." 579 F.3d 702, 705–06 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010) (emphasis in original).[1]  The Honorable Judge Hood recently found the same with respect to the Electronic Funds Transfer Act.  *See Kinder v. United Bancorp Inc.*, No. 11-cv-10440, 2012 WL 4490874, at *2 (E.D. Mich. Sept. 28, 2012) (Where a statute "allow[s] consumers to recover actual damages, *if any*, [and] statutory damages . . . [t]he statute allows recovery even when there are no actual damages.") (emphasis in original).[2]

---

[1]     Meredith's attempt to explain away *Beaudry*, (Def. Br. at 21), is meritless.  Meredith argues that because the FCRA has a "willfulness" requirement (and the VRPA does not), this somehow requires the Court apply different cannons of statutory construction to the VRPA. The *Beaudry* court, however, in no way predicated its standing decision on the statute's "willful violation" requirement, and instead referenced willfulness *only* in responding to concerns about the creation of a strict liability regime.  *Beaudry*, 579 F.3d at 708; *see Halaburda* 2013 WL 4012827, at *7 (finding that there is "no need to apply the 'rule of lenity' or any other canon of statutory construction" to the VRPA).

[2]     Further, courts routinely reject arguments that actual damages are required when statutory damages are provided as an alternative, especially in consumer privacy cases. *See*, *e.g.*, *Klimas v.*

Nonetheless, and despite the VRPA's plain statutory language, Meredith cherry picks the phrase "damages to the customer," and argues that these four words must mean that actual damages are required to bring a claim under the statute.  (Def. Br. at 20.)  But the *Halaburda* and *Sterk* courts have already considered—and rejected—the exact same argument:

> [T]he court notes that the four words "damages to the customer" have been taken out of the context of the rest of that sentence by defendants.  In fact, the word damages is part of the phrase "for damages," and the word customer is part of the phrase "to the customer (identified in a record or other information . . .)."  The court reads these words simply as meaning that the entity violating the statute will face liability for damages, payable to individuals properly identified as prohibited by the act.  Moreover, this reading is in harmony with the fact that the legislature included a statutory damages provision, as discussed above.

*Halaburda*, 2013 WL 4012827, at *6; *Cain*, 981 F. Supp. 2d at 683 ("Judge Steeh's discussion on Article III and statutory standing in *Halaburda* is well-reasoned and persuasive").  Meredith's attempt to make an out-of-context argument should be rejected here as well.

Meredith's authorities offer it no help.  *Morell v. Star Taxi*, 343 Fed. Appx. 54, 57 (6th Cir. 2009)—which Meredith cited for the proposition that "the VRPA requires plaintiff to allege damages to have standing" (Def. Br. at 19)—dealt with an assault claim against a taxi company and had nothing to do with the VRPA.  Likewise, *Marshall v. Music Hall Ctr. for Performing Arts, Inc.*, 1995 WL 871212 (E.D. Mich. Nov. 2, 1995) dealt with federal copyright law.  And finally, Meredith's citation to pure dicta in *Dowell v. Wells Fargo Bank, NA*, 517 F.3d 1024, 1026 (8th Cir. 2008) is entirely misplaced given the court's refusal to "delve into this issue of statutory construction at this time."  *Id*.  Put simply, Meredith's cases fail to provide any reason

---

*Comcast Cable Commc'ns., Inc.*, 465 F.3d 271, 275−76 (6th Cir. 2006) (Cable Act does not require actual damages); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) (Video Privacy Protection Act allows "$2,500 in 'liquidated damages,' without the need to prove 'actual damages,'" on a claim of unlawful disclosure).

to impose an actual damages on VRPA plaintiffs.[3]

Meredith's attempt to read the VRPA as requiring actual damages should be rejected.

**B.      Meredith's Article III Standing Arguments Seriously Misunderstand the Instant Case (And Controversy).**

Meredith's next argues that none of Kinder's injuries are sufficient to confer Article III

standing.  (Def. Br. at 21.)  Meredith's argument fails for three reasons: it misapprehends what is

required to establish Article III standing, ignores precedent establishing that statutory privacy

violations confer standing, and overlooks Kinder's allegations of economic harm.

