UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBORAH KINDER,

                Plaintiff,                           Case No. 14-cv-11284

v                                      Honorable Thomas L. Ludington

MEREDITH CORPORATION,

                Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Deborah Kinder brought this putative class action suit alleging violation of Michigan's Video Rental Privacy Act ("VRPA"), Mich. Comp. Laws § 445.1712, breach of contract, and unjust enrichment. Kinder alleges that, after she subscribed to some of Defendant Meredith's magazine publications, Meredith improperly disclosed her personal information to third-parties. As a result of these disclosures, Kinder claims that she has received "unwanted commercial solicitations and advertisements" that "cause her emotional distress, including irritation, annoyance, and anxiety and fear that her personal information will fall into the hands of thieves and scammers." Compl. ¶ 50.

On June 13, 2014, Meredith filed a motion to dismiss Kinder's claims for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Kinder has sufficiently alleged a claim for violation of the VRPA and for unjust enrichment, Meredith's motion to dismiss will be denied in part. However, because Kinder has not identified a specific contract that Meredith allegedly breached, her claim for breach of contract will be dismissed.

# I

Deborah Kinder is a subscriber of *Better Homes and Gardens*, *Ladies' Home Journal*, *Family Circle*, and *Midwest Living*, all of which are published, owned and operated by Meredith. ECF No. 1, ¶ 45, 46.  Kinder asserts that her personal reading information was disclosed to third parties without her notice or consent.  *Id.* ¶ 47, 48, 49.  The complaint contends that the personal reading information consisted of Kinder's name, address, title of magazines she subscribed to, as well as "age, income, travel habits, ethnicity, religion, and political affiliation.  *Id.* ¶ 3.  This information is supposedly used by third parties—notably data miners, direct-mail advertisers, and other organizations looking for monetary contributions, volunteer work, and potential voters. *Id.* ¶ 49.

According to Kinder, as a result of Meredith's disclosures of her personal reading information, she now receives unwanted commercial solicitations and advertisements which have caused her to waste "time, money and resources."  *Id.* ¶ 50.  She claims this is a significant intrusion into her privacy, and that she suffers from emotional distress, fear and anxiety that her personal information will fall into the hands of people who will use it for nefarious purposes.  *Id.*

# II

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true.  *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**III**

Meredith first contends that Kinder does not have standing to bring her claim for violation of the VRPA. Specifically, Meredith contends that Kinder lacks both Article III standing and statutory standing pursuant to the VRPA. In her complaint, Kinder alleges four injuries: (1) irritation, aggravation, anxiety, and fear that her personal information will be obtained and misused by scammers; (2) deprivation of the "full value" of her "paid-for" subscriptions; (3) violation of a "common law right to privacy"; and (4) violation of her statutory rights under the VRPA.

Article III standing is prerequisite in every federal case: "the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004). To establish standing, a plaintiff must allege an "irreducible constitutional minimum of an injury-in-fact." *Lujan v. Defenders of Wildlife*, 594 U.S. 555, 560 (1992). The Supreme Court has held that "[t]he injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Accordingly, pursuant to *Warth*, the Michigan legislature can create new legal rights by virtue of enacting a statute. Here, the Michigan statute at issue is the VRPA. If the VRPA

confers statutory standing, then Kinder would also have Article III standing.  *See Halaburda v. Bauer Pub. Co.*, 2013 WL 4012827, at *3 (E.D. Mich. Aug. 6, 2013).

Meredith argues that the VRPA does not confer standing on Kinder because she has not alleged that she suffered actual damages.  Meredith maintains that a statutory violation of VRPA, without actual damages, is insufficient to confer standing.  However, every single court to consider this interpretation has rejected Meredith's argument:

> As to statutory standing, Defendant repeats the same argument put forth by the magazine publishers in *Halaburda*, stating "[t]he VRPA expressly requires a plaintiff asserting a civil claim to have been 'damage[d],' and although the statute provides a minimum quantification of such damages, $5,000, it does not provide for any award without actual damages having occurred."  As Judge Steeh pointed out, such an interpretation lifts words out of context.  *Halaburda*, 2013 WL 4012827, at *6.  The entire provision—"a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act"—simply "mean[s] that the entity violating the statute will face liability for damages, payable to individuals improperly identified as prohibited by the act.  Moreover, this reading is in harmony with the fact that the legislature included a statutory damages provision." *Id.*

*Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 683-684 (E.D. Mich. 2013) (citations omitted); *see also Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166 (N.D. Cal. 2012) ("As an initial matter, the VRPA does not explicitly impose an actual injury requirement. Rather, the statute's civil remedy provision allows for recovery based on a showing of actual damages or statutory damages.") (emphasis original).

