# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

DEBORAH KINDER, individually and
on behalf of all others similarly situated,

               Plaintiff,

    v.

MEREDITH CORPORATION, an Iowa
corporation,

               Defendant.

Case No. 1:14-cv-11284-TLL-CEB

Hon. Thomas L. Ludington

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Deborah Kinder respectfully requests that this Court certify this case as a class action and appoint her counsel as class counsel. Pursuant to Local Rule 7.1(a), Plaintiff's counsel conferred with counsel for Defendant Meredith Corporation, at which time Plaintiff's counsel explained the nature of the motion and its legal basis. Plaintiff's counsel requested, but did not obtain, concurrence in the relief sought.

For the reasons discussed in the accompanying brief, Plaintiff's motion should be granted.

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**


**ISSUE PRESENTED**

Should this Court certify a proposed class and three subclasses of subscribers to *Better Homes and Gardens*, *Family Circle*, *Ladies Home Journal*, *Midwest Living*, or *More Magazine* magazines whose private information was disclosed by Defendant Meredith Corporation in violation of Michigan's Video Rental Privacy Act. M.C.L. §§ 445.1711-1715?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

UNITED STATES CIRCUIT COURT OF APPEALS CASES:

*Powers v. Hamilton Cnty. Public Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007)

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)


UNITED STATES DISTRICT COURT CASES:

*Coulter-Owens v. Time, Inc.*,
    No. 12-CV-14390, 2015 WL 4527822 (E.D. Mich. July 27, 2015)

*Halaburda v. Bauer Publ'g Co.*,
    No. 2:12-cv-12831-GCS-RSW (E.D. Mich. Sept. 26, 2014)


STATUTES:

Federal Rule of Civil Procedure 23

Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-15

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................... 1

II.     THE VRPA ............................................................................................... 3

III.    FACTUAL BACKGROUND ..................................................................... 5

        A.      Meredith Discloses Its Customers' Private Information to
                Acxiom ........................................................................................... 5

        B.      Meredith Discloses Its Customers' Private Information to the
                Database Cooperatives ................................................................... 7

        C.      Meredith Did Not Obtain Consent to Disclose Customers'
                Information and Uses Identical "Opt Out" Notices ..................... 10

        D.      Plaintiff Kinder's Experience ...................................................... 11

IV.     ARGUMENT ........................................................................................... 12

        A.      The Proposed Class and Subclasses Satisfy the Requirements of
                Rule 23(a) ..................................................................................... 13

                1.      The Proposed Class and Subclasses are Sufficiently
                        Numerous ......................................................................... 13

                2.      The Claims of the Proposed Class and Subclasses Share
                        Common Questions of Law and Fact ................................ 14

                3.      Plaintiff's Claims are Typical of the Proposed Class and
                        Subclass Members' Claims .............................................. 18

                4.      Plaintiff and her Counsel Will Adequately Represent the
                        Class and Subclasses ....................................................... 20

        B.      The Proposed Class and Subclasses Fall within Rule 23(b) ............. 21

                1.      Common Questions of Law and Fact Predominate ............... 21

2.   A Class Action is Superior to Other Available
Methods of Adjudication ......................................................... 23

C.   Plaintiff's Counsel Should Be Appointed Class Counsel .................. 24

V.   CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT CASES:

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................... 13, 21

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................ 22

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) ................... 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................ 16


UNITED STATES CIRCUIT COURT OF APPEALS CASES:

*In re Am. Med. Sys., Inc.* 75 F.3d 1069 (6th Cir. 1996) .................................... 12, 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ..................................................... 14, 15, 19, 22

*Powers v. Hamilton Cnty. Public Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ........................................................ 22

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .............................. 19

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ............. 12, 23, 24


UNITED STATES DISTRICT COURT CASES:

*Cain v. Redbox Automated Retail, LLC*,
    2013 WL 5977931, at *1 (E.D. Mich. Nov. 12, 2013) ...................................... 4

*Coutler-Owens v. Time, Inc.*, No. 12-CV-14390,
    2015 WL 4527822 (E.D. Mich. July 27, 2015) ......................................*passim*

*Date v. Sony Elecs., Inc.*, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ............. 19

*Davidson v. Henkel Corp.*, 302 F.R.D. 427 (E.D. Mich. 2014) ............................ 14

*Halaburda v. Bauer Publ'g Co.*,
No. 2:12-cv-12831-GCS-RSW (Sept. 26, 2014) ......................................... 13

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001)............... 24

*In re CMS Emergency Erisa Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) .......... 12, 20

*In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583 (E.D. Mich.1985) .......... 24

*Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997)............... 20

*Parker v. Time Warner Entm't Co.*, 239 F.R.D. 318 (E.D.N.Y. 2007) ................. 16

*Supnick v. Amazon.com, Inc.*,
2000 WL 1603820 (W.D. Wash. May 18, 2000) ......................................... 16

STATUTES:

Federal Rule of Civil Procedure 23 ................................................................. *passim*

