## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

|  |  |
|---|---|
| DEBORAH KINDER, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-11284-TLL-CEB |
| Plaintiff, | |
| v. | [Hon. Thomas L. Ludington] |
| MEREDITH CORPORATION, an Iowa corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**
Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

*Proposed Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.     Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.     Should Plaintiff's Counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.     Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed settlement class?

**Plaintiff's Answer: Yes.**

4.     Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 133 S. Ct. 1184 (2013)

*Coulter-Owens v. Time, Inc.*,
    No. 12-CV-14390, 2015 WL 4527822 (E.D. Mich. July 27, 2015)

*Halaburda v. Bauer Publ'g Co.*,
    No. 2:12-cv-12831-GCS-RSW (E.D. Mich. Sept. 26, 2014)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161 (E.D.
    Mich. Aug. 2, 2010)

*Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................ 1

II.     BACKGROUND ................................................................. 3

        A.      Michigan's Video Rental Privacy Act .................... 3

        B.      Plaintiff's Allegations ........................................... 4

        C.      The Litigation History and Settlement Discussions ........................ 5

III.    TERMS OF THE SETTLEMENT ..................................... 6

        A.      Class Definition .................................................. 6

        B.      Monetary Relief .................................................. 7

        C.      Prospective Relief ............................................... 7

        D.      Release ............................................................... 7

        E.      Notice and Administration Expenses ................... 8

        F.      Incentive Award .................................................. 8

        G.      Attorneys' Fees and Expenses .............................. 8

IV.     THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION
        FOR SETTLEMENT PURPOSES ..................................... 9

        A.      The Numerosity Requirement is Satisfied .................................... 10

        B.      The Commonality Requirement is Satisfied .................................. 11

        C.      The Typicality Requirement is Satisfied ...................................... 13

        D.      The Adequacy Requirement is Satisfied ....................................... 14

        E.      The Proposed Settlement Class Meets the Requirements of Rule
                23(b)(3) ................................................................. 17

       1.     *Common Questions of Law and Fact Predominate* ............... **18**

       2.     *A Class Action is a Superior Method for Adjudicating this Action* ................................................................................................ **19**

**VI.**    **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** ..................................................................................... **21**

**VII.**   **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** .................................................................................... **22**

**VIII.**  **THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE** ................................................................................. **28**

**IX.**    **CONCLUSION** ............................................................................... **30**

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................... 9, 18, 19, 20

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184 (2013) ............ 9, 19

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) ................................................ 25

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424 (2001) ........... 25

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................... 28

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................ 11, 12, 18

## United States Appellate Court Cases

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007) ...................................... 15

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ................................... 10, 13

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*,
722 F.3d 838 (6th Cir. 2013) ............................................................. 9, 11, 19

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) ................... 24

*Lane v. Facebook, Inc*., 696 F.3d 811 (9th Cir. 2012) ........................................ 2, 27

*Parker v. Time Warner Entm't Co.*, 331 F.3d 13 (2d Cir. 2003) ............................ 26

*Powers v. Hamilton Cty. Pub. Def. Com'n*, 501 F.3d 592 (6th Cir. 2007) ....... 18, 20

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) ................................... 15

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) .................................... 23

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) .......................... 15

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2010) .................. 20, 21

**United States District Court Cases**

*Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402 (E.D. Mich. 2012) ........ 21

*Coulter-Owens v. Time Inc.*, No. 12-cv-14390, 2015 WL 4527822 (E.D. Mich. July 27, 2015) ................................................................................. *passim*

*Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301 (E.D. Mich. 2008) .......................... 10

*Date v. Sony Electronics, Inc.*, No. 07-cv-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ............................................................................................ 14

*Davis v. Bank of Am.*, No. 9:05-cv-80806, Dkt. 46 (S.D. Fla. June 21, 2006) ... 2, 27

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) ...................... 2, 27

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001) ...................... 13

*Halaburda v. Bauer Publ'g Co., LP*, No. 2:12-cv-12831, Dkt. 63 (E.D. Mich. Sept. 26, 2014) ............................................................................................ 10

*Halaburda v. Bauer Publ'g Co., LP*, No. 2:12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) ................................................................................... 2, 16, 27

