## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | |
|---|---|
| DEBORAH KINDER, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-11284-TLL-CEB |
| Plaintiff, | |
| v. | [Hon. Thomas L. Ludington] |
| MEREDITH CORPORATION, an Iowa corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR AND BRIEF IN SUPPORT OF
## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

**Respectfully submitted by:**

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654

Henry M. Scharg (No. P28804)
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

*Class Counsel*

## PLAINTIFF'S MOTION FOR
## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

Plaintiff Deborah Kinder hereby moves the Court to grant her Motion for

Attorneys' Fees, Expenses, and Incentive Award. Specifically, Class Counsel

respectfully requests that the Court grant $2,625,000 in attorneys' fees and

expenses and an incentive award of $10,000 for Plaintiff, Deborah Kinder. In

accordance with Local Rule 7.1(a), Plaintiff's has ascertained that counsel for

Defendant Meredith Corporation will not oppose the relief sought by this Motion.

(*See* Parties' Class Action Settlement Agreement ¶¶ 8.1, 8.3.)

For the reasons discussed in the accompanying brief, the Motion should be

granted.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

**STATEMENT OF ISSUES PRESENTED**

1.     Whether this Court should award Class Counsel attorneys' fees and expenses in the amount of $2,625,000—35% of the $7,500,000 non-reversionary common fund created for the benefit of the class—to compensate them for work performed in achieving, in the Court's words, "a uniquely beneficial agreement for the class" under Michigan's Video Rental Privacy Act, M.C.L. § 445.1711, *et seq.*?

**Plaintiff's answer: Yes.**

2.     Whether this Court should award Plaintiff Deborah Kinder an incentive award of $10,000 in recognition of her efforts on behalf of the class, which demanded active involvement in this case for almost two years?

**Plaintiff's answer: Yes.**

ii

Case 1:14-cv-11284-TLL-CEB   ECF No. 77, PageID.2547   Filed 03/28/16   Page 4 of 32

# CONTROLLING AND MOST APPROPRIATE AUTHORITY

UNITED STATES SUPREME COURT CASES:

> *Eisen v. Carlisle & Jacquelin*,
>     417 U.S. 156 (1974)

> *Boeing Co. v. Van Gemert*,
>     444 U.S. 472 (1980)

UNITED STATES CIRCUIT COURT OF APPEALS CASES:

> *Hadix v. Johnson*,
>     322 F.3d 895 (6th Cir. 2003)

> *In re Pampers Dry Max Litig.*,
>     724 F.3d 713 (6th Cir. 2013)

> *Isabel v. City of Memphis*,
>     404 F.3d 404 (6th Cir. 2005)

> *Ramey v. Cincinnati Enquirer, Inc.*,
>     508 F.2d 1188 (6th Cir. 1974)

> *Rawlings v. Prudential-Bache Props., Inc.*,
>     9 F.3d 513 (6th Cir. 1993)

> *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
>     436 F. App'x 496 (6th Cir. 2011)

UNITED STATES DISTRICT COURT CASES:

> *Halaburda v. Bauer Publ'g Co., LP*,
>     No. 12-cv-12831 (E.D. Mich. Jan. 6, 2015)

> *In re Cardizem CD Antitrust Litig.*,
>     218 F.R.D. 508 (E.D. Mich. 2003)

> *In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
>     248 F.R.D. 483 (E.D. Mich. 2008)

ii

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Kogan v. AIMCO Fox L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000)

*Shane Grp., Inc. v. BSBS of Mich.*,
    2015 WL 1498888 (E.D. Mich. Mar. 31, 2015)

MISCELLANEOUS:

    Fed. R. Civ. P. 23

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................. 1

II. FACTUAL BACKGROUND AND UNDERLYING LAW ......................... 2

    A. Plaintiff's Allegations Under the VRPA ................................. 2

    B. The Litigation and Work Performed to Benefit the Class ................. 4

    C. The Terms of the Settlement Agreement ............................... 5

III. ARGUMENT ................................................................................ 6

    A. The Requested Attorneys' Fees and Expenses are Reasonable and Warrant Approval under this Circuit's Six-Factor Analysis ..... 6

        1. Society has a stake in incentivizing the pursuit of complex consumer privacy litigation ........................................... 8

        2. Class Counsel have secured a valuable benefit for the class ........................................................................... 9

