# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

DEBORAH KINDER, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

MEREDITH CORPORATION, an Iowa
corporation,

Defendant.

Case No. 1:14-cv-11284-TLL-CEB

[Hon. Thomas L. Ludington]

## PLAINTIFF'S MOTION FOR AND BRIEF IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Henry M. Scharg (No. P28804)
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111

*Class Counsel*

## PLAINTIFF'S MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

Plaintiff Deborah Kinder hereby moves the Court to grant her Motion for Final Approval of Class Action Settlement. Specifically, Plaintiff respectfully requests that the Court find (i) that notice to the Settlement Class satisfies the requirements of due process and Rule 23, and (ii) that the instant Settlement is fair, reasonable, and adequate and merits final approval. In accordance with Local Rule 7.1(a), Plaintiff's has ascertained that counsel for Defendant will not oppose the relief sought by this motion. (*See* Settlement Agreement ¶¶ 7.1-7.3, 10.1.)

For the reasons discussed in the accompanying memorandum, Plaintiff's Motion should be granted.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**STATEMENT OF ISSUES PRESENTED**

1.    Whether this Court should find that notice to the Settlement Class satisfies the requirements of due process and Rule 23 when direct notice, detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or submitting a claim, was transmitted via email and postcard and reached 97.6% of the class?

**Plaintiff's answer: Yes.**

2.    Whether this Court should grant final approval to the Settlement Agreement, finding it fair, reasonable, and adequate, when it advances the privacy interests that the Michigan Preservation of Personal Privacy Act was enacted to protect and delivers meaningful equitable and monetary relief to consumers across the state of Michigan, ensuring that their personal choices in reading material will be kept private?

**Plaintiff's answer: Yes.**

# CONTROLLING AND MOST APPROPRIATE AUTHORITY

**UNITED STATES SUPREME COURT CASES:**

*Eisen v. Carlisle & Jacquelin*,
>   417 U.S. 156 (1974)

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
>   636 F.3d 235 (6th Cir. 2011)

*UAW v. Gen. Motors Corp.*,
>   497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
>   720 F.2d 909 (6th Cir. 1983)

**UNITED STATES DISTRICT COURT CASES:**

*Halaburda v. Bauer Publ'g Co.*,
>   No. 12-cv-12831 (E.D. Mich. 2015)

*In re Cardizem CD Antitrust Litig.*,
>   218 F.R.D. 508 (E.D. Mich. 2003)

*Leonhardt v. ArvinMeritor, Inc.*,
>   581 F. Supp. 2d 818 (E.D. Mich. 2008)

*UAW v. Gen. Motors Corp.*,
>   2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

**MISCELLANEOUS:**

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
>   Checklist and Plain Language Guide (2010)

Fed. R. Civ. P. 23

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................... 1

II.  BACKGROUND ................................................................................... 3

    A.  Plaintiff's Allegations ................................................................... 3

    B.  The Road to the Settlement Agreement ..................................... 5

III.  TERMS OF THE SETTLEMENT AGREEMENT ...................................... 6

    A.  Class Definition ............................................................................ 6

    B.  Monetary Relief ............................................................................ 7

    C.  Prospective Relief ......................................................................... 7

    D.  Additional Relief .......................................................................... 7

        1.  Payment of notice and settlement administration expenses .... 7

        2.  Payment of incentive award, attorneys' fees, and expenses ..... 7

    E.  Release .......................................................................................... 8

IV.  THE NOTICE PLAN COMPORTS WITH DUE PROCESS ..................... 8

V.  THE SETTLEMENT WARRANTS FINAL APPROVAL ......................... 10

    A.  Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval ....... 12

    B.  In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest ............................................. 16

    C.  The Complexity, Expense, and Duration of Further Litigation Favor Final Approval ..................................................................................... 17

**D.**     **The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval**.....................................18

**E.**     **The Opinion of Class Counsel Supports Final Approval** ..................20

**F.**     **The Reaction of Absent Class Members Favors Final Approval**.....21

**G.**     **The Settlement is Free from Fraud and Collusion** ...........................22

**VI.**     **CONCLUSION**.................................................................................24

# TABLE OF AUTHORITIES

## United States Supreme Court Cases:

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
   532 U.S. 424 (2001)........................................................................13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..........................................................................8

## United States Circuit Court of Appeals Cases:

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) .............................................................9

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) .........................................................11

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
   726 F.2d 1075 (6th Cir. 1984) .........................................................14