To start, "the minimal standing requirements of Article III" require a plaintiff show:

> (1) . . . an 'injury in fact' that is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the
> challenged action of the defendant; and (3) it is likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012).  Standing "may

exist solely by virtue of statutes creating legal rights, *the invasion of which creates standing*."

*In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) (emphasis in original) (internal quotation

omitted); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (violation of

statutory right causes "a legal injury" sufficient to confer standing).  In cases involving statutory

rights, "the standing question . . . is whether the . . . statutory provision on which the claim rests

properly can be understood as granting persons in the plaintiff's position a right to judicial relief."

*Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Here, the VRPA creates a right to privacy of reading information, and it grants a right to

relief to any "customer identified in a record or other information that is disclosed in violation of

---

[3]      Oddly, while Meredith asserts that the only cases supporting Plaintiff's position "are not
binding" and "conflict with Supreme Court precedent," it fails to identify what Supreme Court
precedent those decisions supposedly conflict with (*see* Def. Br. at 19–21), and offers only non-
binding decisions to support its own position.  (*See id.*)

this act." M.C.L. §§ 445.1712, 445.1715. Kinder alleges that Meredith violated her right to privacy in the information she reads, (*see* Compl. ¶¶ 2, 5, 33−39, 45−51, 61−74), and she has brought suit to exercise her right to relief. (*See id.* ¶ 79); M.C.L. § 445.1715. Thus, as every court to address the issue has held, Kinder has Article III standing to sue. *See Halaburda*, 2013 WL 4012827, at *6 ("Here, a statute was created by a state legislature to protect individual consumers from certain disclosures of their personal information. The court finds that plaintiffs, as those in the *Beaudry* case, have satisfied Article III standing requirements");[4] *Cain*, 981 F. Supp. 2d at 683 ("Judge Steeh's discussion on Article III and statutory standing in *Halaburda* is well-reasoned and persuasive"); *Deacon*, 2012 WL 4497796, at *4 (VRPA claims confer Art. III standing); *see also Klimas*, 465 F.3d at 276 (Violations of Cable Act's privacy provisions confer Art. III standing); *cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991) ("Although disclosure of [individuals'] personal information constitutes only a *de minimis* invasion of privacy when the identities of the [individuals] are unknown, the invasion of privacy becomes significant when the personal information is linked to particular [individuals].").

Meredith's arguments offer nothing to suggest otherwise. Meredith contends that privacy violations without actual harm cannot confer standing. In support, it cites *Doe v. Chao*, 540 U.S. 614 (2004) and *Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009)). (Def. Br. at 24.) These cases are inapposite. Indeed, although the Court in *Doe* found that the Privacy Act of 1974 required a showing of actual damages, that statute provides for "actual damages sustained by the individual . . . but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Doe*, 540 U.S. at 619. As the *Doe* Court held, such language does not

---

[4]     In fact, in the *Halaburda* case, Judge Steeh later denied the defendants' motion for leave to file an interlocutory appeal on the standing issue, finding it governed by *Beaudry*, and adopting the plaintiffs' position that "the decision of the district court [was] not subject to any difference of opinion." *Halaburda*, Dkt. 58 (E.D. Mich. Dec. 23, 2013).

present statutory damages as an alternative since "a person entitled to recovery" is limited by those who suffered "actual damages." *Id.* at 620–21. The VRPA contains no such requirement.[5]

The *Van Alstyne* case offers Meredith even less help. In *Van Alstyne*, the court found that statutory damages under the Stored Communications Act were only available upon a showing of actual damages because the act's language mirrored that in *Chao*. 560 F.3d at 205. The Fourth Circuit was careful to explain that if Congress wanted to provide free-standing statutory damages, it "could have written a simpler, unambiguous statute," stating that "the United States shall be liable to the individual in an amount equal to the sum of (A) whichever is greater: actual damages sustained by the individual as a result of the refusal or failure, or $1,000"—language basically identical to the VRPA. *Id.* at 205 (distinguishing the Wiretap Act and Driver's Privacy Protection Act on such grounds.).[6]