Here, Kinder has alleged that Meredith violated her rights pursuant to the VRPA by improperly disclosing and selling her personal information.  Taking her allegations as true, as this Court must on a motion to dismiss, the allegations would properly allege a violation of the VRPA.  Thus, Kinder has both statutory standing pursuant to VRPA and Article III standing.

Nevertheless, Meredith claims that these prior cases were wrongly decided.  Meredith warns that, if a plaintiff need not plead actual damages, then the VRPA would become a strict liability statute: "If Kinder's interpretation is accepted, the VRPA would impose purely punitive sanctions on defendants regardless of their state of mind or the plaintiff's loss, making it a penal statute with a strict liability regime."  Meredith also invokes the rule of lenity[1] to argue that the VRPA must be strictly construed so as to disfavor strict liability.

Meredith's concern is without foundation.  First, the VRPA's civil damages provisions do not serve a punitive function.  As noted by the Ninth Circuit, statutory damages may have a compensatory, deterrent, or punitive purpose:

> [W]e presume that the statutory damages serve a compensatory function.  *See L.A. News Serv. v. Reuters Television Int'l., Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (noting that awards of statutory damages can serve compensatory, punitive and/or deterrent purposes).  That Congress provided a consumer the option of recovering either actual or statutory damages, but not both, supports the presumption that they serve the same purpose.  We further note that Congress provided for punitive damages in addition to any actual or statutory damages . . . which further suggests that the statutory damages provision has a compensatory, not punitive purpose.

*Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (analyzing the Fair and Accurate Credit Transactions Act).

Here, the Court presumes that the VRPA's civil damages provision serves a compensatory, rather than punitive, purpose.  Indeed, this presumption is strengthened by the fact that the VRPA has separate criminal[2] and civil damages provisions.  These separate provisions suggest that the criminal provision serves a punitive purpose while the civil damages provision does not.  Accordingly, because statutory damages are presumed to serve a

---

[1] According to Black's Law Dictionary, the rule of lenity is "[t]he judicial doctrine holding that a court, in construing an ambiguous criminal statute that sets out multiple or inconsistent punishments, should resolve the ambiguity in favor of the more lenient punishment."

[2] *See* Mich. Comp. Laws § 445.1714: "A person who violates this act is guilty of a misdemeanor."

compensatory function, and because the VRPA has a separate criminal provision, the VRPA's civil damages provision serves a compensatory, rather than punitive, purpose.

Second, Meredith's reliance on the rule of lenity is inapposite here. "[T]he rule of lenity is typically invoked only when interpreting the substantive scope of a criminal statute or the severity of penalties that attach to a conviction"—not to the interpretation of a civil penalty. *United States v. Canal Barge Co., Inc.*, 631 F.3d 347, 353 (6th Cir. 2011). And as explained above, the VRPA has a criminal provision separate and distinct from the provisions imposing civil damages, which suggests that the two provisions should be treated as separate and distinct by reviewing courts.

But even if consideration of the rule of lenity was appropriate in gauging civil penalties, the Sixth Circuit has made clear that "the rule of lenity is only a tiebreaker of last resort when, 'after consulting with traditional canons of statutory construction, we are left with an ambiguous statute.'" *Canal Barge*, 631 F.3d at 353 (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)). As previous courts have held, there is no ambiguity in the VRPA's civil penalty provisions—a statutory violation is sufficient to confer standing. Meredith cannot attempt to obfuscate the statute by relying on a criminal canon of construction.

Accordingly, Meredith's arguments that Kinder lacks both statutory and Article III standing are without merit. The VRPA grants standing to plaintiffs who suffer a statutory violation and does not require actual damages. Therefore, Kinder's complaint will not be dismissed for lack of standing.

## III

Having determined that Kinder has standing, the Court will now address the substantive merits of the Meredith's motion to dismiss. Meredith first claims that Kinder has failed to state a

claim under the VRPA because (1) magazines are not included under the VRPA, and (2) Kinder does not allege that the magazine subscriptions were sold at retail by Meredith.