Michigan's Preservation of Personal Privacy Act,
M.C.L. §§ 445.1711-15 ........................................................................ *passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 ......................................... *passim*

MISCELLANEOUS:

Hon. William B. Murphy & John VandenHombergh,
*Michigan Non-Standard Jury Instr. Civil* § 32:10 (2014)........................... 16

*Privacy: Sales, Rentals, of Videos, Etc.*, House Legislative Analysis Section,
H.B. No. 5311, Jan. 20, 1989 ......................................................................... 4

## I.     INTRODUCTION

Just two weeks ago—in a nearly identical case submitted on what is sure to be nearly identical briefing—the Honorable George C. Steeh certified under Rule 23(b)(3) a class of consumers asserting claims under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-15, which is commonly referred to as the Video Rental Privacy Act ("VRPA"). *Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2015 WL 4527822 (E.D. Mich. July 27, 2015). There, like here, a consumer buying magazine subscriptions alleged that the publisher disclosed her and other purchasers' subscription records to data miner Acxiom Corporation and "database cooperative" Wiland Direct. *Id.* at *1. And there, like here, there was little—if anything—to separate the plaintiff's claim from the claims of any other consumer who had also purchased subscriptions to those magazines. *Id.* at, *1-3.

While *this* case is not 100% coincident with *Coulter-Owens*,[1] the few factual differences are ones common to every single member of the Class and Subclasses proposed below. Thus, here, Plaintiff's claims regarding Meredith's disclosure of her and other customers' personal reading information to data miner Acxiom Corporation ("Acxiom"), and "database cooperatives" Wiland Direct ("Wiland"), Alliant Co-operative ("Alliant"), and Abacus Alliance ("Abacus") (collectively,

---

[1] For example, this matter concerns consumers who purchased subscriptions *directly* from Meredith, whereas *Coulter-Owens* involved consumers who purchased from third parties. *See id.* at *6.

the "Database Cooperatives") are equally appropriate for certification.

Here, as in *Coulter-Owens*, Meredith's automatic disclosures to Acxiom and the Database Cooperatives establish a *prima facie* claim under the VRPA. And here, as in *Coulter-Owens*, Meredith's affirmative defenses—namely, (i) whether it obtained its customers' "written permission" to disclose their magazine purchase records, and (ii) whether the disclosures were made for the "exclusive purpose of marketing goods and services directly to the consumer" (and if so, whether the required opt-out notice was provided)—can be answered on a class-wide basis. *See* § 445.1713(a), (d). Indeed, Meredith admits that it makes the disclosures at issue as a matter of course and without written permission. And Meredith can't claim the disclosures were for the "exclusive purpose" of direct marketing, or that it provided the requisite opt-out notice before disclosing. (In fact, even when customers did "opt out" of marketing, Meredith made the disclosures anyway.)

Accordingly, Plaintiff Deborah Kinder ("Plaintiff") requests that the following class (the "Class") be certified:

> All persons who, between January 1, 2009 and March 28, 2014, were Michigan residents and purchased a subscription to *Better Homes and Gardens*, *Family Circle*, *Ladies Home Journal*, *Midwest Living*, or *More Magazine* directly from Meredith.

These individuals all had their personal magazine information disclosed by Meredith to Acxiom. In addition, Meredith also disclosed subsets of the Class members' information to one or more of the Database Cooperatives. To account

for these disclosures, Plaintiff requests that the following subclasses be certified:

> **Wiland Subclass:** All Class members whose personal magazine information was transmitted by Meredith to Wiland Direct.

> **Alliant Subclass:** All Class members who purchased subscriptions to *Better Homes and Gardens*, *Ladies Home Journal*, or *More Magazine* and whose personal magazine information was transmitted by Meredith to Alliant Co-operative.

> **Abacus Subclass:** All Class members who purchased subscriptions to *Better Homes and Gardens*, *Family Circle*, *Midwest Living*, or *More Magazine* and whose personal magazine information was transmitted by Meredith to Abacus Alliance.

(collectively, the "Subclasses") Because Plaintiff's and all Class members' claims against Acxiom are the same, and because Plaintiff's and all Subclass members' claims against the Database Cooperatives are the same, this litigation presents a textbook case for certification. *See Coulter-Owens*, 2015 WL 4527822.

Accordingly, Plaintiff respectfully requests that the Court certify this case as a class action pursuant to Rule 23(b)(3).

## II.    THE VRPA

The VRPA prohibits Meredith and other magazine publishers from disclosing certain information about their customers. The statute was passed shortly after its more limited federal analogue, the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which resulted from bipartisan outrage over the disclosure of the video records of then-Supreme Court nominee Robert Bork's family. *See* S. Rep. No. 100-599, at 7-8 ("[C]onsumer purchases and rentals of . . .

3

written materials [offer] a window into our loves, likes, and dislikes").