*Harris v. comScore*, Inc., 292 F.R.D. 579 (N.D. Ill. 2013) ................................... 16

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001) .......... 18, 20

*In re Facebook Privacy Litig.,* No. 5:10-cv-02389, Dkt. 69 (N.D. Cal. Dec. 10, 2010) ............................................................................................ 16

*In re Google Buzz Privacy Litig.*, No. 10-cv-00672, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ........................................................................................ 2, 27

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379, Dkt. 256 (N.D. Cal. Mar. 18, 2013) ......................................................................................... 2, 27

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011)16

*In re Packaged Ice Antitrust Litig.*,No. 08-md-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .......................................................................... 22, 23

*Int'l Union v. Ford Motor Co.*, Nos. 05-cv-74730, 06-cv-10331, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ..................................................... 15, 23

*Landwehl v. AOL*, No. 11-cv-1014, Dkts. 91, 133 (E.D. Va. May 24, 2013) .... 2, 27

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)............ 26

*Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997)............... 14

*Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412 (E.D. Mich. 2013) .......... 18

*McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D. Mich. 2013) ............ 10

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013) ............... 11, 17

*Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007)........................ 26

*Reese v. CNH America, LLC,* 227 F.R.D. 483 (E.D. Mich. 2005) ........................ 13

*Sheick v. Auto. Component Carrier, LLC*, No. 09-cv-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010).................................................................... 23, 24

*Supnick v. Amazon.com, Inc.*, No. 00-cv-0221, 2000 WL 1603820 (W.D. Wash. May 18, 2000) ........................................................................................ 12

*UAW v. Gen. Motors Corp.*, No. 05-cv-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006).................................................................................................. 25

## Rules and Statutes

Fed. R. Civ. P. 23...........................................................................................*passim*

Michigan Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* .... 3, 12

## Miscellaneous Authorities

Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25 (4th Ed. 2002) ............. 22

Conte & Newberg, 4 *Newberg on Class Actions*, § 11.53 (4th Ed. 2002) ............. 28

Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010) ................................................................. 25

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)........................................ 22

## I.    INTRODUCTION

This lawsuit accuses Defendant Meredith Corporation of violating the Michigan Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act ("VRPA")—by disclosing its customers' magazine subscription histories and personal reading habits to third party companies.

After over 18 months of hard fought litigation, which included substantive motion practice and completed merits and class discovery (that was informed by parallel litigation against other defendants accused of similar conduct), the Parties reached a class-wide settlement.[1] Under the Settlement, which was reached with the help of JAMS mediator Jed D. Melnick, Defendant has agreed to establish a $7.5 million non-reversionary Settlement Fund, which would be used to pay all approved claims, notice and administration expenses, an incentive award to Plaintiff Deborah Kinder, and attorneys' fees awarded by the Court to proposed Class Counsel. In terms of the monetary relief to class members, those who submit a short claim form will receive a *pro rata* cash award, estimated at $100.[2] And just as importantly, the Settlement also prohibits Defendant from disclosing any its Michigan customers' protected information to third-party companies for marketing purposes, including Acxiom Corporation, for a period of four years.

---

[1]  The Parties intend to file the executed version of their Class Action Settlement Agreement ("Settlement") with the Court by October 7, 2015.
[2]  This estimation is based upon typical participation rates in consumer class action settlements.

The proposed Settlement is in-line with the only other VRPA case to settle: *Halaburda v. Bauer Publ'g Co., LP*, No. 2:12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015). In *Bauer*, the court recently granted final approval to a similar settlement, which (on behalf of a smaller class) created a $775,000 cash fund and provided similar injunctive relief. There, as of final approval, claiming class members were expected to receive approximately $75, or roughly one quarter less than what class members should get in the instant settlement.

Further, the instant Settlement also meets or exceeds privacy settlements reached in litigation involving similar statutes that have been approved throughout the country. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) cert. denied, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directly $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, Dkt. 256 (N.D. Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig.*, No. 10-cv-00672, 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement); *Landwehl v. AOL*, No. 11-cv-1014, Dkts. 91, 133 (E.D. Va. May 24, 2013) (approving privacy settlement providing claimants with a cash payment of up to $100); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15); *Davis v. Bank of*

2

*Am.*, No. 9:05-cv-80806, Dkt. 46 (S.D. Fla. June 21, 2006) (approving privacy settlement providing claimants with a cash payment up to $150).