        3. Class Counsel took the case on a contingent basis, confronting a significant risk of nonpayment ..................... 12

        4. The complexity of the litigation supports the fees .................. 14

        5. The Parties are both represented by skilled counsel ............. 15

        6. The value of the legal services performed on an hourly basis is reasonable ................................................... 16

    B. The Requested Incentive Award Reflects Ms. Kinder's Active Involvement in this Action and Should be Approved ..................... 18

IV. CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

## United States Supreme Court Cases:

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996) ..................................................................................... 11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...................................................................................... 7

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*,
    532 U.S. 424 (2001) ..................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................................... 8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..................................................................................... 17

## United States Circuit Court of Appeals Cases:

*Brian A. v. Hattaway*,
    83 F. App'x 692 (6th Cir. 2003) ................................................................... 17

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) ......................................................................... 7

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ..................................................................... 19

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir. 2004) ....................................................................... 18

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) ....................................................................... 19

*In re Pampers Dry Max Litig.*,
    724 F.3d 713 (6th Cir. 2013) ....................................................................... 19

*Isabel v. City of Memphis*,
    404 F.ed 404 (6th Cir. 2005) ....................................................... 16

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1975) ....................................................... 18

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................... 11

*Paschal v. Flagstar Bank*,
    297 F.3d 431 (6th Cir. 2002) ....................................................... 18

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) ....................................................... 7

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) ....................................................... 7

*Van Horn v. Nationwide Property & Cas. Ins. Co.*,
    436 F. App'x 496 (6th Cir. 2011) ....................................................... 17, 18


**United States District Court Cases:**

*Appolini v. United States*,
    218 F.R.D. 556 (W.D. Mich. 2003) ....................................................... 8

*Connectivity Sys. Inc. v. Nat'l City Bank*,
    2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ....................................................... 18

*Dick v. Sprint Commc'ns Co., L.P.*,
    297 F.R.D. 283 (W.D. Ky. 2014) ....................................................... 10

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ....................................................... 10

*Gross v. Symantec Corp.*,
    No. 12-cv-00154 (N.D. Cal. 2014) ....................................................... 17

*Halaburda v. Bauer Publ'g Co., LP*,

No. 12-cv-12831 (E.D. Mich. 2015) ...................................................... 10, 15

*Harris v. comScore, Inc.*,
    No. 11-cv-05807 (N.D. Ill. 2014) ................................................................ 15

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ....................................................... *passim*

*In re CMS Energy ERISA Litig.*,
    2006 WL 2109499 (E.D. Mich. June 27, 2006) .......................................... 19

*In re Delphi Corp. Securities, Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ................................................. 6, 7, 10, 15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ............................................................... 12

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389 (N.D. Cal. 2010) .............................................................. 15

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. June 2, 2011) .............................................. 11

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................... 10

*In re Netflix Privacy Litig.*,
    No. 11-cv-00379 (N.D. Cal. 2011) .............................................................. 15

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) .................................. 8, 12, 15

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) .......................................... 11

*Kinder v. Dearborn Fed. Sav. Bank*,
    2013 WL 879301 (E.D. Mich. Mar. 8, 2013) ............................................. 19

*Kogan v. AIMCO Fox L.P.*,

193 F.R.D. 496 (E.D. Mich. 2000) ........................................................ 13, 17

*Shane Grp., Inc. v. BCBS of Mich.*,
    2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ...................................... 7, 19

*Stanley v. U.S. Steel Co.*,
    2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ................................... 6, 7, 12

**Miscellaneous:**

Fed. R. Civ. P. 23 ..................................................................................... 6

M.C.L. § 44.1715 .................................................................................... 11

Natasha Singer, *You for Sale: Your Attention, Bought in an Instant*,
    N.Y. Times (Nov. 17, 2012), www.nytimes.com/2012/11/18/technology/
    your-online-attention-bought-in-an-instant-by-advertisers-html .................. 9

R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW
    Guideposts Should Not be Used to Review Statutory Penalty Awards*,
    63 Rutgers L. Rev. 327 (2010) ..................................................... 11