*Lane v. Facebook, Inc.*,
   96 F.3d 811 (9th Cir. 2012) .........................................................2, 15

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008)....................................................22

*Parker v. Time Warner Entm't Co., L.P.*,
   331 F.3d 13 (2d Cir. 2003) .............................................................13

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
   636 F.3d 235 (6th Cir. 2011) .....................................................12, 14

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) .....................................................*passim*

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) .........................................11, 16, 20, 24

*Vasalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013) ..........................................................................24

**United States District Court Cases:**

*Coulter-Owens v. Time, Inc.*,
  308 F.R.D. 524 (E.D. Mich. 2015) ..................................................................21

*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014) ......................................................................8

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ...............................................................3

*Gentrup v. Renovo Servs., LLC*,
  2011 WL 2532922 (S.D. Ohio June 24, 2011) ...............................................11

*Halaburda v. Bauer Publ'g Co.*,
  No. 12-cv-12831 (E.D. Mich. 2015) ..........................................................3, 14

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
  2013 WL 692856 (E.D. Mich. Feb. 26, 2013) ...............................................10

*Harris v. comScore, Inc.*,
  292 F.R.D. 579 (N.D. Ill. 2013) ......................................................................21

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ...............................................12, 16, 17, 22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .................................................9

*In re Facebook Privacy Litig.*,
  No. 10-cv-02389 (N.D. Cal. Dec. 10, 2010) ..................................................21

*In re Google Buzz Privacy Litig.*,
  2011 WL 7460099 (N.D. Cal. June 2, 2011) ..............................................3, 15

*In re Netflix Privacy Litig.*,
  No. 11-cv-00379 (N.D. Cal. Aug. 12, 2011) ..................................................20

vi

*In re Netflix Privacy Litig.*,
 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..........................................2, 15

*In re Packaged Ice Antitrust Litig.*,
 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)...........................................17

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)..................................16, 18, 19

*In re Teletronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 985 (S.D. Ohio 2001) .........................................................18

*Int'l Union v. Ford Motor Co.*,
 2006 WL 1984363 (E.D. Mich. July 13, 2006)............................................20

*IUE-CWA v. Gen. Motors Corp.*,
 238 F.R.D. 583 (E.D. Mich. 2006) ..........................................................19, 22

*Kogan v. AIMCO Fox Chase, L.P.*,
 193 F.R.D. 496 (E.D. Mich. 2000)................................................................22

*Lasalle Town Houses Coop. Ass'n v. City of Detroit*,
 2016 WL 1223354 (E.D. Mich. Mar. 29, 2016)............................................12

*Leonhardt v. ArvinMeritor, Inc.*,
 581 F. Supp. 2d 818 (E.D. Mich. 2008) .................................................*passim*

*Olden v. LaFarge Corp.*,
 472 F. Supp. 2d 922 (E.D. Mich. 2007) .......................................................15

*Scheick v. Auto. Component Carrier, LLC*,
 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .............................................22

*Shane Grp., Inc. v. BCBS of Mich.*,
 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015)............................................24

*Sims v. Pfizer, Inc.*,
 2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ..............................................17

*Stinson v. Delta Mgmt. Assocs., Inc.*,
    302 F.R.D. 160 (S.D. Ohio 2014)....................................................................18

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)....................................8, 15, 17

## **Miscellaneous:**

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010)....................................................9

Fed. R. Civ. P. 23 ..........................................................................................8, 10, 11

House Legis. Analysis Section, H.B. No. 5331 ......................................................16

## I.    INTRODUCTION.

On February 5, 2016, the Court preliminarily approved the Class Action Settlement Agreement[1] reached between Plaintiff Deborah Kinder and Defendant Meredith Corporation, and directed that notice be disseminated to the Settlement Class. (Dkt. 76.) The Settlement Administrator has timely implemented the Court-approved Notice Plan and direct notice has reached approximately 97.6% of the Settlement Class. The reaction to the Settlement can be characterized only one way: overwhelmingly positive. Of the approximately 980,000 Settlement Class Members, not a single one—not one—objected to the Settlement, only 33 have requested to be excluded, and tens of thousands have filed claims. It is noteworthy that no objections were filed at a time when the professional objector bar is both incredibly active and aggressive in seeking out and objecting to class action settlements.[2] Ultimately, and as set forth further below, the complete lack of opposition is due to the strength of the Settlement.