Finally, because the VRPA grants substantive privacy rights, Meredith's reliance on *Tobin v. Civil Service Commission*, 331 N.W.2d 184 (1982) for the proposition that "disclosing subscription information does not violate the common law right to privacy" is misplaced. (Def. Br. at 23.) The *Tobin* case predates the enactment of the VRPA by six years, and in any event, Kinder didn't bring a common law claim for invasion of privacy. Rather, Kinder's claim is predicated on the substantive rights granted to her under the VRPA. *See In re Carter*, 553 F.3d

---

[5]      Further, as one other federal court has noted, the *Chao* decision did not deal with Article III standing issues, but rather with the requirements of the federal Privacy Act's statutory damages provision. *See In re Hulu Privacy Litig.*, No. 11-cv-3764, 2013 WL 6773794 , at *9 (N.D. Cal. Dec. 20, 2013 (noting that *Chao* is about the applicability of a statutory damages provision, and *not* about Article III standing).

[6]      Defendant cites to *Van Alstyne's* progeny, *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.,* 789 F. Supp. 2d 1029 (N.D. Iowa 2011) and *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 654 (E.D. Va. 2010) for the same proposition—that the Stored Communications Act requires actual damages. (Def. Br. at 24.) These cases are inapplicable for the same reason that *Van Alstyne* is not applicable to this case—the Stored Communications Act, unlike the VRPA, requires a showing of actual damages.

at 988 ("Congress no doubt has the right to create legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right."). Thus, Kinder sufficiently pleads Article III standing.

### C.   Kinder Sufficiently Pleads Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing.

Though Meredith focuses only on allegations that its disclosure diluted the value of Kinder's personal information (Def. Br. at 22), Kinder also alleges that: (i) Meredith forced her to overpay for her magazine subscriptions, and (ii) she would never have purchased magazine subscriptions from Meredith in the first place had she known that Meredith would disclose her Personal Viewing Information.

Where a plaintiff alleges that she paid for a good or service and didn't receive the full benefit of the bargain, the plaintiff alleges economic injury in the form of overpayment. *See*, *e.g.*, *Cain*, 981 F. Supp. 2d at 679, 687–88; *In re Acquisition of Land for Virginia Park Neighborhood Development Program, Michigan A-4-2*, 283 N.W. 2d 771, 773 (Mich. Ct. App. 1979); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (finding unjust enrichment where Plaintiff alleged she did not receive paid-for data security protections); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 628 (N.D. Cal. 2011) (Plaintiff overpaid and suffered economic loss because Defendant's "conduct caused him either to buy a product that he would not have bought, or to buy a product that was inferior, of lower quality and less value, than that offered."); *In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1163 (C.D. Cal. 2010) (plaintiffs overpaid and suffered economic loss where they alleged "that he or she would probably not have purchased or leased his or her Toyota vehicle had the defect been known at the time of purchase, but certainly would not have paid as much for it"); *Lipton v. Chattem, Inc.*, No. 11-cv-2952, 2012 WL 1192083, at *3 (N.D. Ill. Apr. 10, 2012) (plaintiff

11

alleged economic loss where "she claim[ed] that she purchased a product worth less than what she paid for it, and also that she would not have purchased the product had she known it contained [a defect].") (citing *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011)).

Here, Kinder alleges that she paid money for her Meredith subscriptions, (Compl. ¶¶ 51, 75, 81-82, 88, 93), which entitled her to privacy in her subscription records.  (*Id.* at ¶¶ 51-52, 75-76, 81-84.)  Meredith's unlawful disclosures prevented Kinder from receiving the full benefit of those privacy protections.  (*Id.* at ¶¶ 51-52, 73–77, 88, 93–96.)  Thus, Kinder alleged economic harm because she did not receive the full benefit of the bargain she paid for.[7]  *See Cain*, 981 F. Supp. 2d at 679, 687–88; *In re Acquisition of Land*, 283 N.W. 2d at 773; *see also Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (finding economic harm where "disclosure of [Class's] undeniably sensitive information is not something that [they] bargained for when they signed up and paid fees for [Defendant's] service"); *In re LinkedIn User Privacy Litig.*, No. 12-cv-3088, 2014 WL 1323713, at *6 (N.D. Cal. Mar. 28, 2014) (finding allegations of economic harm where plaintiff alleged that "she would not have made [a] purchase (or that she would have negotiated for a lower price) but for [the defendant's] misrepresentation.").