**A**

Meredith contends that magazines are not covered by the VRPA—a claim it concedes has been squarely rejected by another court in the Eastern District of Michigan.  Def.'s Br. 12, n.7.  Nevertheless, Meredith contends that the pre- and post-enactment legislative history reveals that the Michigan legislature did not intend the VRPA to apply to magazine.

The VRPA provides that:

> Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or **other written materials**, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712 (emphasis added).  Thus, because magazines are not explicitly enumerated, the issue is whether magazines qualify as "other written materials" under the VRPA.

When interpreting statutes, the Sixth Circuit has held that "[e]xcept in rare and exceptional circumstances, such as where Congress expressly indicates its intent that the plain meaning of the statutory language be avoided, unambiguous statutory language is to be regarded as conclusive."  *Boettger v. Brown*, 923 F.2d 1183, 1188 (6th Cir. 1991).  A reasonable interpretation of the phrase "other written material" includes magazines; indeed, Meredith does not argue to the contrary.  *See Halaburda*, 2013 WL 4012827, at *7 ("the words 'written materials' are less ambiguous, and the court finds it to be a term describing magazines.").

Instead, Meredith relies on the VRPA's legislative history to dispute the contention that "other written materials" includes magazines.  However, a court should only look to the

- 7 -

legislative history "when the statutory language is ambiguous." *Kelley v. E. I. DuPont Nemours and Co.*, 17 F.3d 836, 842 (6th Cir. 1994). "In all other instances, the plain meaning of the statute controls [the Court's] interpretation." *Id.* As noted above, the phrase "other written materials" is unambiguous, and therefore the Court declines to consider the legislative history of the VRPA.

Meredith also contends that applying the VRPA to magazines would "lead to an absurd result" and "imbue upon magazine subscriptions a level of privacy readers never expected, received, or recognized." Def.'s Br. 12. However, "[a] result . . . is not absurd merely because it does not comport with one's notion of what constitutes good policy." *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003). "[T]o justify a departure from the letter of the law . . . the absurdity must be so gross as to shock the general moral or common sense. And there must be something to make plain the intent of Congress that the letter of the statute is not to prevail." *Crooks v. Harrelson*, 282 U.S. 55, 59-60 (1930).

That the VRPA ensures Michigan magazine subscribers enjoy a high level of privacy is not so absurd so as to "shock the general moral or common sense." Indeed, the preamble to the VRPA establishes that the Michigan legislature enacted the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials . . . ." Preservation of Personal Privacy Act 278 of 1988 pmbl. Providing a high level of privacy in magazine subscriptions is consistent with this legitimate legislative purpose, and therefore the result is not absurd. *See Guzman v. United States Dep't of Homeland Security*, 679 F.3d 425, 433 (6th Cir. 2012).

And because this Court's "inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent," *United States v. Evers*, 669 F.3d 645, 656 (6th Cir. 2012), Meredith's argument that VRPA does not apply to magazines will be rejected.

**B**

Meredith next contends that Kinder has not stated a claim under VRPA because she has not alleged that she bought the magazines "at retail."  In her complaint, Kinder explains how she obtained her subscription to Meredith's magazines:

> 63. By subscribing to *Better Homes and Gardens*, *Ladies' Home Journal*, *Family Circle*, and *Midwest Living*, Kinder purchased written materials **directly from Meredith**.  M.C.L § 445.1712.
>
> 64. Because Kinder purchased written materials **directly from Meredith**, she is a "customer" within the meaning of the VRPA.  M.C.L. § 445.1711(a).

Compl. ¶ 63, 64 (emphasis added).  Meredith claims that this pleading is insufficient to show that Kinder bought the magazines "at retail" because she did "not indicate how she subscribed."  Def.'s Br. at 13.  Thus, Meredith contends, because a person can subscribe to a magazine through a third-party, Kinder has not sufficiently alleged that she bought the magazines "at retail."

As Meredith correctly contends, "at retail" is not defined in the statute, and therefore it should receive "its ordinary and natural meaning."  *Ltd., Inc. v. C.I.R.*, 286 F.3d 324, 332 (6th Cir. 2002).  The Oxford English Dictionary defines "retail" as "[t]he action or business of selling goods in relatively small quantities for use or consumption rather than for resale."  Therefore, if Kinder had purchased her magazine subscription through a third-party, rather than directly from Meredith, she would not have bought them at retail.  Accordingly, Meredith argues, because Kinder has not explicitly denied purchasing her magazine subscription from a third-party, she has failed to allege that she purchased the subscription "at retail."