In passing the VRPA, the Michigan Legislature acknowledged that Michiganders "recognize that a person's choice in reading, music, and video entertainment is a private matter, and not fit for consideration by gossipy publications, employers, clubs, or anyone else." *See* H.B. No. 5331 (Jan. 20, 1989) (attached as Exhibit A).[2] To that end, the VRPA provides, in relevant part, that:

> a person, or an employee or agent of the person . . . engaged in the business of selling at retail . . . written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. Notably, while the VPPA only prohibits companies from disclosing the specific *titles* of the videos that their customers purchased or rented, Michigan's VRPA goes further by prohibiting companies from disclosing any "record or information concerning" their customers' purchases or rental of protected material. *See Cain v. Redbox Automated Retail, LLC*, 2013 WL 5977931, at *1 (E.D. Mich. Nov. 12, 2013) ("The VRPA differs from the federal VPPA in several ways. It, in certain aspects, contains broader consumer protections.").

As noted above, a class of magazine purchasers was recently certified in a nearly identical VRPA case in this District. *See Coulter-Owens*, 2015 WL

---

[2] All references to Exhibits refer to exhibits that are attached to the Declaration of Ari J. Scharg ("Scharg Decl."), submitted concurrently with this Motion.

4527822. Here, as in *Coulter-Owens*, the evidence needed for Plaintiff and every class member to prevail on their claims are common and focus solely upon Meredith's conduct—readily lending to Rule 23(b)(3) certification.

## III. FACTUAL BACKGROUND

Meredith is company that sells subscriptions to special interest magazines. (Dkt. 21 (Answer) ¶ 1.) But Meredith doesn't just sell magazines—it also makes upwards of $12 million a year from the disclosing its customers' statutorily-protected reading information. (Def.'s Resps. First Interrogs. (Exhibit B) at No. 9.) Unbeknownst to the public, when a consumer purchases a subscription to a Meredith magazine, the information collected by Meredith (i.e., the consumer's name, address, and magazine title choices) is either traded or sold to several third parties, each of which is discussed below. (Dep. Tr. of Meredith's Rule 30(b)(6) designee Julie Martin ["Martin Dep."] 10:23-11:4 (Exhibit C); Ex. B at No. 5.)

### A. Meredith Discloses Its Customers' Private Information to Acxiom.

Meredith transmits *every* customer's name and address—along with information concerning their purchased magazine subscriptions—to third party data miner Acxiom. (Martin Dep at 10:23-11:4; Scharg Decl. ¶¶ 7-8.) Acxiom has been described as "the quiet giant of a multi-billion dollar industry known as database marketing." Natasha Singer, *Mapping, and Sharing, the Consumer Genome*, N.Y. Times (June 16, 2012) (Exhibit D). It has reportedly amassed the

world's largest commercial database on consumers, featuring in-depth profiles of 190 million individuals and 126 million households in the U.S. *Id.*

While Meredith may not disclose magazine titles to Acxiom, it still discloses information "concerning" its customers' personal reading habits, including their names, addresses, and "lifestyle interests . . . derived from . . . specific magazines that [each] individual has subscribed to" automatically and on a weekly basis.[3] (Dep. Tr. of Acxiom R. 30(b)(6) designee Kay Atchley ["Atchley Dep."] (Exhibit E) at 18:10-20:20; *see also* Scharg Decl. ¶¶ 7-8.) As shown in the second and third columns of Figure 1, below, the "lifestyle interests" that Meredith discloses to Acxiom correlate directly with Meredith's magazine publications:

**Magazine Title Information**

Magazines: Sorted by magazine

| Magazine Codes | Magazine Category | Lifestyle Interests created by the Magazine Category |
|---|---|---|
| 2 | BHG - Better Homes & Gardens | Gardening, Gourmet Cooking/Fine Foods, Home Furnishings/Decorate, Crafts |
| 5 | LHJ - Ladies Home Journal | Fashion Clothing, Gourmet Cooking, Health/Natural Foods, Home Furnishings/Decorating, Physical Fitness/Exercise |
| 6 | MOE - More | Fashion Clothing, Dieting/Weight Control, Health/Natural Foods, Travel in USA |
| 15 | MWL - Midwest Living | Gardening, Home Furnishings/Decorating, Travel in the USA, Gourmet Cooking |
| 25 | Familiy Circle | Parenting, Children's Interest |

(Fig. 1)

---

[3] Such "lifestyle interests" qualify as a "record or information concerning" Meredith's Michigan's magazine subscribers, and undoubtedly provide Acxiom— and its other third party clients—with a "window" into their "loves, likes, and dislikes." *See* S. Rep. No. 100-599, at 7-8. And although Meredith may contend otherwise, the issue is a common one amongst all Class members.

(Scharg Decl. ¶ 8.) Once received, Acxiom uses the information—particularly the disclosed lifestyle interests—for its own business purposes in connection with its other (i.e., non-Meredith) clients in many different ways. (*Id.* ¶ 9.)[4]

In exchange for this valuable data, Acxiom appends Meredith's customer lists with *additional* demographic, lifestyle, and behavioral information, such as, for example, the individuals' age, height, weight, hobbies, marital status, and educational background for the purpose of creating detailed digital dossiers. (*Id.* ¶ 10.) Meredith, in turn, sells—for millions in annual profit—this "enhanced" data to third parties (including, for example, fundraisers) that want to contact targeted subsets of Meredith's customers.[5] (Ex. B at No. 5.)

While these facts highlight the privacy intrusions that Michigan sought to prevent with the VRPA, here, what matters is that the same information was provided by Meredith to Acxiom about Plaintiff and the Class in the same manner.

**B. Meredith Discloses Its Customers' Private Information to the Database Cooperatives.**

In addition to its weekly disclosures to Acxiom, Meredith also disclosed certain of its customers' specific magazine title information—including their

---

[4] *See also* Acxiom's "Data Solutions" products webpage (Exhibit F), where Acxiom explains that its "Data Enhancement" services leverage Acxiom's database of "[i]ndividual-, household- and address-level marketing data including demographic, lifestyle and behavioral information."

[5] Meredith's customer lists are marketed directly to third party fundraisers at a special rate. (*See* Exhibit G (Advertised "Fundraising Rate").)

names, addresses, and magazine subscription titles—to the Database Cooperatives at times throughout the Class period. (Missaghi Decl. ¶¶ 11-13, 17-19, 22-24.)[6] Among other valuable benefits, the Database Cooperatives let publishers like Meredith "prospect" for new customers by advertising to the subscribers of *other* magazine publishers. (Scharg Decl. at ¶¶ 13, 19.) The Database Cooperatives compete for the business of publishers (like Meredith) by touting the size and scope of their "cooperative" consumer databases—which grow as more publishers contribute their own customers' subscription records. (*Id.* at ¶¶ 11, 14, 17.) To entice publishers to contribute their own customer data, these cooperatives offer *quid pro quo* access to their larger consumer database. (*Id.* at ¶¶ 12, 15, 18.)

Here, the primary reason that Meredith disclosed its customers' magazine records to the Database Cooperatives is because that was the "price" to access the consumer information contained in each cooperative's database. In other words, to

---

[6] Meredith's records contain sufficient information to determine whether a particular individual is a member of the Class or a Subclass. (*See* Declaration of Amir Missaghi ("Missaghi Decl.") ¶¶ 2-5.) Nevertheless, and as further explained in the attached Missaghi Declaration, as long as someone was an active subscriber during the period in which Meredith was disclosing specific magazine title data to a specific database cooperative, his or her name, address, and magazine title information would have been disclosed on a regular basis. As such, any prospective Subclass member can easily—and objectively—determine whether his or her information was disclosed to one or more of the database cooperatives (and, thus, whether they are a member of one or more Subclasses) simply by demonstrating when they purchased subscriptions to each of the at-issue magazines. (*See* Missaghi Decl. ¶¶ 6-26.)

unlock the door and access the valuable information in the databases, Meredith agreed to contribute its subscriber files to each Database Cooperative on a monthly basis. (Scharg Decl. ¶¶ 12, 15, 18.)[7] Meredith could decide which subscriber files to contribute to each of the Database Cooperatives and disclosed, as shown in Fig. 2, below, its *Better Homes and Gardens* file to Wiland, Alliant, and Abacus; its *Family Circle* file to Wiland and Alliant; its *Ladies Home Journal* file to Wiland and Alliant; its *Midwest Living* file to Wiland and Abacus; and its *More Magazine* file to Wiland, Alliant, and Abacus. (Missaghi Decl. ¶¶ 13, 19, 24.)

| Magazine | Co-Op | Dates of Disclosures |
|---|---|---|
| **Better Homes & Gardens** (272,792 MI Orders) | Wiland | 1/2009 - 3/2012 |
| | Alliant | 1/2009 - 2/2013 |
| | Abacus | 1/2009 - 3/2014 |
| **Family Circle** (195,131 MI Orders) | Wiland | 1/2009 - 1/2010 |
| | Alliant | |
| | Abacus | 11/2011-8/2012 |
| **Ladies Home Journal** (125,802 MI Orders) | Wiland | 1/2009-3/2014 |
| | Alliant | 9/2011-8/2012 |
| | Abacus | |
| **Midwest Living** (152,967 MI Orders) | Wiland | 1/2009-7/2010 |
| | Alliant | |
| | Abacus | 11/2009-10/2012 |
| **More Magazine** (29,949 MI Orders) | Wiland | 1/2009-3/2013 |
| | Alliant | 1/2009-2/2013 |
| | Abacus | 1/2009-10/2012 |

(Fig. 2)

Put simply, Meredith used its subscribers' names, addresses, and reading

---

[7] Meredith, of course, benefitted from its participation in each database cooperative. Discovery has shown that Meredith disclosed its own customer information to both Wiland and Abacus so it could "find prospective customers that we can send subscription offer[s] to[.]" (Dahlquist Tr. 62:1-8; Scharg Decl. ¶¶ 13, 19.) Further, the Alliant disclosures were made to help Meredith "determine which of its customers are most likely to pay, to respond and fully pay up for their subscriptions." (Dahlquist Tr. 67:13-17.) (Scharg Decl. ¶ 16.)

choices as currency to access *other* publishers' customer lists and data, and again, provided the same information about each of its own subscribers (name, address, and magazine title) in the same manner to each of the Database Cooperatives.

### C. Meredith Did Not Obtain Consent to Disclose Its Customers' Information and Uses Identical "Opt Out" Notices.

Meredith made *no* effort to seek its customers' written consent to disclose their statutorily-protected information to third parties. As Julie Martin, Meredith's Consumer Marketing Director and Rule 30(b)(6) designee, testified:

> Q: I just need to make sure that you're not contending that you obtain people's written permission to disclose their subscription information to third parties.
> A: I would agree with that.
> Q: You would agree with the statement that - -
> A: The fact that we don't get their written permission.
> Q : And is that the same across all publications?
> A. Yes.

(Martin Dep 23:21-24:8; *see also* Ex. B, No. 11.)

Though failing to obtain written consent, Meredith purports to have allowed subscribers to "opt out" of third-party marketing. The supposed "opt-out notices" were provided at the bottom of one page of each magazine in miniscule font, (Ex. B, No. 13), and were essentially identical in form and content, (Martin Dep. 34:9-35:14). Each stated, with only minor variation:

> Our subscriber list is occasionally made available to carefully selected firms whose products may be of interest to you.  If you prefer not to

> receive information from these companies by mail or by phone, please let us know. Send your request along with your mailing label to Magazine Customer Service, P.O. Box 37452, Boone, Iowa 50037.

(*Id.* at 35:6-14.)

Importantly, even when Meredith received a third-party marketing "opt out" request by a subscriber, Meredith would make the disclosure to Acxiom and the Database Cooperatives anyway. (Missaghi Decl. ¶¶ 12, 18, 23.)

### D. Plaintiff Kinder's Experience.

Plaintiff was a Michigan resident throughout the entire class period and, during that time, purchased subscriptions to each of the at-issue magazines. (Missaghi Decl. ¶ 4; Ex. B at No. 3.) Specifically, Meredith's records confirmed that Kinder subscribed to *Better Homes and Gardens* as of April 1, 2003; *Family Circle* as of August 9, 2006; *Ladies Home Journal* as of December 8, 2005; *Midwest Living* as of July 17, 2008; and *More Magazine* as of January 16, 2013. (*Id.*) During the Class period, Kinder purchased all of her subscriptions directly from Meredith. (*Id.*) At no time did Kinder provide Meredith with consent to disclose her name and address in connection with her magazine subscription information to third parties. (*See* Martin Dep 23:21-24:8.) Nonetheless, like every member of the proposed Class, Kinder's name, address, and "lifestyle interests" were disclosed to Acxiom. (*See supra* § III.A.) Further, like members of the Subclasses, Kinder's name, address, and magazine subscription titles were

disclosed to the Database Cooperatives. (*See supra* § III.B.)

## V.    ARGUMENT

To be certified, a proposed class or subclass must satisfy all the criteria set forth in Federal Rule of Civil Procedure 23(a) and one of the criteria set forth in Rule 23(b). *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).[8] This Court must perform a "rigorous analysis" of whether the Rule 23 factors are met, which may include "touching" aspects of the merits. *Id.* at 851. Nevertheless, consideration of the merits is limited to determining whether the Rule 23 factors are met, and certification proceedings are not "a dress rehearsal for trial on the merits." *Id.* at 851-52. Further, any doubts about granting class certification should be resolved in favor of certification. *In re CMS Emergency Erisa Litig.*, 225 F.R.D. 539, 542 (E.D. Mich. 2004). Here, the proposed Class and Subclasses easily satisfy all the requirements of Rule 23(a) and

---

[8]   In addition, the definition of a proposed class "must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012). For a class to be sufficiently defined, "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Id.* at 538. Here, every element of the Class and Subclass definitions (Michigan residency, magazines subscribed to, date purchased, and third party to whom their information was disclosed) is an objective criterion to determine class membership, thus rendering the proposed class definite. *See Coulter-Owens*, 2015 WL 4527822, at *4-6 (finding proposed class of magazine subscribers was sufficiently defined by objective criteria, and thus, satisfied the ascertainability requirement).

one of the categories of Rule 23(b), and consequently, should each be certified.

Last month, in a detailed opinion performing the "rigorous analysis" required by Rule 23, Judge Steeh certified a class of purchasers of magazines published by Time, Inc. alleging that Time disclosed their protected information to Acxiom and Wiland. *Coulter-Owens*, 2015 WL 4527822. Similarly, another class of magazine purchasers was certified last fall in a case against a publisher alleging the disclosure of identical information. *Halaburda v. Bauer Publ'g Co.*, No. 2:12-cv-12831-GCS-RSW (E.D. Mich. Sept. 26, 2014).[9] Like the classes in those cases, the proposed Class and Subclasses here should be certified.

### A. The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a).

Rule 23(a) requires (1) that the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity), (2) that there are questions of law or fact common to the proposed class (commonality), (3) that the claims of the plaintiff are typical of those of the class (typicality), and (4) that the plaintiff will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). Each of these elements is met here.

#### 1. The Proposed Class and Subclasses are Sufficiently Numerous.

---

[9] While certification in *Halaburda* occurred as part of preliminary approval of a settlement, the Rule 23 standards are the same in the settlement and adversarial contexts. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The first requirement of Rule 23(a)—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). While no strict numerical test exists, "substantial" numbers of affected consumers satisfy this requirement. *Whirlpool*, 722 F.3d at 852. It is "generally accepted" that a class of forty or more members is sufficient to satisfy the numerosity requirement, and both the Sixth Circuit and courts in this District have certified classes with as few as thirty-five members. *See Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (certifying class of forty-nine plaintiffs).

Here, discovery has confirmed that between 2008 and 2014, Meredith sold more than 700,000 magazine subscriptions to *Better Homes and Gardens*, *Family Circle*, *Ladies Home Journal*, *Midwest Living*, and *More Magazine* to customers in Michigan. (Scharg Decl. ¶ 20.) As explained above, Meredith disclosed all such customers' information to Acxiom, and—as illustrated by Figure 2, *supra*—also disclosed a majority of such customers' information to the Database Cooperatives. Thus, the Class and Subclasses are sufficiently numerous.

### 2. The Claims of the Proposed Class and Subclasses Share Common Questions of Law and Fact.

The second requirement of Rule 23(a)—commonality—is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, "[t]he class' claims 'must depend upon a common

contention . . . [the] truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke.' " *Coulter-Owens*, 2015 WL 4527822, at *7 (quoting *Whirlpool*, 722 F.3d at 852). This inquiry focuses on "whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Whirlpool*, 722 F.3d at 852. There need only be a single common question in order to certify a class. *Id*. at 853.

Here, and closely analogous to the questions driving *Coulter-Owens*, the common contention on which the claims of all Class members depend is that Meredith disclosed each Class member's magazine subscription records—including full name, home address, and derived "lifestyle interests"—to Acxiom in violation of the VRPA. Determination of the truth or falsity of this contention will resolve an issue—*the* issue—central to each Class member's claims at once. Likewise, and *exactly* as in *Coutler-Owens*, the common contention on which the claims of all Subclass members depends is that Meredith disclosed each member's name, address, and magazine title to a Database Cooperative in violation of the VRPA. Determination of the truth or falsity of those contentions will resolve the central issue of all Subclass members' claims at once.

Determining the truth or falsity of these common contentions raises numerous common questions that track the elements of a VRPA claim, including: (1) whether Meredith is "engaged in the business of selling at retail . . . written

materials," (2) whether Meredith disclosed "information concerning the purchase . . . of those materials by a customer" to Acxiom (and with respect to the Subclasses, to Wiland, Alliant, or Abacus) and (3) whether the disclosed records or information indicated the customers' identities. M.C.L. § 445.1712; *see also* Hon. William B. Murphy & John Vanden Homberh, *Michigan Non-Standard Jury Instr. Civil § 32:10* (2014). As such, it is a common question whether Plaintiff and the members of the proposed Class and Subclasses all suffered the same injuries that entitle them to damages as a result. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Each of these legal questions can be determined on a class-wide basis as to the Acxiom disclosures (and on a subclass-wide basis as to the other disclosures), using the same evidence regarding Meredith's practices.[10] *See Coulter-Owens*, 2015 WL 4527822, at *7-9 (finding the litigation was "driven by issues that are common to the entire putative class.").

In addition, and also as Judge Steeh found in *Coulter-Owens*, "addressing

---

[10] Other federal courts have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., Supnick v. Amazon.com, Inc.*, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where defendants engaged in common course of conduct toward every member of proposed class: disclosing their personal information without their consent); *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question—whether class members were injured because of [defendant's] disclosure of their [statutorily-protected information] without properly notifying them of that practice").

defendant's affirmative defenses [will require] consideration of issues that are common" to the Class and Subclass. 2015 WL 4527822, at *7. Disclosures of protected information are excused under the VRPA if "for the exclusive purpose of marketing goods and services directly to the consumer" and the consumer is given written notice they can opt out of the disclosure. M.C.L. § 445.1713(d). But whether the defense applies is common to the Class and Subclass.

First, because the purposes of the disclosures to Acxiom, Wiland, Alliant, and Abacus were identical with respect to all Class and Subclass members, whether such disclosures were made *exclusively* for the "purpose of marketing goods and services directly to the consumer" will necessarily have common answers based on the same evidence from Defendant. *See Coulter-Owens*, 2015 WL 4527822, at *7 (holding that whether magazine publisher disclosed subscriber information for the exclusive purpose of marketing was a common question).[11]

Second, as in *Coulter-Owens*, because Meredith's purported opt-out notices were virtually identical for each magazine, whether such notices—which only notified customers they could opt out of receiving junk mail or calls—were

---

[11] While consideration of the merits is limited on class certification, discovery has shown that the at-issue disclosures were *not* for the exclusive purpose of marketing goods and services to its subscribers because, *inter alia*, (1) the disclosures to Acxiom were made in order to obtain "enhanced" customer data to facilitate Meredith's list-rental business, (*see supra* § III.A.), and (2) the disclosures to Wiland, Alliant, and Abacus were made to obtain access to cooperative databases that, *inter alia*, assist Meredith in acquiring *new* subscribers, (*see supra* § III.B.).

sufficient under the VRPA is a legal question common to the Class and Subclass:

> Assuming it is later determined that the disclosures were done for the exclusive purpose of marketing goods and services directly to the consumers, the court will need to address plaintiff's argument that the opt-out notices provided to consumers by defendant are legally insufficient, an argument that is also common to the entire class.

*Id.* Finally, even when its subscribers opted out of third-party marketing, Meredith disclosed their information anyway. (*Supra* §§ III.A-B.) Any opt-outs thus do not defeat commonality. *See Coulter-Owens*, 2015 WL 4527822, at *8 ("[D]efendant's argument that it provided notice to opt-out is not an impediment to class certification because discovery has already established that defendant disclosed information from customers who opted-out of disclosure.").[12]

Accordingly, Rule 23(a)(2)'s commonality requirement is satisfied.

### 3. Plaintiff's Claims are Typical of the Proposed Class and Subclass Members' Claims.

The third Rule 23(a) requirement—typicality—is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of all other class members, and if his or her claims are based on the same legal theory." *In re*

---

[12] None of the VRPA's other statutory defenses are available to Meredith here. The disclosures were not made pursuant to a court order or search warrant, were not made to collect payment for the magazines, and were not made with the written permission of the subscribers. *See* M.C.L. § 445.1713(a), (b), (c), (e).

*Am. Med. Sys., Inc.* 75 F.3d 1069, 1082 (6th Cir. 1996). This requirement "insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool*, 722 F.3d at 852-53. Thus, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Just like the plaintiff in *Coulter-Owens*, here, Plaintiff's VRPA claim arises out of the same course of conduct, is based on the same statute, and if successful will result in identical statutory payments. Meredith disclosed the name, address, and "lifestyle interest" of Plaintiff and all Class members to Acxiom, and the name, address, and magazine title of Plaintiff and all Subclass members to Wiland, Alliant, and Abacus respectively. If these disclosures violate the VRPA, then by pursuing her own interests in prosecuting her claim, Plaintiff will advocate for the interests of every Class and Subclass member. If she wins with respect to the Acxiom disclosures, the whole Class wins. If she wins with respect to the Wiland, Alliant, and Abacus disclosures, every Subclass member wins. Consequently, the typicality requirement is satisfied for the Class and each Subclass. *See, e.g., Coulter-Owens*, 2015 WL 4527822, at *9-10 (finding "the typicality factor favors class certification"); *Date v. Sony Elecs., Inc.*, 2013 WL 3945981, *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of

conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "[t]he class representatives' claims arise from precisely the same events, legal documents, and consequences and legal theories affecting all [class members]").

### 4. Plaintiff and her Counsel Will Adequately Represent the Class and Subclasses.

The final Rule 23(a) requirement—adequacy—is met where Plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, Plaintiff "[1] must have common interests with the unnamed class members; and [2] will vigorously prosecute, using qualified counsel, the interests of the class." *In re CMS*, 225 F.R.D. at 544. Here, Plaintiff is a member of the proposed Class and each Subclass, and she shares common interests with all other Class and Subclass members in obtaining statutory damages and injunctive relief for Meredith's disclosures of their protected information.

Further, Plaintiff has vigorously pursued these common interests and will continue to do so. Plaintiff has engaged in extensive written discovery, took the depositions of Meredith's and Acxiom's Rule 30(b)(6) designees, and sat for her own deposition. (Scharg Decl. ¶¶ 2-3.) In addition, she is represented by qualified and experienced counsel, who have been appointed to represent other classes of magazine subscribers with similar VRPA claims in this District (i.e., in the *Time*

and *Halburda* matters). (*Id.* ¶¶ 4-6.) Thus, the adequacy requirement is met.

**B.      The Proposed Class and Subclasses Fall within Rule 23(b).**

In addition to meeting all four of Rule 23(a)'s prerequisites for certification, the proposed Class and Subclasses must also fall within one of the subsections of Rule 23(b). Here, they fall within Rule 23(b)(3).

The purpose of Rule 23(b)(3) is "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal quotations omitted). A court may certify a class under Rule 23(b)(3) where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Class and Subclasses here satisfy Rule 23(b)(3).

**1.      Common Questions of Law and Fact Predominate.**

The "focus of the predominance inquiry" is whether the proposed class "is sufficiently cohesive to warrant adjudication by representation." *Whirlpool*, 722 F.3d at 860. The predominance test "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). "The predominance requirement is met if [a] common

question is at the heart of the litigation." *Powers v. Hamilton Cnt'y. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, as discussed above with respect to Rule 23(a)'s commonality and typicality requirements—and just as Judge Steeh found with respect to the central questions in *Coulter-Owens*, 2015 WL 4527822, at *11-12—it is. Each element of Plaintiff's claim presents common questions of law resolvable through the same evidence, all of which focuses on Meredith's conduct, rather than individual class members'.

As the Sixth Circuit has explained, "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers*, 501 F.3d at 619. In *Powers*, like here,

> [Plaintiff] has asserted a single factual theory of wrongdoing and seeks to recover based on the single legal claim that [Defendant] violated class members' . . . rights. The dispositive facts and law are the same as to each class member. This is sufficient to satisfy both the commonality and predominance requirements.

*Id*. Because Meredith engaged in a single course of conduct, class members' claims within the Class and Subclasses "will prevail or fail in unison," and the predominance prong is met. *Whirlpool*, 722 F.3d at 859 (quoting *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)).

Further, Meredith's potential opt-out defense does not raise individual issues, much less ones that would predominate over the common issues regarding Meredith's uniform course of conduct. As explained above, the opt-out question

only matters if Meredith can show that its disclosures were for the exclusive purpose of marketing (which is, itself, a common inquiry). But even if Meredith could do so, the opt-out defense is untenable because Meredith disclosed purchaser's information to Acxiom and the Database Collectives even if they opted out of marketing. Thus, and as in *Coulter-Owens*, the opt-out defense cannot defeat predominance. 2015 WL 4527822, at *11-12 ("Defendant's argument [that common issues do not predominate because of opt-out issues] is weak given the admission that all of its subscribers' information was disclosed to Acxiom, regardless whether a subscriber opted-out of disclosure.").

### 2. A Class Action is Superior to Other Available Methods of Adjudication.

Like predominance, the superiority prong of Rule 23(b)(3) is also satisfied. As Judge Steeh held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 2015 WL 4527822, at *12.

"[W]here a threshold issue is common to all class members, class litigation is greatly preferred." *Young*, 693 F.3d at 545. Here, as discussed, all questions necessary to determine whether Meredith violated the VRPA are common across the Class and each Subclass, rendering members' claims susceptible to resolution in one suit with common evidence. A class action suit is a much more efficient use of judicial and party resources than—and superior to—multiple individual suits.

*See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 326 (E.D. Mich. 2001) ("proceeding with this . . . litigation as a class action will achieve economies of both the litigants' and the Court's time, efforts and expense.") (internal quotations omitted); *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 610-11 (E.D. Mich.1985) (noting conservation of judicial resources favoring superiority).

In addition, many members of the proposed Class may not even be aware that Meredith is disclosing their protected information to third-parties. Where consumers are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545-46.

The proposed Class and Subclasses satisfy both prongs of Rule 23(b)(3) and meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). As such, the Court should certify the proposed Class and Subclasses.

**C.    Plaintiff's Counsel Should Be Appointed Class Counsel.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider (1) counsel's work in identifying or investigating potential claims, (2) their experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) their knowledge of the applicable law, and (4) the resources counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiff's counsel have extensive experience prosecuting privacy class actions, including similar VRPA suits on behalf of magazine subscribers against other publishers. (Scharg Decl. ¶¶ 4-5.) And Plaintiff's counsel have diligently prosecuted *this* matter by dedicating substantial resources to the investigation and litigation of the claims for the benefit of the class. (*Id.* ¶ 6.) Plaintiff respectfully requests that this Court appoint Ari J. Scharg of Edelson PC as class counsel.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order (1) certifying the proposed Class and Subclasses with Plaintiff as class representative, (2) appointing Ari J. Scharg of Edelson PC as class counsel, and (3) granting such other and further relief as this Court deems equitable and just.

Dated: September 11, 2015                    Respectfully submitted,

By:  /s/ Ari J. Scharg
    One of Plaintiff's attorneys

Henry M. Scharg (P28804)                     Ari J. Scharg (IL 6297536)
hmsattyatlaw@aol.com                         ascharg@edelson.com
LAW OFFICE OF HENRY M. SCHARG                Benjamin S. Thomassen (IL 6307169)
718 Ford Building                            bthomassen@edelson.com
Detroit, Michigan 48226                      EDELSON PC
Tel: (248) 596-1111                          350 North LaSalle Street, Suite 1300
Fax: (248) 671-0335                          Chicago, Illinois 60654
                                             Tel: 312.589.6370
                                             Fax: 312.589.6378

**CERTIFICATE OF SERVICE**

I, Ari J. Scharg, an attorney, certify that on September 11, 2015, I served the above and foregoing ***Plaintiff's Motion for Class Certification*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.


/s/ Ari J. Scharg