The relief attained for the proposed Settlement Class is exceptional and goes well beyond that required for preliminarily approval of the Settlement, especially in light of the risks and uncertainties inherent in complex litigation. Thus, Plaintiff respectfully requests that the Court grant her unopposed motion for preliminary approval in its entirety and direct that notice be disseminated to the proposed Settlement Class and a final fairness hearing be set.

## II.   BACKGROUND

### A.   Michigan's Video Rental Privacy Act

A brief summary of the VRPA will give context to the proposed Settlement. The Michigan legislature passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712. As such, the VRPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. To enforce the statute, the VRPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

3

### B.    Plaintiff's Allegations

Meredith is a company that publishes some of the most widely circulated magazines in the United States. (*See* Plaintiff's Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Plaintiff alleges that despite the substantial revenue its magazine subscriptions generate, Meredith has a business division dedicated to selling information related to its customers' magazine subscription histories and personal reading habits. (*Id.* ¶¶ 2, 3, 33–39, 49, 50, 65-67.) To increase the "street value" of such information, Plaintiff alleges that Meredith first trades its customers' protected reading information with certain third parties—including data mining companies—in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id.* ¶¶ 33, 49.) Meredith thereafter "enhances" its own customer profiles with this additional data (e.g., their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, etc.), and then sells such information to other unrelated third parties for a profit. (*Id.* ¶¶ 28-30, 33–36, 49, 65.)

Plaintiff further alleges that no matter how consumers subscribe (i.e., via postcard, over the phone, on its website, or through a subscription agent's website), Meredith's customers never provide Meredith with consent to disclose information related to their magazine subscriptions to third parties. (Compl. ¶¶ 4, 37-39, 43, 47, 68.) This is because—during the subscription process—Meredith's customers are

4

never presented with or required to consent to any terms or policies informing them of Meredith's disclosure practices. (*Id*. at ¶¶ 37, 43, 44, 66, 67.) Likewise, even after subscribing, Meredith fails to notify its customers that it will disclose any information to third parties, let alone their protected reading information. (*Id*. at ¶¶ 4, 37, 39, 43, 44, 46, 66, 67.) Nonetheless, Meredith discloses all of its customers' protected reading information to various third parties, including data miner Acxiom Corporation ("Acxiom"), without their consent or prior notice.

### C.   The Litigation History and Settlement Discussions

Plaintiff filed her class action lawsuit on March 28, 2014 in the United States Court for the Eastern District of Michigan. (Dkt. 1.) Thereafter, on June 13, 2014, Defendant moved to dismiss Plaintiff's claims under Rules 12(b)(1) and (b)(6), arguing that she lacked both Article III and statutory standing because she did not suffer actual damages from the alleged disclosures. (Dkt. 11.) On August 26, 2014, after full briefing, the Court denied Defendant's motion to dismiss the VRPA claims. (Dkt. 20.) Defendant thereafter filed its Answer on September 9, 2104, which denied the allegations generally and raised fourteen (14) affirmative defenses. (Dkt. 21.) The Parties then exchanged initial disclosures and served written discovery on each other and third parties. (Declaration of Ari J. Scharg ["Scharg Decl."] ¶ 4, attached hereto as Exhibit 1.)

Over the next eight months, the Parties engaged in substantial class- and

merits-related discovery. (*Id.*) During that time, Plaintiff reviewed and analyzed over 200,000 documents produced by Defendant and various third parties. (*Id.*) Plaintiff also took the depositions of two corporate representatives that Defendant designated under Rule 30(b)(6), and a corporate representative that was similarly designated by Acxiom. (*Id.*) For its part, Defendant conducted substantial written discovery on Plaintiff Kinder, and also took her deposition. (*Id.*)

On May 5, 2015, the Parties participated in a Court-ordered settlement conference in Bay City, Michigan, but were unable to make any progress toward resolution. (*Id.* ¶ 5.) Thereafter, on September 11, 2015—after completing full class and merits discovery—Plaintiff filed her Motion for Class Certification. (Dkt. 55.) Defendant filed its opposition to the motion on September 21, 2015. (Dkt. 64.)

On September 25, 2015, in the midst of the class certification briefing, the Parties participated in a private mediation with Jed D. Melnick, Esq. at JAMS in New York City. (Scharg Decl. ¶ 6.) After a full day of mediation and numerous rounds of arm's-length negotiations, the Parties ultimately reached an agreement on the principal terms of the Settlement, which is now before the Court. (*Id.* ¶ 7.)

## III.   TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement, and are briefly summarized as follows:

### A.   Class Definition

6

The "Settlement Class" is defined as:

All Michigan residents who purchased a subscription to a Meredith Publication between January 1, 2009 and March 28, 2014.[3]

(Agreement ¶ 1.29.)

## B.    Monetary Relief

Defendant shall establish a $7.5 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion, after payment of notice and administrative expenses, attorneys' fees, and an incentive award. (Agreement ¶¶ 1.31, 2.1.) No portion of the Settlement Fund will revert back to Defendant.  (*Id.* 2.1.)

## C.    Prospective Relief

For a period of four (4) years from the date of entry of the Preliminary Approval Order, Meredith agrees not to disclose any Michigan Subscriber Information to any third-party companies for marketing purposes, including Acxiom Corporation. (Agreement ¶ 2.2.)

## D.    Release

In exchange for the relief described above, Defendant and each of its related

---

[3]  Excluded from the Settlement are (1) any Judge or Magistrate Judge presiding over this Action and members of their families, (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees, (3) persons who property execute and file a timely request for exclusion from the class, and (4) the legal representatives, successors, or assigns of any such excluded persons. (*Id.*)

and affiliated entities (the "Released Parties" defined in ¶ 1.25 of the Settlement) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. (*See* Agreement ¶¶ 1.24-1.26 for full release language.)

### E.    Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. (Agreement ¶¶ 1.27, 1.31.)

### F.    Incentive Award

In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Kinder may receive, subject to Court approval, an incentive award of $10,000 from the Settlement Fund as appropriate compensation for her time and effort serving as class representative and party to the Action. Defendant will not oppose any request limited to this amount. (Agreement ¶ 8.3.)

### G.    Attorneys' Fees and Expenses

Defendant has agreed that the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court. (Agreement ¶¶ 1.31, 8.1.) Class Counsel have agreed to petition the Court for no more than 40% of the Settlement Fund, and Defendant has agreed not to oppose any request limited to this amount. (*Id*. ¶ 8.1.)

## IV.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184, 1191 (2013). Additionally, because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Recently, in a detailed opinion performing the "rigorous analysis" required by Rule 23, Judge Steeh certified a class of purchasers of magazines published by Time, Inc. alleging that Time disclosed their protected information to Acxiom and Wiland—two of the same third parties at issue in this case. *Coulter-Owens v. Time Inc.*, No. 12-cv-14390, 2015 WL 4527822 (E.D. Mich. July 27, 2015). Likewise, a

9

similar class of magazine purchasers was certified last fall in the *Bauer* action. *Halaburda v. Bauer Publ'g Co*., No. 2:12-cv-12831, Dkt. 63 (E.D. Mich. Sept. 26, 2014). Like the classes in those cases, the proposed Settlement Class here should be certified.

### A.   The Numerosity Requirement is Satisfied

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no fixed numerical threshold for determining impracticability of joinder, a "substantial amount of members will suffice." *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013). Only a reasonable estimate or some evidence of the number of members in the purported class is required. *Id.*; *see also Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Meredith's records, the proposed Settlement Class is comprised of approximately 980,000 Michigan residents who purchased a Meredith magazine subscription between January 1, 2009 and March 28, 2014. (Scharg Decl. ¶ 7.) Thus, there is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.     The Commonality Requirement is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 582-83.

Here, the common contention on which the claims of all class members depend is that Meredith disclosed each of its customer's protected information to Acxiom in violation of the VRPA. Determination of the truth or falsity of this contention will resolve an issue—the issue—central to each class member's claims at once. Determination of the truth or falsity of those contentions will resolve the central issue of all Settlement Class Members' claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a VRPA claim, including: (1) whether Meredith is "engaged in the business of selling at retail . . . written materials," (2) whether Meredith disclosed "information concerning the purchase . . . of those

11

materials by a customer" to Acxiom, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Meredith obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Meredith accurately informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. M.C.L. § 445.1712. As such, it is a common question whether Plaintiff and the members of the proposed Settlement Class all suffered the same injuries that entitle them to damages as a result. *See, e.g., Dukes*, 131 S. Ct. at 2551. Each of these legal questions can be determined on a class-wide basis using the same evidence regarding Meredith's practices. *See Coulter-Owens*, 2015 WL 4527822, at *7-9 (finding the litigation was "driven by issues that are common to the entire putative class.").

Numerous federal courts have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., Coulter-Owens,* 2015 WL 4527822, at *7); *Supnick v. Amazon.com, Inc*., No. 00-cv-0221, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common course of conduct toward every member of proposed class: disclosing their personal information without their consent).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.      The Typicality Requirement is Satisfied

The next prerequisite—typicality—requires that class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiff alleges that Meredith discloses all of the Settlement Class Members' subscription information to data miners (including Acxiom) without consent in the exact same manner and for the exact same purpose as a matter of policy and practice. Plaintiff alleges that such conduct violates the VRPA, which

13

provides identical statutory damages to all members of the Settlement Class. Plaintiff's representation of the Settlement Class is, therefore, appropriate because they were subjected to the same alleged unlawful conduct (i.e., Meredith's allegedly unlawful disclosures), and as a result, are entitled to identical statutory damages. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See, e.g., Coulter-Owens*, 2015 WL 4527822, at \*10 (finding "the typicality factor favors class certification"); *Date v. Sony Electronics, Inc.*, No. 07-cv-15474, 2013 WL 3945981, at \*3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims arose from the same events, legal documents, and consequences and legal theories affecting all class members).

### D.    The Adequacy Requirement is Satisfied

The final Rule 23(a) prerequisite requires that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed

14

members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, Nos. 05-cv-74730, 06-cv-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 562 (6th Cir. 2007).

In this case, Plaintiff Kinder—like each and every one of the Settlement Class Members—is a Michigan customer that purchased a magazine subscription from Meredith and then allegedly had their subscription information disclosed to data miners, including Acxiom, without consent. Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the VRPA and ensuring that such allegedly unlawful disclosures do not continue in the future. As such, Plaintiff Kinder does not have any interests antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel—Jay Edelson , Ari J. Scharg, and Benjamin S. Thomassen of Edelson PC—have extensive experience in litigating

class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 8.) They regularly engage in major complex litigation involving consumer privacy, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.*)*; see* Firm Resume of Edelson PC, attached hereto as Exhibit 1-A); *see also In re Netflix Privacy Litig*., No. 5:11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.,* No. 5:10-cv-02389, Dkt. 69 (N.D. Cal. Dec. 10, 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Harris v. comScore*, Inc., 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class action and appointed class counsel); *Coulter-Owens,* 2015 WL 4527822, at *1 (achieved adversarial certification in a similar VRPA class action against a magazine publisher and appointed class counsel); *Halaburda*, No. 2:12-cv-12831, Dkt. 68 (appointed class counsel in a similar VRPA class action that

settled on favorable terms).

Further, proposed Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting extensive class and merits discovery, participating in a settlement conference with the Court and private mediation with Jed D. Melnick of JAMS in New York City, and ultimately, negotiating a favorable resolution. (Scharg Decl. ¶¶ 3-7.) Proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. (*Id.* ¶ 9.)

Accordingly, as Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair an efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the

proposed Settlement Class meets these requirements.

### 1.   *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes,* 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 251 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin the commonality requirement Rule 23(a) in that both require the existence of common questions of law and fact— however, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where as commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

In this case, there are several common factual and legal questions that are at

the center of this action: (1) whether Meredith is "engaged in the business of selling at retail . . . written materials," (2) whether Meredith disclosed "information concerning the purchase . . . of those materials" to Acxiom, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Meredith obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Meredith properly informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. These questions predominate over any issues affecting individual members (to the extent there are any) and are subject to common proof (i.e., examination of Meredith's uniform conduct).

Because Meredith engaged in a single course of conduct with respect to all members of the Settlement Class, their claims "will prevail or fail in unison," and as such, predominance is met. *Whirlpool*, 722 F.3d at 859 (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)).

### 2.   *A Class Action is a Superior Method for Adjudicating this Action*

Class action is a superior means of adjudicating the controversy when it would "achieve economies of time, effort and expense and promote . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide

a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem,* 521 U.S. at 617. Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545*; see also Powers*, 501 F.3d at 619 ("cases alleging a single course of wrongful conduct are particularly well-suited to class certification"). As Judge Steeh held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 2015 WL 4527822, at *12. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Meredith violated the VRPA are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 326. Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of

20

the proposed Settlement Class has brought any VRPA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even be aware that Meredith is disclosing their protected information to third parties. Where consumers are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545-46.

Therefore, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## VI.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed class counsel's: (1) work in identifying or investigating potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

21

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer privacy class actions. (*See* Scharg Decl. ¶ 8; *see also* Firm Resume of Edelson PC, attached hereto as Ex. 2-A.) And as a result of their zealous efforts in this case, proposed Class Counsel have secured an exceptional settlement that provides substantial monetary relief, as well as the prospective relief necessary to protect the Settlement Class Members' privacy going forward. Thus, the Court should appoint Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson PC as Class Counsel.

## VII.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the

22

voluntary conciliation and settlement of complex class action litigation, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a particular standard for granting preliminary settlement approval. Nevertheless, courts in this district generally look to two factors in making this determination. That is, preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval. *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, No. 09-cv-14429, 2010 WL 3070130, at *8 (E.D. Mich. Aug. 2, 2010) *see also Ford Motor Co.,* 2006 WL 1984363, at *4 ("The Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies."). The proposed Settlement in this case—which achieves both monetary payments for the Settlement Class and strong prospective relief—easily satisfies both factors.

First, there are no grounds upon which to doubt the Settlement's fairness. The proposed Settlement was reached only after a year and half of hard-fought litigation, which included Rule 12 motion practice, extensive written discovery, the production and review of more than 200,000 documents, two separate Rule 30(b)(6) depositions of Defendant's corporate representatives, a Rule 30(b)(6) deposition of Acxiom's corporate representative, the deposition of Plaintiff Kinder,

a settlement conference with the Court, and—after the close of class and merits discovery—the filing of Plaintiff's motion for class certification, and ultimately, private mediation. (Scharg Decl. ¶¶ 3-7.) It was only then—with the assistance of Jed D. Melnick of JAMS and after numerous rounds of arm's-length negotiations—that the Parties were able to agree on the terms of a class-wide settlement. As such, the Parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and there are certainly no grounds from which to doubt the fairness of the Settlement. *See Sheick*, 2010 WL 3070130, at *13 ("negotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy"); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of fraud or collusion absent evidence to the contrary).

Second, the strength of Plaintiff's case compared to the settlement offer demonstrates that the proposed Settlement is fair, reasonable, and adequate, and well within the range of possible approval. Here, while Plaintiff and proposed Class Counsel are confident in Plaintiff's claims, they are cognizant of the risks that would accompany further litigation. (Scharg Decl. ¶¶ 11-13.) Indeed, Meredith has made clear that absent a settlement, it would continue its vigorous defense of this case. (*Id*. ¶¶ 12-13.) And of course, without a settlement, there would be the

24

uncertainty and expense of trial, and the risks and delay of inevitable appeals. (*Id.*) *See also UAW v. Gen. Motors Corp.*, No. 05-cv73991, 2006 WL 891151 at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

More specifically, Plaintiff is aware that Meredith would continue assert a number of defenses on the merits, including that the VRPA neither prohibits the disclosure of the magazine subscription information at issue, because Acxiom is its agent, nor applies to Meredith at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. Further, Meredith has made clear that it would continue to challenge the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general. (Scharg Decl. ¶ 12.) Looking beyond trial, Plaintiff is also keenly aware of the fact that Meredith would appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages in play, it would attempt to argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.[4] (*Id.*

---

[4] Though Plaintiff maintains that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S.

¶ 13); *see, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Given these concerns, Plaintiff and Class Counsel view the creation of the non-reversionary $7.5 million Settlement Fund—with its estimated $100 per claimant payment—as well as the required injunctive relief, to be an extraordinary result for the class. (Scharg Decl. ¶ 14.) This is especially true considering the "all or nothing" nature of Plaintiff's statutory claims: if she were to lose any aspect of this case, the class would get nothing. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes "zero sum" undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible

---

559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—she acknowledges that if she obtained a judgment on the merits and was awarded statutory damages, the $3 billion damages award would likely be reduced.

worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").

Further, in terms of monetary relief, the Settlement's projected $100 per-claim payment exceeds the *Halaburda v. Bauer* settlement—the only other VRPA case to ever settle—and is in line with other privacy settlements involving similar statutes that have been approved throughout the country. *See, e.g., Halaburda*, No. 2:12-cv-12831, Dkt. 68 (granting final approval to a settlement that provided claimants with an estimated $75 and similar injunctive relief); *Fraley*, 966 F. Supp. 2d at 948 (approved settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Landwehl*, No. 11-cv-1014, Dkts. 91, 133 (approving settlement providing claimants with a cash payment of up to $100 in Electronic Communications Protection Act ["ECPA"] case with potential statutory damages of $10,000)*; Davis*, No. 9:05-cv-80806, Dkt. 46 (approving settlement providing claimants with a cash payment up to $150 in Driver's Privacy Protection Act case with potential statutory damages of $5,000); *Lane*, 696 F.3d at 820-22 (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, Dkt. 256 (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (approving $8.5 million payment to *cy pres* as the sole form of monetary relief in ECPA case

with potential statutory damages of $10,000). Thus, the proposed Settlement is eminently fair, reasonable, and in line with the results achieved by other statutory privacy class actions that have received final approval from courts in this District and across the country.

For these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that that the Settlement is fair, reasonable, and adequate, and well within the range of possible approval. (Scharg Decl. ¶ 14.) Accordingly, the Court should grant preliminary approval.

## VIII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance

28

through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due process. First, the Settlement Administrator will send direct notice by email to all Settlement Class Members for whom a valid email address is identified in Meredith's records. (Agreement ¶ 4.1(b); *see* Exhibit B attached thereto.) The email will contain an electronic link to the online claim form. (*Id.*) Next, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to all Settlement Class Members who did not receive an email. (Agreement ¶ 4.1(c); *see* Ex. C attached thereto.) Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Ex. D attached thereto), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online. (*Id.* ¶ 4.1(d).) The Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* ¶ 4.1(e).)

In sum, the proposed methods for providing notice to the Class comports

with both Rule 23 and Due Process, and thus, should be approved by the Court.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter

an Order (i) granting preliminary approval of the Parties' proposed Class Action

Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement

purposes, (iii) approving the form and content of the notice to the members of the

Settlement Class, (iv) appointing Plaintiff Kinder as Class Representative, (v)

appointing Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson PC

as Class Counsel, (vi) scheduling a Final Fairness Hearing in this matter, and (vii)

providing such other and further relief as the Court deems reasonable and just.[5]

Dated: October 5, 2015                    Respectfully submitted,

                                          **DEBORAH KINDER**, individually and on
                                          behalf of a class of similarly situated
                                          individuals

                                          By: /s/ Ari J. Scharg
                                          One of her attorneys

                                          Jay Edelson
                                          jedelson@edelson.com
                                          Ari J. Scharg
                                          ascharg@edelson.com
                                          Benjamin S. Thomassen
                                          bthomassen@edelson.com
                                          EDELSON PC
                                          350 North LaSalle Street, Suite 1300
                                          Chicago, Illinois 60654

---

[5]  A [Proposed] Preliminary Approval Order is attached hereto as Exhibit 2.

Tel: 312.589.6370
Fax: 312.589.6378

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

    I, Ari J. Scharg, an attorney, hereby certify that on October 5, 2015, I served the above and foregoing ***Plaintiff's Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system on this, the 5th day of October 2015.


                    /s/ Ari J. Scharg
                    Ari J. Scharg