S. Rep. No. 100-599 (1998) ...................................................................... 9

## I.    INTRODUCTION

Plaintiff Deborah Kinder respectfully requests that the Court approve her request for attorneys' fees, expenses, and incentive award resulting from the class action settlement with Defendant Meredith Corporation.[1] More than 25 years ago, the Michigan legislature recognized that the books and magazines that people choose to read speak volumes about their personalities and behavior, and deemed such information worthy of statutory protection. To enforce these rights on behalf of herself and other Michigan residents, Plaintiff engaged in nearly two years of hard-fought litigation, which included briefing on various dispositive issues, the completion of extensive class and merits discovery, class certification briefing, and mediation with Jed D. Melnick of JAMS in New York City. These efforts ultimately resulted in a landmark settlement under Michigan's Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act ("VRPA")—that resolves the claims related to Defendant's alleged disclosure of it customers' personal reading information.

The instant Settlement—which was preliminarily approved on February 5, 2016—represents an exceptional result for the class. Defendant has created a $7.5 million non-reversionary common fund from which class members will receive a

---

[1] The Parties' Class Action Settlement ("Settlement" or "Agreement") is attached as Exhibit 1.

*pro rata* cash payment. And just as important, the Settlement also delivers strong prospective relief by requiring Defendant to stop disclosing its customers' personal reading information to third party companies for a period of four years.

With that as a backdrop, Plaintiff Kinder now moves the Court to approve (i) the fee award to Class Counsel in the amount of $2,650,200 (representing 35% of the settlement fund), and (ii) an incentive award of $10,000 for her service as class representative. The requested fee and incentive award fairly compensate Plaintiff and Class Counsel for the time and effort expended in the case, and reflects the results achieved for the class and the substantial risks that they faced throughout the pendency of the litigation.

For these reasons, as explained further below, pursuant to Federal Rule of Civil Procedure 23(h), Plaintiff respectfully requests that the Court approve the requested fee and incentive awards.

## II.   FACTUAL BACKGROUND AND UNDERLYING LAW

### A.   Plaintiff's Allegations Under the VRPA.

Meredith is a company that publishes and sells various magazines. (*See* Plaintiff's Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Plaintiff alleges that in addition to its consumer-facing magazine subscription business, Meredith operates a division dedicated to selling information related to its customers' magazine subscription histories and personal reading habits. (*Id*. ¶¶ 2, 3, 33–39, 49, 50, 65-

67.) To increase the "street value" of such information, Plaintiff alleges that Meredith trades its customers' protected reading information with certain third parties—including data mining companies—in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id*. ¶¶ 33, 49.) Meredith then "enhances" its own customer profiles with this additional data (e.g., their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, etc.), and sells such information to other unrelated third parties for a profit. (*Id*. ¶¶ 28-30, 33–36, 49, 65.)

Plaintiff further alleges that no matter how consumers subscribe (i.e., via postcard, over the phone, on its website, or through a subscription agent's website), Meredith's customers never provide Meredith with consent to disclose information related to their magazine subscriptions to third parties. (Compl. ¶¶ 4, 37-39, 43, 47, 68.) This is because, as Plaintiff alleges, during the subscription process, customers are never presented with or required to consent to any terms or policies informing them of Meredith's disclosure practices. (*Id*. at ¶¶ 37, 43, 44, 66, 67.) Plaintiff also alleges that even after subscribing, Meredith fails to notify its customers that it will disclose any information to third parties. (*Id.* at ¶¶ 4, 37, 39, 43, 44, 46, 66, 67.) Nonetheless, Plaintiff alleges that Meredith discloses all of its customers' protected reading information to various third parties, including data miner Acxiom Corporation ("Acxiom"), without their consent or prior notice.

3

**B.     The Litigation and Work Performed to Benefit the Class.**

Plaintiff filed her class action lawsuit on March 28, 2014. (*See* dkt. 1.) On June 13, 2014, Defendant moved to dismiss Plaintiff's claims under Rules 12(b)(1) and (b)(6), arguing that she lacked both Article III and statutory standing because she did not suffer actual damages from the alleged disclosures. (Dkt. 11.) Thereafter, on August 26, 2014, after full briefing, the Court denied Defendant's motion to dismiss the VRPA claims. (Dkt. 20.) Defendant then filed its Answer on September 9, 2014, which denied the allegations generally and raised fourteen (14) affirmative defenses. (Dkt. 21.) The Parties proceeded to exchange initial disclosures and served written discovery on each other and third parties. (Declaration of Ari J. Scharg ["Scharg Decl."] ¶ 4, attached hereto as Exhibit 2.)

Over the next eight months, the Parties engaged in—and ultimately completed—substantial class and merits discovery. (*Id.* ¶ 5.) During that time, Class Counsel reviewed and analyzed over 200,000 documents produced by Defendant and various third parties. (*Id.*) Class Counsel also took the depositions of two corporate representatives that Defendant designated under Rule 30(b)(6), and a corporate representative that was similarly designated by Acxiom. (*Id.*) For its part, Defendant conducted substantial written discovery on Plaintiff Kinder, and also took her deposition. (*Id.*)

On May 5, 2015, the Parties participated in a Court-ordered settlement

conference in Bay City, Michigan, but were unable to make any progress toward resolution. (*Id.* ¶ 6.) On September 11, 2015—after completing full class and merits discovery—Plaintiff filed her Motion for Class Certification. (Dkt. 55.) Defendant filed its opposition to the motion on September 21, 2015. (Dkt. 64.)

On September 25, 2015, in the midst of the class certification briefing, the Parties participated in a private mediation with Jed D. Melnick, Esq. at JAMS in New York City. (Scharg Decl. ¶ 7.) After a full day of mediation and numerous rounds of arm's-length negotiations, the Parties ultimately reached an agreement on the principal terms of the Settlement. (*Id.*) The Court granted preliminary approval of the Settlement on February 5, 2016. (Dkt. 76.)

**C.     The Terms of the Settlement Agreement.**

The fruit of Class Counsel's effort is the largest class-wide settlement achieved under the VRPA. (Scharg Decl. ¶ 8.) The Settlement provides an exceptional result for the class, delivering both immediate cash relief and significant prospective relief to approximately 980,000 magazine subscribers across the state of Michigan. (*Id.*) The Settlement creates a non-reversionary $7,500,000 settlement fund (Agreement ¶ 1.32), from which class members will receive a *pro rata* cash payment. (*Id.* ¶ 2.1(b).) The Settlement offers equally strong prospective relief by prohibiting Defendant from disclosing its Michigan customers' subscription information to any third-party companies for marketing

purposes, without first obtaining their prior express written consent. (*Id.* ¶ 2.2(a).)

As further explained detail below, the requested attorneys' fee and incentive award are reasonable.

## III.   ARGUMENT

### A.   The Requested Attorneys' Fees and Expenses are Reasonable and Warrant Approval under this Circuit's Six-Factor Analysis.

The requested fee award of $2,625,000, representing 35% of the common fund, merits the Court's approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[2] Fed. R. Civ. P. 23(h); *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009). In common-fund cases such as this one, courts in the Sixth Circuit apply one of two fee calculation methods—percentage-of-the-fund or lodestar—and the fees need only "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). The percentage-of-the-fund approach is the preferred method of fee calculation in common-fund cases*, see, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003), and this

---

[2]  The requested fee award also encompasses unreimbursed litigation expenses. (Agreement ¶ 8.1.) Reasonable litigation-related expenses are customarily awarded in common-fund cases and include costs such as document preparation and travel. *In re Delphi Corp. Securities, Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) (citations omitted). Thus, included in the requested fee award, Class Counsel respectfully seeks reimbursement of $34,266.83 for out-of-pocket expenses in these standard categories. (*See* Scharg Decl. ¶ 16.)

Court has already indicated the propriety of the percentage-of-the-fund method here because it "more accurately approximates a reasonable award for fees." (Dkt. 76 at 5 (citing *In re Delphi*, 248 F.R.D. at 502).) Thus, Class Counsel is entitled to recover "a reasonable attorney's fee from the fund as a whole." *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cardizem*, 218 F.R.D. at 532.

The Sixth Circuit has articulated six factors that should be considered when determining the reasonableness of attorneys' fees: (1) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (2) the value of the benefit to the class; (3) whether the work was performed on a contingent fee basis; (4) the complexity of the litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *In re Cardizem*, 218 F.R.D. at 533. A "reasonable" fee in common fund cases typically ranges "from 20 to 50 percent." *Shane Grp., Inc. v. BCBS of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015). In this case, each of these factors supports the requested fee award, and as such, the Court should not hesitate to find a fee award of 35% reasonable.[3]

---

[3] This is especially true here, where Class Counsel have already voluntarily reduced the amount of fees they are seeking from 40%—which they are entitled to seek under the terms of the Settlement Agreement—to 35%. (Scharg Decl. ¶ 17.)

**1.    Society has a stake in incentivizing the pursuit of complex consumer privacy litigation.**

A request for attorneys' fees is likely to be found reasonable when society has a strong stake in rewarding attorneys who produce the type of benefits a settlement has achieved. *In re Cardizem*, 218 F.R.D. at 533. Where, as here, individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *Appoloni v. United States*, 218 F.R.D. 556, 563 (W.D. Mich. 2003), *amended*, 219 F.R.D. 116. It is therefore in society's interest to encourage litigation that protects important consumer privacy rights that would not otherwise be safeguarded. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996). ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized."); *In re Cardizem,* 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society.")

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of Michiganders' personal reading choices. The VRPA was enacted in 1989, soon after the federal

VPPA was passed. Even then, Congress recognized the ease with which private

information could be collected, stored, and assembled into detailed individual

profiles. *See* S. Rep. No. 100-599, at 5-6 (1998) (Statement of Sen. Leahy). Today,

data mining technology is infinitely more sophisticated,[4] making society's interest

in protecting privacy even greater. It is therefore in society's best interest to

encourage class action litigation in this area, as it is the most realistic means of

safeguarding the privacy of readers and viewers under the VRPA, especially given

the fact that consumers are generally unaware that their privacy rights are being

violated (here, Plaintiff alleged Meredith secretly disclosed customers' personal

reading information behind their backs). Thus, the alternative to a class action in

this case would have been no enforcement at all, and Defendant's allegedly

unlawful conduct would have continued unabated.

Given society's stake in protecting reader and viewer privacy, a fee award of

35% is reasonable.

### 2.    Class Counsel have secured a valuable benefit for the class.

When Class Counsel have secured a valuable benefit for the class, the

reasonableness of a requested fee award is further supported. *In re Cardizem*, 218

F.R.D. at 533. The value of the benefit to the class is one of the most important

---

[4]  *See, e.g.*, Natasha Singer, *You for Sale: Your Attention, Bought in an Instant*,
N.Y. Times (Nov. 17, 2012), www.nytimes.com/2012/11/18/technology/your-
online-attention-bought-in-an-instant-by-advertisers.html.

factors in assessing the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (citation omitted); *In re Delphi*, 248 F.R.D. at 503 (describing result achieved as "primary factor"). This factor is met when a settlement achieves a high percentage of the total damages available. *Id.* The risk of continued litigation can also be considered in relation to the value of the benefit to the class under this factor. *Dick*, 297 F.R.D. at 299.

The instant Settlement creates an exemplary result by affording class members a *pro rata* cash payment with none of the settlement fund reverting to the Defendant. (Agreement ¶¶ 1.32, 2.1(a)-(d).) Based on the current and historical claims rates, Class Counsel estimates that the *pro rata* recovery in this matter will be in line with or exceed that achieved in the *Halaburda v. Bauer* settlement—the only other VRPA settlement to be approved. *See Halaburda v. Bauer Publ'g Co., LP*, No. 12-cv-12831, dkts. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to a settlement that provided claimants with an estimated $74 *pro rata* payment and similar injunctive relief). Significantly, the anticipated *pro rata* payments are also significantly higher than those in other statutory damages class actions—many of which have resulted in only *cy pres* relief. *See, e.g.*, *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 948 (N.D. Cal. 2013) (approved settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6–

7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres*

payment as sole monetary relief in case where statutory damages of $2,500 per

claim were available); *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir.

2012) (affirming $9.5 million settlement providing *cy pres* payment as sole

monetary relief in case where statutory damages of up to $10,000 per claim were

available), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy

Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5

settlement providing *cy pres* payment as sole monetary relief in case where

statutory damages of up to $10,000 per claim were available).[5] As such, here, the

Settlement offers real and immediate monetary relief.

    Although Class Counsel do not assign a monetary value to the prospective

relief the Settlement affords, this relief is undoubtedly valuable to the class as well.

*See, e.g.*, *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May

17, 2013) (considering structural changes industry practices in assessing value of

---

[5]  Although the maximum amount of statutory damages available under the VRPA
is $5,000, *see* M.C.L. § 445.1715, Defendant may have a due process challenge.
Though Plaintiff maintains that the sheer size of a statutory damages award cannot
render it unconstitutional—*see generally* R. LeCours, Note, *Steering Clear of the
"Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review
Statutory Penalty Awards*, 63 Rutgers L. Rev. 327 (2010); *see also Cooper Indus.,
Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 443 (2001) ("I continue to
believe that the Constitution does not constrain the size of punitive damages
awards") (Thomas, J., concurring) (*citing BMW of N. Am., Inc. v. Gore*, 517 U.S.
559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—she acknowledges
the likelihood that if she obtained a judgment on the merits, the Court could reduce
the award or find it unconstitutionally excessive.

benefit); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (considering non-monetary benefits requiring changes in defendant's operating procedures in assessing value of benefit). Here, the Settlement's prospective relief provides additional value to the class by ensuring that, for a period of four years, Defendant will not disclose their Michigan customers' subscriber information to third parties without prior express written consent. (Agreement ¶ 2.2(a).)

Weighed against the risks of continued litigation—the Court's eventual decision regarding class certification, the expert testimony and additional discovery necessary to prove Defendant's business practices at trial, and other obstacles that could strip the class of all recovery—the value of the immediate cash and prospective relief that the Settlement affords is apparent. The second factor thus supports the reasonableness of the requested attorneys' fees.

### 3. Class Counsel took the case on a contingent basis, confronting a significant risk of nonpayment.

Undertaking an action on a contingency basis lends additional support to the reasonableness of a requested fee award. *See In re Cardizem,* 218 F.R.D. at 533; *Stanley*, 2009 WL 4646647, at *3 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). When attorneys invest significant time and resources in pursuing the litigation, in spite of the risk they will not be compensated, this factor is generally satisfied. *In re Rio*, 1996 WL

780512, at *18; *Kogan v. AIMCO Fox L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000). The contingent nature of the case is amplified where class counsel face a formidable defendant. *See In re Cardizem,* 218 F.R.D. at 533.

As reflected in their retainer agreement with Plaintiff, Class Counsel pursued the action purely on a contingency basis. (Scharg Decl. ¶ 10.) For two years, Class Counsel invested significant time, effort, and resources to the litigation without any compensation. (*Id.* ¶ 11.) Cognizant of the risk of nonpayment, Class Counsel embarked on a fact-intensive investigation of Defendant's practices, exchanged extensive written discovery, reviewed more than 200,000 discovery documents, conducted two separate Rule 30(b)(6) depositions of Defendant's corporate representatives and another Rule 30(b)(6) deposition of Acxiom's corporate representative, defended the deposition of Plaintiff, attended a settlement conference with the Court, moved for class certification, and ultimately engaged in private mediation. (*Id.*) Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. (*Id.* ¶ 12.) And given the defenses mounted by Meredith, as well as the fairly limited history of VRPA litigation, success on the legal issues presented by this case was far from certain. (*Id.*) In addition, Class Counsel faced highly qualified defense counsel, who themselves represent leading magazine publishers in related VRPA litigation. (*Id.* ¶ 14.)

13

Given the contingent nature of the litigation and the significant risk of nonpayment, the third factor also supports the reasonableness of the fee award.

**4.      The complexity of the litigation supports the requested fees.**

The complexity of the litigation reinforces the reasonableness of a requested fee award. *In re Cardizem*, 218 F.R.D. at 533. This case involved multiple layers of factual complexity. Not only did the nature of the case call for an extensive pre-suit investigation into Meredith's business practices, it also entailed an extensive review of hundreds of thousands of documents during the discovery phase of this litigation. The case involved complex legal issues as well. Meredith challenged the merits of Plaintiff's VRPA claim by (i) asserting that the VRPA does not prohibit the disclosure of the magazine subscription information at issue because Acxiom is its agent, and (ii) arguing that the VRPA does not apply to any of its practices because it was not engaged in the business of selling magazines "at retail," so as to fall within the scope of the statute. (*See* Dkt 11.) Meredith has also made clear that it would continue to challenge the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general. (Scharg Decl. ¶ 12.)

Because this case involved complex factual and legal questions under the VRPA—its application to magazines and magazine publishing, certain third parties' alleged agency relationships with Defendant, and defining the scope of

what it means to sell a magazine "at retail"—the complexity of the litigation further supports the reasonableness requested fees.

### 5.   The Parties are both represented by skilled counsel.

The skill and standing of counsel on both sides, including their experience and professionalism, also validates the reasonableness of a requested fee award. *In re Rio*, 1996 WL 780512, at *18. When counsel for both parties have significant experience, "the ability of [counsel] to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504.

Class Counsel are well respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity. (Scharg Decl. ¶ 13.) (*See also* Edelson PC Firm Resume, a true and accurate copy of which is attached as Exhibit 2-A.) In addition to being at the forefront of VRPA litigation, *see*, *e.g.*, *Halaburda*, No. 12-cv-12831, dkt. 68 (E.D. Mich. Jan. 6, 2015), Edelson PC is widely known for its work in the area of consumer privacy litigation. *See, e.g.*, *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (recognizing Edelson PC as "pioneers in the electronic privacy class action field); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (noting Edelson PC's "significant and particularly specialized expertise in electronic privacy litigation and class actions"); *see also*

*Harris v. comScore, Inc.*, No. 11-cv-05807, dkt. 369 (N.D. Ill. Oct. 1, 2014) (granting final approval to one of the largest consumer class actions ever brought under federal electronic privacy laws, in which Edelson PC served as sole lead counsel).

As mentioned above, Class Counsel faced formidable defense counsel in this action. (Scharg Decl. ¶ 14.) Meredith was represented by two notable defense firms—Honigman Miller Schwartz and Cohn LLP and ZwillGen PLLC. (*Id.*) Defense counsel are adept in representing major magazine publishers and other large clients across a wide variety of industries. (*Id.*) Unsurprisingly, opposing counsel vigorously defended their client throughout the litigation, including moving to dismiss Plaintiff's complaint and opposing class certification. (*Id.*)

Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

### 6.   The value of the legal services performed on an hourly basis is reasonable.

The sixth and final factor assesses the value of the legal services performed on an hourly basis. *In re Cardizem,* 218 F.R.D. at 533. The value of the legal services performed essentially amounts to Class Counsel's lodestar, which involves multiplying the number of hours reasonably expended by counsel by their reasonable hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir.

2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)).[6] The lodestar

analyses require a good-faith effort to exclude hours that are excessive or

otherwise unnecessary. *Hensley,* 461 U.S. at 434; *Brian A. v. Hattaway*, 83 F.

App'x 692, 695 (6th Cir. 2003).

To date, Class Counsel have expended 2,125.5 hours litigating this case.

(Scharg Decl. ¶ 15.) The value of Class Counsel's services at their historical hourly

rates amounts to $970,878.00.[7] *(Id.* ¶ 16.) Therefore, the value of the time spent

litigating Plaintiff's claims and securing the Agreement, including reimbursable

expenses of $34,266.83, totals $1,005,144.83. (*Id.*) This figure does not include the

additional $35,000 in fees that Class Counsel will incur in connection with

proceeding through final approval of the Settlement and the claims administration

process. (*Id.*)

Of course, this number does not account for the Court's discretion to

---

[6] Although this factor may viewed as a lodestar cross-check, *see Kogan*, 193
F.R.D. at 504, a cross-check is entirely optional. *See Van Horn v. Nationwide
Property & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding that
district courts have complete discretion when deciding to calculate attorneys' fees
based on the percentage-of-the-fund or lodestar methods, and thus a cross-check
analysis is optional.) Because the Court has indicated that it will employ the
percentage-of-the-fund method—the preferred method for common fund cases—
Class Counsel have not included a full lodestar cross-check analysis here.
[7] Numerous courts have readily approved Class Counsel's rates in similar
consumer class action litigation. *See, e.g., Gross v. Symantec Corp.*, No. 12-cv-
00154, dkt. 88 (N.D. Cal. March 21, 2014) (noting that Edelson PC's current
"hourly rates are reasonable and have previously been approved by other courts
throughout the country").

increase the base value of Class Counsel's services based on certain factors, known

as a "multiplier." *Van Horn*, 436 F. App'x at 499-500 (citing *Johnson v. Georgia*

*Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1975)). Salient factors

include the results achieved, the risk of not prevailing in the action, the skill and

experience of the attorneys, and awards in similar cases. *See Geier v. Sundquist*,

372 F.3d 784, 793 (6th Cir. 2004); *see also Van Horn*, 436 F. App'x at 500;

*Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002). These factors closely

track the *Ramey* criteria used to assess reasonableness, discussed in detail above.

(*See supra* §§ III.A.1, 3, 4.) Typical multipliers in this Circuit range from two to

five. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D.

Ohio Jan. 26, 2011). Just as results, risk, and skill support the reasonableness of the

fees under the percentage method, they also would justify a multiplier of the base

value of Class Counsel's services.

Here, the requested fee award of $2,625,000 represents a multiplier of 2.6,

which fits comfortably on the low end of the two to five range that is typically

approved in this Circuit. Thus, the value of Class Counsel's services on an hourly

basis, coupled with the "uniquely beneficial agreement" they achieved for the

class, supports the reasonableness of the requested fees here. (*See* Dkt. 76 at 5-6.)

## B.  The Requested Incentive Award Reflects Ms. Kinder's Active Involvement in this Action and Should Be Approved.

Incentive awards are frequently awarded in common-fund cases within this

Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003) (collecting cases).

The approval of an incentive award is examined through the following factors: (1)

the class representative's actions in protecting the class's interests and whether

those actions resulted in a substantial benefit to the class; (2) any direct or indirect

financial risk the class representative assumed; and (3) the time and effort the class

representative dedicated to the action. *Kinder v. Dearborn Fed. Sav. Bank*, 2013

WL 879301, at *3 (E.D. Mich. Mar. 8, 2013) (citing *Cook v. Niedert*, 142 F.3d

1004, 1016 (7th Cir. 1998)). Based on these factors, an incentive award of $10,000

is reasonable. *See, e.g.*, *Shane Grp.*, 2015 WL 1498888, at *18 (approving

incentive awards for several named plaintiffs totaling $165,000, with individual

awards ranging up to $45,000); *In re CMS Energy ERISA Litig.*, 2006 WL

2109499, at *3 (E.D. Mich. June 27, 2006) (awarding three class representatives

$15,000 each for contributions to the case, including providing information to class

counsel, reviewing documents, assisting with discovery, and participating in

settlement discussions).[8]

---

[8] Although the Sixth Circuit has not taken an explicit position on incentive awards, it has urged district courts to scrutinize them carefully. *See In re Pampers Dry Max Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). In *Dry Max*, for example, the Sixth Circuit held that the incentive awards were so large compared to the "perfunctory" class relief (a refund for one package of diapers and labeling changes) that they rendered the class representatives inadequate. *Id.* at 722. In this case, the benefits of Settlement—immediate cash payments that vindicate readers' privacy rights— are far from "perfunctory." Also, Ms. Kinder was never influenced by the prospect of an incentive award during the pendency of the litigation. (Scharg Decl. ¶ 19.)

The agreed-upon incentive award of $10,000 reflects the instrumental role Ms. Kinder played in protecting the interests of the class. (*See* Scharg Decl. ¶ 18.) She was involved in all aspects of the case, including by assisting Class Counsel with investigation and discovery, sitting for her deposition, attending the Court-ordered settlement conference in Bay City, and reviewing the settlement documents. (*Id.* ¶ 20.) For two years—up to and through the settlement talks—Ms. Kinder was in frequent contact with Class Counsel, providing her attorneys with the information necessary to vigorously pursue this action on behalf of the class. (*Id.* ¶¶ 21.) As a direct result of her participation, Class Counsel was able to secure the monetary and prospective relief for the class. (*Id.* ¶¶ 22.) Accordingly, the agreed-upon incentive award of $10,000 should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) approve attorneys' fees in the amount of $2,625,000, (2) grant Ms. Kinder an incentive award of $10,000 in recognition of her efforts on behalf of the class, and (3) award such other and further relief as the Court deems reasonable and just.

//

//

Dated: March 28, 2016

Respectfully submitted,

**DEBORAH KINDER**, individually
and on behalf of the settlement class,

By: /s/ Ari J. Scharg

One of Plaintiff's attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Henry M. Scharg (No. P28804)
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

      I, Ari J. Scharg, an attorney, hereby certify that on March 28, 2016, I served the above and foregoing ***Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system on this, the 28th day of March, 2016.

/s/ Ari J. Scharg