To recap, Defendant has agreed to create a $7.5 million non-reversionary common Settlement Fund, from which Settlement Class Members' claims, notice

---

[1]  The Parties' Class Action Settlement Agreement ("Settlement" or "Agreement") is attached hereto as Exhibit 1. Except as otherwise stated herein, all terms shall have the same meaning ascribed to them in the Agreement.

[2] *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 531 (N.D. Cal. 2012); *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013), *appeal dismissed* (May 15, 2014) (noting that "a cottage industry has developed of professional objectors . . . .").

and administrative expenses, Court-awarded attorneys' fees, and an incentive award to the named Class Representative will be paid. In terms of individual relief, each Settlement Class Members that submits a short and simple claim form (either online or in hard-copy), will receive an estimated cash payment of $50.[3] With respect to curbing the challenged practices going forward, the Settlement delivers strong prospective relief by requiring Defendant to stop disclosing its customers' personal reading information to third party companies for a period of four years. Put simply, the Settlement achieves the goals of the lawsuit: to obtain monetary relief for the class on account of their VRPA claims and to stop the unauthorized disclosure of their magazine preferences.

The Court need not view the instant Settlement in a vacuum. Indeed, a review of the case law demonstrates that this Settlement, while deserving of approval on its own, compares favorably to others involving similar privacy statutes, almost all of which settled along the far less desirable lines of payments to *cy pres* rather than to claiming class members. *See, e.g., Lane v. Facebook, Inc.,*

---

[3] Although Class Counsel estimated at preliminary approval that claimants would receive $100, they are pleased to report that the actual participation rate in this case exceeded historical benchmarks—a signal which both speaks to the strength of the Settlement, as well as to the fact that Michiganders truly care about the privacy of their personal reading information. And, as explained herein, that claiming Settlement Class Members are expected to receive $50 instead of $100 does not call into question the strength of the Settlement in the least. Even at the $50 per claimant figure, the instant Settlement, with its non-reversionary fund of $7.5M and injunctive relief, still compares favorably to other similar privacy settlements.

696 F.3d 811, 820-22 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (Nov. 4, 2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directing $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *1 (N.D. Cal. Mar. 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-4 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15). And as far as other VRPA settlements go, the Settlement is also in line with the only VRPA settlement to receive final approval. *See Halaburda v. Bauer Publ'g Co.,* No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to VRPA settlement that provided claimants with an estimated $75 and similar injunctive relief).

In the end, if the Settlement is approved, nearly one hundred thousand claiming Settlement Class Members will receive immediate cash payments, Defendant will stop disclosing its Michigan subscribers' personal reading information to third parties without consent, and the Parties will be able to call an end to two years of hard-fought and expensive litigation. For these reasons, and those discussed further below, Plaintiff respectfully requests that the Court grant final approval of the Parties' Settlement Agreement.

## II.   BACKGROUND.

### A.   Plaintiff's Allegations.

Meredith is a company that publishes and sells various magazines. (*See* Plaintiff's Class Action Complaint, dkt. 1 ["Compl."], ¶ 1.) Plaintiff alleges that in addition to its consumer-facing magazine subscription business, Meredith operates a division dedicated to selling information related to its customers' magazine subscription histories and personal reading habits. (*Id*. ¶¶ 2, 3, 33–39, 49, 50, 65, 67.) To increase the "street value" of such information, Plaintiff alleges that Meredith trades its customers' protected reading information with certain third parties—including data mining companies—in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id*. ¶¶ 33, 49.) Meredith then "enhances" its own customer profiles with this additional data (e.g., their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, etc.), and sells such information to other unrelated third parties for a profit. (*Id*. ¶¶ 28-30, 33–36, 49, 65.)

Plaintiff further alleges that no matter how consumers subscribe (i.e., via postcard, over the phone, on its website, or through a subscription agent's website), Meredith's customers never provide Meredith with consent to disclose information related to their magazine subscriptions to third parties. (Compl. ¶¶ 4, 37-39, 43, 47, 68.) This is because, as Plaintiff alleges, during the subscription process, customers

are never presented with or required to consent to any terms or policies informing them of Meredith's disclosure practices. (*Id.* at ¶¶ 37, 43, 44, 66, 67.) Plaintiff also alleges that even after subscribing, Meredith fails to notify its customers that it will disclose any information to third parties. (*Id.* at ¶¶ 4, 37, 39, 43, 44, 46, 66, 67.) Nonetheless, Plaintiff alleges that Meredith discloses all of its customers' protected reading information to various third parties, including data miner Acxiom Corporation ("Acxiom"), without their consent or prior notice.

### B.   The Road to the Settlement Agreement.

Plaintiff filed her class action lawsuit on March 28, 2014. (*See* Dkt. 1.) On June 13, 2014, Defendant moved to dismiss Plaintiff's claims under Rules 12(b)(1) and (b)(6), arguing that she lacked both Article III and statutory standing because she did not suffer actual damages from the alleged disclosures. (Dkt. 11.) Thereafter, on August 26, 2014, after full briefing, the Court denied Defendant's motion to dismiss the VRPA claims. (Dkt. 20.) Defendant then filed its Answer on September 9, 2014, which denied the allegations generally and raised fourteen (14) affirmative defenses. (Dkt. 21.) The Parties proceeded to exchange their initial disclosures and served written discovery on each other and third parties. (Declaration of Ari J. Scharg ["Scharg Decl."] ¶ 4, attached hereto as Exhibit 2.)

Over the next eight months, the Parties engaged in—and ultimately completed—substantial class and merits discovery. (Scharg Decl. ¶ 5.) During that

time, Class Counsel reviewed and analyzed over 200,000 documents produced by

Defendant and various third parties. (*Id.*) Class Counsel also took the depositions

of two corporate representatives that Defendant designated under Rule 30(b)(6),

and a corporate representative that was similarly designated by Acxiom. (*Id.*) For

its part, Defendant conducted substantial written discovery on Plaintiff Kinder, and

also took her deposition. (*Id.*)

On May 5, 2015, the Parties participated in a Court-ordered settlement

conference in Bay City, Michigan, but were unable to resolve the case. (*Id.* ¶ 6.)

Thereafter, on September 11, 2015—after completing full class and merits

discovery—Plaintiff filed her Motion for Class Certification. (Dkt. 55.) Defendant

filed its opposition to the motion on September 21, 2015. (Dkt. 64.)

On September 25, 2015, in the midst of the class certification briefing, the

Parties participated in a private mediation with Jed D. Melnick, Esq. at JAMS in

New York City. (Scharg Decl. ¶ 7.) After a full day of mediation and numerous

rounds of arm's-length negotiations, the Parties ultimately reached an agreement

on the principal terms of the Settlement. (*Id.*) The Court granted preliminary

approval of the Settlement on February 5, 2016. (Dkt. 76.)

## III.   TERMS OF THE SETTLEMENT AGREEMENT.

The terms of the Settlement Agreement are briefly summarized as follows:

### A.   Class Definition.

The Settlement Class is defined as "all Michigan residents who purchased a subscription to a Meredith Publication between January 1, 2009 and March 28, 2014." (Agreement ¶ 1.29.)

### B.   Monetary Relief.

Defendant has established a $7.5 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* share, after payment of notice and administrative expenses, attorneys' fees, and the incentive award. (*Id.* ¶¶ 1.31, 2.1.)

### C.   Prospective Relief.

For a period of four years from February 5, 2016, the date of entry of the Court's Preliminary Approval Order, Meredith will not disclose any of its Michigan customers' subscription information to any third-party companies for marketing purposes, without first obtaining their prior express written consent. (Agreement ¶ 2.2.)

### D.   Additional Relief.

In addition, Defendant has also agreed to provide the following:

#### 1.   Payment of notice and settlement administration expenses.

Defendant has paid, and will continue to pay, all notice and administration expenses out of the Settlement Fund. (Agreement ¶¶ 1.27, 1.31.)

#### 2.   Payment of incentive award, attorneys' fees, and expenses.

7

Defendant has agreed to pay an incentive award from the Settlement Fund to Plaintiff in recognition of her service as Class Representative, as well as reasonable attorneys' fees. (*Id.* ¶ 8.3.) Both awards are subject to this Court's approval, which Plaintiff has petitioned for separately. (*See* dkt. 77.)

### E.    Release.

In exchange for the relief described above, Defendant and each of its related and affiliated entities will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. (Agreement ¶¶ 1.24-1.26.)

## IV.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS.

Before final approval can be granted, due process and Rule 23 require that the notice provided is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P.

8

23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation omitted).

Due process does not require that every class member receive notice. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). Rather, a notice plan that reaches at least 70% of the class is reasonable. Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class).

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. (Dkt. 76 at 7.) That plan has now been fully carried out by professional settlement administrator Kurtzman Carson Consultants, LLC ("KCC"). Pursuant to the Settlement, Defendant provided the "Class List" to KCC, which contained the names, last known mailing addresses, and last known email addresses of the Settlement Class

Members. (Agreement ¶ 4.1(a); Declaration of Rachel Christman ["Christman Decl."] ¶¶ 9-10, a true and accurate copy of which is attached hereto as Exhibit 3.) Using the Class List, KCC sent direct notice via First Class U.S. mail and email, and successfully reached 97.6% of the Settlement Class. (Agreement ¶¶ 4.1(b)-(c); Christman Decl. ¶¶ 11-15.)[4] In accordance with the requirements of Rule 23 and due process, the notice contained essential information regarding the Settlement, including the terms of the Agreement and individual options for opting-out, objecting, or submitting a claim. The notice also directed Settlement Class Members to the Settlement Website, an online resource center where they can submit their claims via a short and simple electronic form and access and review important court filings, deadlines, and frequently asked questions. (Christman Decl. ¶¶ 18-19; Agreement ¶ 4.1(d).)

As a result of the Notice Plan, 97.6% of the Settlement Class received direct notice of the Settlement (Christman Decl. ¶ 15)—a rate that far surpasses others approved within this Circuit and endorsed by the Federal Judicial Center. Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are met.

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL.

The Federal Rules of Civil Procedure require judicial approval of class

---

[4]  Pursuant to the direct notice campaign, KCC also notified the appropriate state and federal officials pursuant to CAFA. (Christman Decl. ¶¶ 5-7.)

action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

To evaluate the fairness, reasonableness, and adequacy of a settlement agreement at final approval, courts look to seven factors: (1) the likelihood of success on the merits; (2) the public interest; (3) the complexity, expense, and duration of future litigation; (4) the opinions of class counsel; (5) the amount of discovery completed; (6) the reaction of absent class members, and (7) the risk of fraud or collusion (the "*UAW* factors"). *UAW*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Williams*, 720 F.2d at 922-23. The court need only analyze the factors that are relevant to the settlement agreement and may weigh "particular factors according to the demands of the case." *Leonhardt*, 581 F. Supp. 2d at 832 (citations and internal quotations omitted). Although the factors may be assessed individually, inquiry into one factor often overlaps with another. *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011).

As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A. Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval.

Under the first, and most important, *UAW* factor, the plaintiff's likelihood of success on the merits is weighed against the immediate benefits of settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522-23 (E.D. Mich. 2003). "Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions," the fairness of a proposed settlement cannot be judged "without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 632 (citation omitted). Ultimately, the question is whether the class's interests "are better served if the litigation is resolved by the settlement." *Leonhardt*, 581 F. Supp. 2d at 832-33 (citation omitted); *see also Lasalle Town Houses Coop. Ass'n v. City of Detroit*, 2016 WL 1223354, at *6 (E.D. Mich. Mar. 29, 2016) (granting final approval where "class members would bear the risk of continued litigation with the potential for an adverse result.").

Although Plaintiff believes that her VRPA claim is strong—and that she would prevail at summary judgment or trial—success is never a certainty. (Scharg Decl. ¶ 9.) Absent final approval of the instant Settlement Agreement, Meredith

would continue to assert a number of defenses on the merits. For one, Meredith

would likely continue to claim that the VRPA (i) does not prohibit the disclosure

of the magazine subscription information at issue, because Acxiom is Meredith's

agent, and (ii) does not apply to Meredith at all because Meredith is not engaged in

the business of selling magazines "at retail," as is required under the scope of the

statute. (*Id.*) Meredith has also made clear that it would continue to challenge the

constitutionality of the VRPA, as well as its applicability to magazines in particular

and the magazine publishing industry in general. (*Id.*)

   If the case moved forward, and assuming Plaintiff prevailed on her pending

class certification motion, Plaintiff would still need to overcome significant hurdles

at summary judgment and ultimately trial. (Scharg Decl. ¶ 10.) Moreover, Plaintiff

recognizes that Meredith would appeal the merits of any adverse decision at trial.

(*Id.*) And in light of the massive aggregated statutory damages in play, Meredith

would be sure to argue—both at trial and on appeal—for a reduction of damages

based on due process concerns. (*Id.*); *Compare Parker v. Time Warner Entm't Co.,*

*L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("the potential for a devastatingly large

damages award, out of all reasonable proportion to the actual harm suffered by

members of the plaintiff class, may raise due process issues.") *with Cooper Indus.,*

*Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 443 (2001) ("I continue to

believe that the Constitution does not constrain the size of punitive damages

awards.") (Thomas, J., concurring). Plaintiff's likelihood of success on the merits thus serves as a "gauge" against which the benefits of settlement are measured. *Poplar Creek*, 636 F.3d at 245 (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Against this backdrop of uncertainty, the benefits of the Settlement are clear and unmistakable. Perhaps most importantly, the Settlement delivers meaningful prospective relief, whereby over the next four years, Meredith will not disclose Michigan subscriber information to third-party companies without the subscriber's prior express written consent. (Agreement ¶ 2.2.) This relief aligns perfectly with the goals of the VRPA and represents an outstanding result for the Settlement Class. *See, e.g.*, *Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, dkt. 69 (E.D. Mich. Jan. 15, 2015) (finally approving a class action in similar VRPA litigation and finding that "the more important provisions of the settlement agreement are the provisions according equitable relief and a cessation of the disclosure altogether for this period of four years by the defendants.").

Further, in terms of monetary relief, the Settlement's projected $50 per claim payment is in line with the *Halaburda v. Bauer* settlement—the only other VRPA case to receive final approval—and in terms of direct relief to the Settlement Class Members, surpasses other privacy settlements involving similar statutes, almost all of which settled along the far less desirable lines of payments to *cy pres* rather than

14

to claiming class members. *See, e.g., Halaburda v. Bauer Publ'g Co.,* No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to VRPA settlement that provided claimants with an estimated $75 and similar injunctive relief); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres* relief only in case where statutory damages of at least $2,500 were available); *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* relief only in case where statutory damages of up to $10,000 per claim were available); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5 settlement providing *cy pres* relief only in case where statutory damages of up to $10,000 per claim were available). And although statutory damages of $5,000 per claim are available under the VRPA, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) (quotation omitted); *see also UAW*, 2006 WL 891151, at *17 ("there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Where, as here, Plaintiff's likelihood of success on the merits is tempered by significant risks, the benefits of settlement—both prospective and monetary—are

readily apparent. The first *UAW* factor thus supports final approval.

**B.     In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest.**

A settlement that serves the public interest is likely to be found fair, reasonable, and adequate. *In re Cardizem*, 218 F.R.D. at 530. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See id.*; *see also In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996) ("Voluntary resolution [of complex class action litigation] is in the public interest"). To serve the public interest, a settlement agreement that seeks to enforce a statute "must be consistent with the public objectives" the legislature sought to attain. *Williams*, 720 F.2d at 923 (citations omitted).

The Settlement is clearly aligned with the objectives that the Michigan Legislature sought to attain when it enacted the VRPA 27 years ago. The VRPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. The Settlement furthers the legislature's goal of protecting an individual's right to privacy in the written materials he or she chooses to read because it prevents the disclosure of magazine reading preferences by Defendant absent express written consent. (*See* Agreement ¶ 2.2.) It also serves the public interest by conserving judicial resources, avoiding "notoriously difficult and unpredictable" class action litigation

that can consume the courts' time and money. *See In re Cardizem*, 218 F.R.D. at

530; *see also Leonhardt*, 581 F. Supp. 2d at 839. The complex and lengthy

litigation that would result absent the Court's final approval would require

additional significant motion practice and potential appeals. *See* Section V.C, *infra*;

*see also Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016)

(finally approving settlement and finding that "absent settlement, all class members

would be subject to the uncertainties, hardship, and delay attendant to continued

litigation."). Here, no other interests justify deviating from the "strong public

interest in encouraging settlement of complex class action litigation." *See In re*

*Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13,

2011) (citation omitted).

     The Settlement serves the public interest because it furthers the underlying

purpose of the VRPA—to protect the privacy of consumers' personal reading

habits—and conserves judicial resources. The second factor thus weighs in favor

of final approval.

### C.   The Complexity, Expense, and Duration of Further Litigation Favor Final Approval.

     The third *UAW* factor takes into account the complexity, expense, and

duration of further litigation, and compares those risks to the relief afforded under

the settlement. *See, e.g.*, *In re Cardizem*, 218 F.R.D. at 523; *UAW*, 2006 WL

891151, at *18 (citation omitted). Final approval is favored in cases such as this

17

one, where the parties are "likely [to] expend significant time and money litigating [a] case through class certification, dispositive motions, trial, and appeal," further chipping away at the amount—and possibility—of class recovery. *Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 164 (S.D. Ohio 2014); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (citation omitted).

There is no question that in this case, further litigation is likely to raise challenging legal issues arising under the VRPA that have yet to be fully resolved, such as whether the VRPA prohibited the conduct alleged in this case and whether Meredith was engaged in selling magazines "at retail" for purposes of the statute. Plaintiff would also need to succeed on her pending motion for adversarial class certification, and anticipates that Meredith would appeal any decision in her favor. (Scharg Decl. ¶ 9.) Any one of these obstacles could strip the class of recovery, making further litigation "a high stakes 'zero sum' undertaking." *See Leonhardt*, 581 F. Supp. 2d at 833.

Without the instant Settlement, the complexity, expense, and duration of further litigation will threaten a positive outcome for the class. The third *UAW* factor therefore supports final approval.

### D.    The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.

The fourth *UAW* factor examines the stage of the proceedings and the

18

amount of discovery that has taken place. *In re Rio*, 1996 WL 780512, at \*13. Although "[t]here is no precise yardstick to measure the amount of litigation that the parties should conduct before settling," the case should be developed enough to raise the court's decision "above mere conjecture." *Id.* (citation and internal quotations omitted). What is imperative is not the amount of formal discovery completed, but whether the parties and the court have sufficient information to make a reasoned decision with respect to settlement. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("That the parties conducted their investigation through informal discovery . . . is not unusual or problematic, so long as they and the court have adequate information in order to evaluate the parties' relative positions.").

The considerable amount of class and merits discovery completed in this case ensured that the parties and the Court would have sufficient information to assess the strength of the Settlement. Plaintiff exchanged extensive formal written discovery with Defendant, and Class Counsel reviewed more than 200,000 discovery documents in the process. (Scharg Decl. ¶ 11.) Class Counsel also conducted two separate Rule 30(b)(6) depositions of Defendant's corporate representatives, another Rule 30(b)(6) deposition of Acxiom's corporate representative, and defended the deposition of Plaintiff. (*Id.*)

Because counsel for both Parties are well equipped at this advanced stage of

the litigation with the information needed to make a reasoned decision about settlement—and have conveyed this information to the Court—the fourth *UAW* factor weighs in favor of final approval.

### E.    The Opinion of Class Counsel Supports Final Approval.

The fifth *UAW* factor assesses the opinion of experienced counsel regarding the settlement. *UAW*, 497 F.3d at 631; *Williams*, 720 F.2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Counsel's judgment is entitled to significant weight. *Leonhardt*, 581 F. Supp. 2d at 837. The deference afforded to counsel's opinion depends on both the skill and experience of counsel, *Int'l Union v. Ford Motor Co.*, 2006 WL 198463, at *25 (E.D. Mich. July 13, 2006), as well as "the amount of discovery completed and the character of the evidence uncovered." *Williams*, 720 F.2d at 923.

Here, Class Counsel are well-respected members of the plaintiffs' bar, with significant experience litigating consumer class actions of similar size, scope and complexity—particularly in the consumer privacy realm, and including other VRPA-related cases. (*See* Scharg Decl. ¶ 12; Edelson PC Firm Resume, a true and accurate copy of which is attached to the Scharg Decl. as Exhibit 2-A). *See, e.g., In re Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 (N.D. Cal. Aug. 12, 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which

the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. Dec. 10, 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class action and appointed class counsel); *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 527 (E.D. Mich. 2015) (achieved adversarial certification in a similar VRPA class action against a magazine publisher and appointed class counsel); *Halaburda*, No. 12-cv-12831, dkt. 68 (appointed class counsel in a similar VRPA class action that settled on favorable terms).

Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate. (Scharg Decl. ¶ 13.) In light of their experience, and bolstered by the significant amount of discovery completed in this case, their opinion in support of final approval should carry significant weight in this Court's analysis.

### F.     The Reaction of Absent Class Members Favors Final Approval.

The sixth *UAW* factor weighs in favor of approval where the majority of

class members have elected to remain in the settlement class without objecting. *In re Cardizem*, 218 F.R.D. at 527. A small number of opt-outs and objections "are to be expected in a class action" and do not impact the Settlement's fairness. *Id.* (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, not a single Settlement Class Member objected to the Settlement, only a very small number opted out (33 to be exact), and tens of thousands filed claims. (Christman Decl. ¶¶ 20-22.) Hence, there is no question the Settlement Class Members view the Settlement favorably, which further underscores its fairness.

Given this favorable reaction, the sixth *UAW* factor supports final approval.

## G.     The Settlement is Free from Fraud and Collusion.

The final *UAW* factor ensures that the settlement is the "product of arm's length negotiations as opposed to collusive bargaining." *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D. Mich. 2000) (citation omitted); *see also Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) (explaining that arm's-length negotiations conducted "by adversarial parties and experienced counsel" are indicative of a settlement's fairness, reasonableness, and adequacy.) The absence of fraud or collusion is presumed unless there is evidence to the contrary. *IUE-CWA*, 238 F.R.D. at 598; *see also*

*UAW*, 497 F.3d at 628.

Here, the Settlement is entitled to the presumption that it is free from fraud or collusion. Evidence of collusion may be present, for instance, when attorneys' fees are negotiated simultaneously with the principal terms of a settlement. *UAW*, 497 F.3d at 628. In the instant case, however, attorneys' fees were only discussed after the principal terms of the Settlement had been secured. (Scharg Decl. ¶ 14.) Moreover, the instant Settlement is the product of negotiations conducted at arm's length by experienced counsel representing adversarial parties. (*Id.*) As detailed above, Class Counsel have built their practice upon complex consumer class action litigation, and have significant experience in the area of consumer privacy. (*See* Section V.E., *supra*.) Likewise, defense counsel—attorneys from sophisticated law firms—have a wealth of experience representing magazine publishers across the country. (Scharg Decl. ¶ 14.)

As evidenced by Defendant's motion to dismiss (dkts. 11, 16, 19) and the pending adversarial class certification motion (dkts. 55, 64), the parties have vigorously pursued their own interests and positions throughout the litigation. (Scharg Decl. ¶ 14.) They have shown strong disagreement on the core issues of this case—including whether Acxiom's alleged agency relationship with Meredith exempts Meredith from liability under the VRPA, and whether Meredith was engaged in selling magazines "at retail" under the meaning of the statute. (*Id.* ¶ 9.)

This adversarial relationship further confirms the absence of fraud or collusion. *See Leonhardt*, 581 F. Supp. 2d at 838; *see also Shane Grp., Inc. v. BCBS of Mich.*, 2015 WL 1498888, at *9 (E.D. Mich. Mar. 31, 2015) (finding no evidence of fraud or collusion when parties filed various adversarial motions and "engaged in extensive motion practice and discovery relating to the class certification issue"). And when the Parties were finally ready to discuss the possibility of settlement, all of their negotiations occurred only at arm's length, both during their settlement conference with the Court, as well as during their private mediation with Jed D. Melnick, Esq. at JAMS in New York City. (Scharg Decl. ¶¶ 6-7.)

The Settlement is entitled to the presumption that it is untainted by fraud or collusion.[5]

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (i) granting final approval to the Settlement Agreement, and (ii) awarding such other and further relief as the Court deems reasonable and just.

---

[5]  In addition to the *UAW* factors, courts may also consider whether the settlement gives "preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vasalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams*, 720 F.2d at 925 n.11). Plaintiff has already addressed this issue in her Motion for Attorneys' Fees, Expenses, and Incentive Award. (Dkt. 77 at 18-20.) Plaintiff's motion detailed Ms. Kinder's efforts on behalf of the class—which have demanded her active involvement in this case for two years—and noted that the immediate cash and prospective relief the settlement provides are far from "perfunctory." (*Id.* at 19 n.8.)

Dated: April 21, 2016

Respectfully submitted,

**DEBORAH KINDER**, individually and on behalf of the Settlement Class,

By: /s/  Ari J. Scharg
One of Plaintiff's attorneys
    Jay Edelson
    jedelson@edelson.com
    Ari J. Scharg
    ascharg@edelson.com
    Benjamin S. Thomassen
    bthomassen@edelson.com
    EDELSON PC
    350 North LaSalle Street, 13th Floor
    Chicago, Illinois 60654
    Tel: 312.589.6370

    Henry M. Scharg (No. P28804)
    hmsattyatlaw@aol.com
    LAW OFFICE OF HENRY M. SCHARG
    718 Ford Building
    Detroit, Michigan 48226
    Tel: 248.596.1111
    Fax: 248.671.0335

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on April 21, 2016, I served the above and foregoing ***Plaintiff's Motion for Final Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system on this, the 21st day of April, 2016.

/s/ Ari J. Scharg

26