Meredith's cases do not reject Kinder's injury.  Meredith relies on three cases—*Low v. LinkedIn Corp,* No. 11-cv-1468, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011), *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill Sept. 3, 2013), and *Galaria v. Nationwide Mutual Ins. Co.*, No. 2:13-cv-118, 2014 WL 689703 (S.D. Ohio 2014)—to assert that diminution of the *value* of a plaintiff's personal information does not confer Article III standing.  (Def. Br. at 22.)  Unlike in those cases, however, Kinder isn't seeking to recover for a

---

[7]      Recent studies confirm that consumers price privacy into their purchases.  *See* Expert Witness Report of Dr. Serge Egelman, Ph.D., *In re LinkedIn User Privacy Litig.*, No. 5:12-cv-3088-EJD, Dkt. No 78-1, at 4–6 (N.D. Cal. Apr. 30, 2013).

diminution of the value of her Personal Reading Information, but rather, for the amount that she overpaid Meredith in exchange for privacy protections that she never received. For example, in *Low*, unlike this case, the plaintiff did not allege that he paid the defendant any money in exchange for privacy protections. The court implied, however, that allegations of economic injury would have been sufficient to confer Article III standing. *Low*, 2011 WL 5509848, at *4. As such, Meredith's attacks on Kinder's overpayment allegations fail.

In the end, neither Article III nor the VRPA requires actual damages to confer standing. And even if they did, Kinder alleges actual economic harm by virtue of overpayment.

## II.   KINDER PLEADS A VRPA CLAIM—THE ACT COVERS MAGAZINE SUBSCRIPTIONS AND KINDER PLEADS THAT SHE PURCHASED HER MAGAZINES "AT RETAIL" FROM MEREDITH.

Stating a claim under the VRPA requires Plaintiff to allege that: (1) Meredith "was engaged in the business of selling at retail . . . books or other written materials," (2) Meredith disclosed "a record or information concerning the purchase" of the books or written materials to "any person, other than the customer," and (3) the disclosure "indicat[ed] the identity of the customer." M.C.L. § 445.1712. Meredith doesn't dispute that Kinder has satisfied any of these elements. Instead, Meredith argues that, even if Kinder has standing to bring such a claim, the VRPA doesn't apply to the sale of magazine subscriptions provided through the mail, and that Kinder didn't purchase the Meredith magazine subscriptions "at retail." Both arguments fail to withstand scrutiny.

### A.   Meredith Can't Overcome The Fact That The VRPA's Plain Language Expressly Applies To All "Written Materials," Including Magazines.

Meredith first argues that magazines purchased through a subscription are not protected by the VRPA because the Act "does not (and cannot) apply to magazine subscriptions provided by mail." (Def. Br. at 9-10.) Meredith claims that because postal workers would be able to see

what magazines the consumers are subscribing to, that information can't really be "private," or meant to fall under the purview of the VRPA.  Defendant goes on to argue that the *absence* of legislative history to the contrary "confirms this" conclusion, and that because no law enforcement agency has criminally prosecuted it, it can't be liable.  (Def. Br. at 11.)  This argument ignores the plain language and purpose of the VRPA.

 "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotation omitted).  Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  When the statutory language is unambiguous, "judicial inquiry is complete."  *Id*. at 254.

Here, the VRPA is unambiguous: it protects records relating to the purchase of "books or other written materials."  M.C.L. § 445.1712.  Magazines plainly fall within the definition of "other written materials," and Meredith cannot seriously contend otherwise.  The legislature could have simply limited the Act to books—but it didn't.  Indeed, if magazines are not considered "other written materials," one wonders what would be.  Like books, magazines are bound, contain pages of text, are publicly available, and can reveal to others information regarding the reader's interests, beliefs, age, gender, political affiliation, income, and more.  As such, it's no surprise that the *Halaburda* court has already expressly found that the VRPA applies to magazine subscriptions.  *See Halaburda*, 2013 WL 4012827, at *7.

Meredith's argument that the VRPA can't apply to magazines—because magazine subscriptions are delivered by mail—is just misdirection.[8]  Meredith completely ignores Kinder's

---

[8]      For starters, Defendant's entire discussion of the workings of the U.S. Postal Service is

14

allegations that Defendant is harvesting its customers' Personal Reading Information, supplementing it with the help of data miners, and selling it to pretty much whoever is willing to pay, all without consumers' knowledge and consent.[9]   (Compl. ¶¶ 33-37.)   The plain text of the VRPA makes clear that such conduct constitutes a violation.   As such, the Court's analysis of Defendant's hypothetical can end here.   *See Nixon v. Kent County*, 76 F.3d 1381, 1390 (6th Cir. 1996) (". . . .we must apply the law as Congress has written it. Where the plain language of the statute resolves the question before us, our work is done.").

Notwithstanding, Meredith's "subscription by mail" argument is unconvincing.   It is one thing for a mail carrier to deliver a magazine to a consumer's home—it is another thing entirely for that mail carrier to keep detailed records of subscription histories, supplement those records using data miners, and sell that information to anyone willing to pay.   Unlike Meredith, the U.S. Postal Service complies with the Privacy Act of 1974, which prohibits the U.S. Postal Service from selling or renting personal information to outside parties and from marketing products to citizens without their consent.[10]

Finally, Meredith's Fourth Amendment argument—that customers cannot have a "reasonable expectation of privacy" in magazine subscriptions since they are delivered through the mail, and therefore, subscriptions cannot be covered by the VRPA—is a red herring.   Under

---

unsupported by any evidence and completely outside of any allegations in the Complaint—which means the Court should not consider it at all.   *Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 852 (E.D. Mich. 2008) ("courts generally do not consider facts outside the complaint when adjudicating a motion under Rule 12(b)(6)").

[9]      Plaintiff does not complain about disclosure to the U.S. Postal Service—in fact, customers subscribing to magazines by mail presumably would expect that their mail carrier would deliver the mail to their houses, and thus, if anything, can be viewed as a consented-to disclosure under the VRPA's customer-consent exception.   M.C.L. § 445.1713(a).

[10]     *See* "Privacy Policy" *available at URL:* http://about.usps.com/who-we-are/privacy-policy/welcome.htm. (last accessed July 14, 2014).

M.C.L. § 445.1713(a), customers may consent to any disclosures that they approve, including those attendant with delivery through the U.S. Mail.

Meredith cannot overcome the fact that the VRPA plainly applies to all "written materials" offered for rental or sale, which includes magazine subscriptions. Nor does it have a credible argument that the conduct it engages in blatantly violates the VRPA. Thus, it must resort to unsupported hypotheticals and asks the Court to rewrite the VPRA to sanction its conduct. The Court should decline its invitation.

> **B.** **Meredith's Cherry-Picking Of The Legislative History Ignores That Michigan's Legislature Provided Privacy Protections For All Written Materials, Including Magazine Subscriptions.**

Thwarted by the plain language, Meredith turns to the legislative history (or more accurately, the lack thereof), arguing that the absence of any mention of magazines delivered via mail in the legislative history "confirms" that the VRPA doesn't apply to magazine subscriptions.

To start, the Court should disregard Meredith's legislative history discussion entirely because the VRPA is straightforward and unambiguous. The Court "may resort to a review of congressional intent or legislative history only when the language of the statute is not clear." *Mitchell v. Chapman*, 343 F.3d 811, 826 (6th Cir. 2003). As explained above, "books or other written materials" plainly includes magazines, so there is no need to consult the legislative history. In any event, Meredith's claim that the lack of legislative history on delivery of magazines by mail "confirms the VRPA's limitations" is nonsense. The absence of certain discussions in the legislative history is no indicator of legislative intent. *Donajkowski v. Alpena Power Co.*, 460 Mich. 243, 258, 596 N.W.2d 574, 581, 583 (1999) ("Michigan courts determine the Legislature's intent from its *words*, not from its silence.").

Meredith's remaining argument, that magazine publishers cannot be subject to the VRPA

because they have been selling mailing lists since before the VRPA was enacted, also fails.  (Def. Br. at 11.)  Industry-wide misconduct is not a defense to statutory violation. *See Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138, 146 (1874) ("If [defendants] have been in the habit of disregarding the law, this does not relieve them from the consequences nor establish a different law."); *see also Newton v. Merill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 274 (3d Cir. 1998) (rejecting industry practice defense).  In fact, the VRPA's civil remedies section specifically states that VRPA violations can occur "[r]egardless of any criminal prosecution for a violation of this act . . ." M.C.L. § 445.1715.  As such, its claims that it hasn't been criminally charged (yet) under the VRPA are meaningless.

In the end, any doubt about whether "other written materials" covers magazines should be resolved consistent with the Act's purpose of protecting personal privacy.  When faced with ambiguity (and there isn't any here), the Court "look[s] to the purpose of the statute for its proper interpretation."  *Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 995 (6th Cir. 1999).  The VRPA's purpose is simple: "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."  (Ex. A.)

The Court should therefore reject Meredith's assertions and find that magazine subscriptions are "other written materials" under the VRPA.

### C.      Meredith Sells Magazines "At Retail," And Kinder Alleges That She Purchased Magazines At Retail Directly From Meredith.

Even less credible than its definition of "other written material" is Meredith's claim that Kinder may have not subscribed to its magazines "at retail."  (Def. Br. at 12.)  This argument is easily defeated.

The VRPA applies to companies "engaged in the business of selling at retail . . . books or

17

other written materials."  M.C.L. § 445.1712.  "Retail" refers to "the sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing." Black's Law Dictionary (9th ed. 2009).  Similarly, Webster's defines "retail" as "the sale of commodities or goods in small quantities to ultimate consumers. . . ." *Retail*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/retail (last accessed July 14, 2014)' *see also Halaburda*, 2013 WL 4012827 at *7 ("As to "selling at retail," the court is persuaded by plaintiffs' argument that the defendants to these actions are in the business of publishing magazines, and sell them to the ultimate consumer of the products.").

Contrary to Meredith's suggestion, Kinder plainly alleges that Meredith is in the business of selling books, individual magazines, and magazine subscriptions directly to consumers. (Compl. ¶ 62.)  Meredith does not dispute this assertion, and its own website admits that it sells individual magazines directly to consumers.  *See Publications*, Meredith.com, http://www.meredith.com/subscriptions.html (last accessed July 14, 2014) (providing hyperlinks for purchase of magazines directly from Meredith).  Further, even though Kinder was not required to allege that she actually purchased her magazine subscriptions at retail from Meredith, she does so, alleging that she purchased the written materials directly from Meredith.  (Compl. ¶¶ 45, 63, 64.)  Thus, Kinder sufficiently pleads that Meredith sells magazines "at retail."  *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true.").

## III.  KINDER SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT, WHICH SHE SPECIFICALLY ALLEGES INCORPORATED THE VRPA.

Meredith's attack on Kinder's breach of contract claim fares no better.  Meredith asserts that Kinder hasn't identified the contract terms that it allegedly breached or that she incurred

damages as a result.  Neither argument has merit.

First, Kinder expressly alleges that her contract for magazine purchases incorporated the applicable laws at the Meredith and place of creation, including the VRPA.  (Compl. ¶ 84.) "Without a doubt, all contracts incorporate the law as it stands at the time of contracting." *Redman Agency, Inc. v. Allstate Ins. Co.,* No. 1:89-cv-114, 1991 WL 526300, at *5 (W.D. Mich. Oct. 30, 1991) (citing *Ziegler v. Witherspoon,* 49 N.W.2d 318, 327 (Mich. 1951)).

Kinder alleges that by disclosing her Personal Reading Information, Meredith breached the term of the subscription contract requiring VRPA compliance.  (Compl. ¶ 87.)  Plaintiff also alleges in great detail how Meredith breached such contractual terms.  (Compl. ¶¶ 33-39, 65-72.) Thus, Meredith's contention that Kinder doesn't identify the breached terms, (*see* Def. Br. at 14-15), ignores both the law and the plain allegations in the Complaint.

Meredith's argument that Kinder alleges no injury also goes nowhere.  (Def. Br. at 15-16.)  First, Kinder alleges that as a result of Meredith's breach, she overpaid for her subscriptions and Meredith gained excess profits.  (Compl. ¶¶ 75-76, 82–88.)  And as explained in Section I.C, *supra*, Kinder's allegations of overpayment—to say nothing of her demand for disgorgement— allege economic harm sufficient to support a breach of contract claim.  This same theory was accepted at the pleadings stage in other VPRA litigation in this district. *See Cain*, 981 F. Supp. 2d at 687 (citing *Maple Condo. Ass'n v. Countrywide Home Loans, Inc.*, 282 Mich. App. 452, 460, 768 N.W. 2d 88 (2009) ("Michigan law infers some damage—at least nominal damage— from the breach of a contract.")  Accordingly, Kinder adequately pleads a claim for breach of contract.

## IV.    MEREDITH'S ATTACK ON KINDER'S UNJUST ENRICHMENT CLAIM IGNORES THE COMPLAINT'S PLAIN LANGUAGE.

Meredith says Kinder's unjust enrichment claim must be dismissed because "[t]he

Complaint fails to allege that she suffered any loss." (Def. Br. at 16.)  But Kinder's Complaint details that Meredith received her Personal Reading Information and subscription payment, and that it unjustly retained that money and the money gained from disclosing her Personal Reading Information.  (*See* Compl. ¶¶ 93, 96.)  Meredith doesn't dispute that Kinder and the Class expected their Personal Reading Information would be kept confidential as part of their purchases, (*id.* at ¶ 97), or that Meredith's duty to maintain such confidentiality represented part of the value of the subscription Kinder paid for, but never received.  (*Id.* at ¶¶ 95–96.)  As such, Kinder alleges that Meredith improperly retains benefits conferred by Kinder, and Meredith's Motion to Dismiss the unjust enrichment claim also fails.  *See Resnick*, 693 F.3d at 1328 (finding plaintiff stated unjust enrichment claim where she alleged that data privacy was included in the price of a paid service, but not provided); *Cain*, 981 F. Supp. 2d at 679, 687-88 (denying motion to dismiss unjust enrichment claim incident to VRPA claim and upholding Plaintiff's "overpayment theory" of economic harm.").

## CONCLUSION

For the reasons stated above, Plaintiff Susan Kinder, individually and on behalf of all others similarly situated, respectfully requests this Honorable Court deny Meredith's Motion to Dismiss and award such other relief as it deems necessary, reasonable, and just.

Dated: July 14, 2014                          Respectfully submitted,

                                              **Deborah Kinder**, individually and on behalf of a
                                              class of similarly situated individuals,

                                              By: /s/ Ari J. Scharg
                                                      One of her Attorneys

Henry M. Scharg – P28804
LAW OFFICE OF HENRY M. SCHARG
302 W. Main Street

20

Northville, Michigan 48167
Tel: (248) 596-1111
Fax: (248) 596-1578
hmsattyatlaw@aol.com

Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
J. Dominick Larry
nlarry@edelson.com
Mark S. Eisen
meisen@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Counsel for Plaintiff Deborah Kinder and the Putative Class*

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, certify that on July 14, 2014, I served the above and foregoing ***Plaintiff Kinder's Corrected Response in Opposition to Meredith, Inc.'s Motion to Dismiss*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, the 14th day of July, 2014.

/s/ Ari J. Scharg