Meredith's contention is without merit. Although Kinder did not provide the specific method of subscription, she alleged that she "purchased written materials directly from Meredith." Compl. ¶ 63, 64. *Iqbal*'s pleading standard requires a plaintiff to allege facts that, accepted as true, provide sufficient "factual enhancement" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, Kinder's allegations meet *Iqbal*'s requirements: she alleges that she purchased the subscription directly from Meredith, *i.e.*, she did not purchase the subscription from any other entity (such as third-parties). Thus, although Kinder did not provide the exact method she used to subscribe, she did claim that she purchased them directly from Meredith. Therefore, Kinder has adequately alleged that she purchased her magazines from Meredith at retail.

## IV

Meredith contends that Kinder has failed to state a claim for breach of contract—specifically, that Kinder has not identified a contract that was allegedly breached. Michigan law requires the following elements to establish a breach of contract claim: "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 718 (E.D. Mich. 2005) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Here, Kinder cannot meet the first element: the existence of a contract between the parties. She does not identify a specific contract that was allegedly breached. Instead, Kinder alleges that her subscription "incorporated the applicable laws at the time and place of creation,

including the VRPA," and that Meredith breached the contract arising out of that incorporation. As another district court explained, this argument is "nonsensical." *Halaburda*, 2013 WL 4012827, at *8. Kinder has already alleged an independent claim for violation of the VRPA, and she cannot piggy-back a breach of contract claim without identifying a specific contract at issue. Accordingly, Kinder's breach of contract claim will be dismissed.

## V

Meredith next contends that Kinder fails to state a claim for unjust enrichment because "she lost nothing of value." Under Michigan law, a claim for unjust enrichment requires the plaintiff "to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 905 (Mich. Ct. App. 2012). Meredith thus contends that Kinder cannot establish the second prong—a resulting inequity.

In her complaint, Kinder alleges that as part of the costs of her magazine subscriptions, she was entitled to confidentiality in her personal reading information. Because Meredith kept the full amount Kinder paid—yet failed to keep her information confidential—Kinder alleges that Meredith was unjustly enriched at her expense.

Kinder's allegations are similar to those of the plaintiff in *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013). In Cain, the plaintiffs brought suit against the defendants for unjust enrichment based on the defendants' alleged disclosure to third parties of personal information obtained during the video rental process. *Id.* at 677. Specifically, the plaintiffs asserted that "they didn't receive the full benefit of their bargain with Redbox (which included protecting their Personal Viewing Information in accordance with the VRPA)." *Id.* at

- 11 -

687.  Although the *Cain* court "expresses skepticism as to the ability of Plaintiffs to prove this is the case during discovery, this Court must take Plaintiffs' Complaint at its word."  *Id.*  Thus, the court decided, the plaintiffs in *Cain* had adequately alleged that the defendants had been unjustly enriched at the plaintiffs' expense.

Here, similar to the plaintiffs in *Cain*, Kinder alleges that Meredith was unjustly enriched when it retained her subscription fees but disclosed her personal reading information.[3]  Because Kinder has sufficiently alleged that Meredith was unjustly enriched, this claim will not be dismissed.  *See Halaburda*, 2013 WL 4012827, at *8 (The "plaintiffs have pleaded that defendants engaged in collection and illegal disclosure of their personal reading information, and that the monetary and other benefits associated with such disclosure represents unjust enrichment of defendants.  This cause of action will not be dismissed for failure to state a claim.").

## VI

Accordingly, it is **ORDERED** that Defendant Meredith Corporation's Motion to Dismiss (ECF No. 11) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff Kinder's breach of contract claim is **DISMISSED WITH PREJUDICE**.

Dated: August 26, 2014                         s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge

---

[3] Meredith spends a considerable amount of time arguing that, because personal data has no inherent monetary value, Kinder did not suffer any loss when Meredith disclosed her personal reading information.  But Meredith's argument misses the point: according to Kinder's allegations, Meredith agreed not to disclose her personal information.  That the personal information may be available through other means is irrelevant to Meredith's obligation to abstain from disclosure.  Thus, because Meredith did allegedly disclose Kinder's personal information—in spite of its alleged obligation to not disclose—Kinder did not receive the full amount of benefits she was entitled to based on her subscription.

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 26, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS